# EXHIBIT A

---

**Page 1**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NORIS BABB,
        Plaintiff,

vs.                              CASE NO.:  8:20-CV-2825-T-35CPT

DENIS MCDONOUGH, SECRETARY
DEPARTMENT OF VETERANS AFFAIRS,
        Defendant.
_____/

ZOOM DEPOSITION OF
TANYA B. BURTON

Taken on Behalf of the Plaintiff

DATE TAKEN:      May 4, 2022

TIME:            2:00 - 4:26 p.m.

PLACE:           ALL PARTIES PRESENT REMOTELY

Examination of the witness taken before:
Debbie E. Askins, FPR
Notary Public

Pages 1 - 79

ASKINS COURT REPORTING, INC.
813.966.7936   d_askins@tampacourtreporting.net

---

**Page 2**

1   APPEARANCES FOR THE PLAINTIFF
2       Joseph D. Magri, Esquire
    Meagan Culpepper, Esquire
3       Merkle & Magri, P.A.
    5601 Mariner Street, Suite 400
4       Tampa, Florida  33609-3452
    jmagri@merklemagri.com
5       813.281.9000

6   APPEARANCES FOR THE DEFENDANT
7       Michael Kenneth, AUSA
        Mamie Wise, AUSA
8       United States Attorney's Office
    400 North Tampa Street, Suite 3200
9       Tampa, Florida  33602
    Michael.kenneth@usdoj.gov
10       813.274.6000

11
ALSO PRESENT:  Karen Mulcahy,
12              Department of Veterans Affairs

13          Jamie Haughn, Legal Assistant

14              I N D E X

15  Zoom Deposition of Tanya B. Burton      PAGE
16  Direct Examination By Mr. Magri          5
17  Certificate of Oath                     76
18  Certificate of Reporter                 77
19  Read & Sign Letter to Witness              78
20  Errata Sheet (to be forwarded upon execution)   79
21
22
23
24
25
ASKINS COURT REPORTING, INC.
813.966.7936   d_askins@tampacourtreporting.net

---

**Page 3**

1        PLAINTIFF'S EXHIBIT INDEX
No.       Description                 Page
2
Ex 1 - 1/10/22 letter              31
3
Ex 2 - Pg 92/ROI                   33
4
Ex 3 - Pg 152-154/ROI                36
5
Ex 4 - Pg 155/ROI                  36
6
Ex 5 - Pg 156/ROI                  39
7
Ex 6 - Pg 138/ROI                  50
8
Ex 7 - Truitt email                56
9
Ex 8 - Trask email                 59
10

11

12        DEFENDANT'S EXHIBIT INDEX
No.       Description              Page
13        ***NONE MARKED***

14
15
16
17
18
19
20
21
22
23
24
25
ASKINS COURT REPORTING, INC.
813.966.7936   d_askins@tampacourtreporting.net

---

**Page 4**

1        COURT REPORTER:  The attorneys
2   participating in this deposition acknowledge I,
3   Debbie Askins, the court reporter, am not
4   present with the witness and that I will be
5   reporting the proceedings and administrating
6   the oath remotely.  The parties and their
7   counsel consent to this arrangement and waive
8   any objections to this manner of reporting.
9   Please indicate your agreement by stating your
10   name and your agreement on the record.
11       MR. MAGRI:  Magri, Joe Magri.
12       COURT REPORTER:  Thank you.
13       MR. KENNETH:  Michael Kenneth for the
14   Defense.  I agree.
15       COURT REPORTER:  Thank you.
16       It looks like, Ms. Burton, you are
17   still muted.  I'm going to swear you in
18   whenever you're ready.  Just let me know.  Are
19   you ready?
20       THE WITNESS:  I'm ready.
21       COURT REPORTER:  Okay.  Thanks.  Would
22   you raise you right hand for me, please?
23       THE WITNESS:  (Complies)
24
25
ASKINS COURT REPORTING, INC.
813.966.7936   d_askins@tampacourtreporting.net

**Page 5**

1  WHEREUPON,

2          TANYA B. BURTON,

3  acknowledged having been duly sworn to tell the truth and

4  testified upon her oath as follows:

5          THE WITNESS:  I do.

6          COURT REPORTER:  Thank you.

7          DIRECT EXAMINATION

8  BY MR. MAGRI:

9      Q.    Good afternoon.  For the record, my name's

10  Joe Magri and I represent Noris Babb.  And I'll be asking

11  you questions here over Zoom.  And if there's any

12  questions that I ask that you don't understand or you

13  need clarification of them, ask me to give it and I'll be

14  happy to.  Okay?

15      A.    Yes.

16      Q.    Can you take us through your background and

17  education?

18      A.    How far back do you want to go?

19      Q.    College.

20      A.    I attended Liggett Junior College for a year

21  and a half.  Then I transferred to High Point College.  I

22  went to USCG.  And then I went to Greensburg College,

23  graduated from High Point College, went to Central

24  Carolina Technical Institute and got an Associate degree

25  in paralegal technology.  Then I went to law school in

ASKINS COURT REPORTING, INC.
813.966.7936     d_askins@tampacourtreporting.net

**Page 6**

1  CCU in Durham.

2      Q.    And when was that?  When did you go to law

3  school?

4      A.    '79. . . I think I graduated in the '80s.  I

5  don't remember.

6      Q.    And when you say CCU, are you talking about

7  Coastal Carolina University?

8      A.    No.  Central Carolina Technical College.

9      Q.    Okay.  Is that-- is that where you went to

10  law school?

11      A.    No.  I went to North Carolina Central

12  University Law School.

13      Q.    Okay.  And can you take us through your work

14  experience since then?

15      A.    I've had my own practice until I started

16  working-- I don't remember when I started working at the

17  VA.  Until about 2004 I had my own practice.

18      Q.    And do you recall what your practice was in?

19      A.    It was general practice.

20      Q.    Okay.  In 2004 you joined the VA in which

21  part of the country?

22      A.    I'm estimating 2004.  I didn't have the

23  timeline and I don't remember.  What do you mean which

24  part of the country?

25      Q.    Well, right now today, you're in-- where are

ASKINS COURT REPORTING, INC.
813.966.7936     d_askins@tampacourtreporting.net

**Page 7**

1  you, in St. Petersburg, Florida?

2      A.    Yes.

3      Q.    Okay.  When you first joined the VA, where

4  were you?

5      A.    In greens-- in Winston-Salem, North Carolina.

6      Q.    All right.  And you are employed by where--

7  by what entity or what group within the VA?

8      A.    Office of General Counsel.

9      Q.    Okay.  How long did you work there?

10      A.    Work where?

11      Q.    Winston-Salem.

12      A.    Till 2007.

13      Q.    And at that point in time, did you transfer

14  to another office?

15      A.    I moved to Florida.

16      Q.    Okay.  Still with the Office of General

17  Counsel?

18      A.    Yes.

19      Q.    And when you were in Winston-Salem, what was

20  your job title?

21      A.    Just as it is now, staff attorney.

22      Q.    Okay.  And your duties in Winston-Salem, what

23  were they?

24      A.    Before we reorganized, we did all-- all

25  attorneys were general attorneys where we did fiduciary

ASKINS COURT REPORTING, INC.
813.966.7936     d_askins@tampacourtreporting.net

**Page 8**

1  duties, we did loan guaranty, we did torts, we did EEO

2  cases, MSPB cases.  We did a little bit of everything

3  that the VA did before they started specializing and

4  reorganized.

5      Q.    Okay.  So were you still in that--  When you

6  came to Florida, what were your duties and

7  responsibilities as a staff attorney?

8      A.    The Agency, we had reorganized and they

9  specialized and I primarily focused on employment law.

10      Q.    Okay.  So when you came to Florida, your

11  focus was employment law?

12      A.    When I got in Florida, my focus was

13  employment law.

14      Q.    Okay.

15      A.    Prior to coming to Florida we were general.

16  We did everything.

17      Q.    Okay.  Now, explain to me where--  Have you

18  always been in St. Petersburg since you came to Florida?

19      A.    Yes.

20      Q.    And do the lawyers in St. Petersburg-- what

21  areas do they cover?

22          MR. KENNETH:  Object to the form.

23      Q.    (By Mr. Magri) Go ahead, Ms. Burton.

24      A.    I'm trying to understand the question.

25      Q.    I'm talking about with regard to the areas

ASKINS COURT REPORTING, INC.
813.966.7936     d_askins@tampacourtreporting.net

Page 9

1 they practice in.

2 **A.** I don't know what every attorney in this

3 area-- what area they practice in.

4 **Q.** Do all attorneys-- Well, do any attorneys

5 limit themselves geographically?

6 MR. KENNETH: Object to the form.

7 **A.** I do not know, Mr. Magri. I don't know what

8 you mean by limit themselves geographically.

9 **Q.** Like, for instance, you do employment law,

10 correct?

11 **A.** Yes. Correct.

12 **Q.** Do you do employment law for the southeast

13 region or do you do it for some different geographic

14 area?

15 **A.** I do whatever is assigned to me.

16 **Q.** What's that mean?

17 **A.** That means that I don't pick and choose my

18 cases.

19 **Q.** Okay. Where might your cases come from, what

20 area?

21 **A.** Well, whatever the supervisor deems that is

22 needed and workload balancing. For example, if there is

23 a case in Gainesville and they need an attorney and no

24 one is available, then I may take on that case.

25 **Q.** Okay. So is there a geographic area that

Page 10

1 limits the kinds of cases that you would take?

2 **A.** I'm not aware of any, so I can't answer that.

3 I don't know.

4 **Q.** Just explain to me-- because I may have heard

5 things at different points about the Office of General

6 Counsel and I don't want to be thinking wrong as some

7 movie character once said. With regard to the Office of

8 General Counsel, has it ever been broken down into

9 regions of the country?

10 **A.** When I first started, we were District

11 Counsel, then we went to Regional Counsel. And then

12 somehow somewhere in between while I was in North

13 Carolina, VISNs were born. And then we went back to-- we

14 went back to Regional Counsel and then we back to

15 District Counsel.

16 So it depends on the organization. I mean,

17 I've been here for so long that I've seen so many

18 reorganizations and I just go with the flow.

19 **Q.** Okay. When you first came to Florida, was it

20 a national, regional or district office, Office of

21 Special Counsel?

22 **A.** Well, I don't have anything to do with the

23 Office of Special Counsel, first of all.

24 **Q.** Pardon me. My error. Office of General

25 Counsel.

Page 11

1 **A.** I think we always had General Counsel. But I

2 think when I moved from Winston, I believe, and I could

3 be wrong, I think we were District Counsel I think.

4 **Q.** But what does that mean, district?

5 **A.** That means that's what we were called,

6 District.

7 **Q.** But did that affect whether you took cases

8 from Gainesville or some other place besides

9 St. Petersburg if your boss told you to do it?

10 **A.** I don't believe it did. We took-- a case is

11 assigned to me, so no.

12 **Q.** Okay. What facilities have you had a case

13 assigned to you besides Bay Pines, Florida?

14 **A.** I've had Gainesville--

15 MR. KENNETH: Excuse me. Object to the

16 form. When you say cases, what do you mean?

17 MR. MAGRI: The labor management matters

18 that she works on.

19 THE WITNESS: I'm sorry, Mike.

20 MR. KENNETH: Go ahead.

21 **A.** What type of cases?

22 **Q.** Well, why don't you explain what type of

23 cases you do as a labor management lawyer--

24 **A.** And I can only answer your question,

25 Mr. Magri--

Page 12

1 **Q.** (Crosstalk) Well, I'm not here to answer

2 yours. So I'm just--

3 **A.** (Crosstalk) I need-- well, clarify your

4 question so I can--

5 **Q.** I'm asking you a question.

6 **A.** Okay.

7 **Q.** What type of matters do you perform within

8 the employment law area?

9 **A.** I do EEO and MSPB cases, arbitrations,

10 grievances and things like that.

11 **Q.** Arbitrations. What did you say after that?

12 **A.** Grievances.

13 **Q.** I didn't catch that.

14 **A.** Grievances.

15 **Q.** Grievances, okay. And when you say things

16 like that, what do you mean?

17 **A.** Employment law.

18 **Q.** Well, what are the other things like that

19 that you do?

20 **A.** That's all I do right now, Mr. Magri.

21 **Q.** Okay. Now, with regard to-- Do you consider

22 EEO and MSPB cases? Do you handle them?

23 **A.** I don't understand that question.

24 **Q.** How do you label an EEO matter when you're

25 handling it? Is it a case? Is it a matter?

Page 13

1    A.    Well, it's a matter to me.

2    Q.    Okay. How about an MSPB case? Is that a

3    matter to you?

4    A.    I don't know the distinction between them.

5    But a matter is a case, a case is a matter.

6    Q.    Okay. I'm just going off of the last

7    objection that was made so I can try to understand what

8    the basis of it was, if any.

9         Arbitration, do you view those as a case or as

10   a matter?

11   A.    Same answer.

12   Q.    And grievance, how do you view those?

13   A.    Same answer.

14   Q.    Okay. Now, is there some geographic limit to

15   the cases and matters that you do that involve EEOs?

16   A.    Can you clarify geographic limit? I'm not

17   following you on the geographic limit. I'm just not

18   following you.

19   Q.    Yeah. I'm just trying to make sure I

20   understand the answer you gave before which-- when I

21   asked about that, you indicated that you took cases from

22   wherever your supervisor told you to take them from if

23   you were in the position to handle them, correct?

24   A.    No. I said whatever is assigned to me.

25   Q.    Okay. So wherever they come from, right?

Page 14

1    A.    Whatever they assign to me.

2    Q.    All right. Now, do they-- with regard to EEO

3    cases, what place-- what facilities have been assigned to

4    you at one point or another-- any point or another?

5    A.    During my career or since I've been in

6    Florida?

7    Q.    Let's stick with Florida right now.

8    A.    Okay. I've had Bay Pines. I think I've

9    had-- I know I've had some cases assigned from

10   Gainesville. I may have had a couple from Tampa,

11   Orlando. I don't believe I've had any from Miami.

12   Q.    When you're assigned an EEO matter or case,

13   when do you get involved-- at what stage of those cases

14   are you involved?

15   A.    In the beginning?

16   Q.    Whenever. Whenever you get involved.

17   A.    When we get a judge assigned to the case and

18   send out an A&O.

19   Q.    Okay. Would that be in the administrative

20   stage?

21   A.    Yes.

22   Q.    Okay. Now, aren't you ever involved in those

23   cases if there's a settlement conference at the informal

24   stage?

25   A.    Well, when you're at the-- when you get A&O,

Page 15

1    you're usually at the informal stage. Are you talking

2    about before I get the A&O or after I get the A&O.

3    Q.    You better define A&O. What's A&O?

4    A.    Acknowledgement and Order.

5    Q.    Okay. Doesn't that usually come after the

6    complainant has asked to request for a hearing-- made a

7    request for a hearing?

8    A.    Yeah. It usually does after it's assigned to

9    a judge. Prior to that, of course you know as well as I,

10   the complainant can choose to go ADR and talk settlement.

11   And if I am the person who's going to handle that case in

12   the end, then yes, I would participate.

13   Q.    Okay. Do any of your cases get-- go beyond

14   the administrative stage?

15   A.    You mean appeal?

16   Q.    Well, tell me whether-- if they go beyond by

17   appeal, tell me that. If there's some other way they go

18   beyond it, tell me that.

19   A.    I don't know what you mean by beyond, except

20   if they appeal, of course they have to take it to appeal.

21   Q.    If they appeal to the courts?

22   A.    I don't know where they--

23         MR. KENNETH:  Object to the form.

24   Q.    (By Mr. Magri) Well, there's appeals that can

25   be done within the administrative process, correct?

Page 16

1    A.    I don't know if you would call them appeals.

2    But you have reconsiderations, yes.

3    Q.    Okay. Are you involved in any cases that go

4    to federal court?

5    A.    I have been.

6    Q.    Okay. Where have those cases been located?

7    A.    Bay Pines. And as far as involved, let me

8    clarify. I assist the AUSA. I'm not involved, involved.

9    I'm an assistant to the AUSA.

10   Q.    All right. Now, what type of assistance do

11   you provide to the AUSA?

12   A.    Whatever they may need, whether it's

13   discovery, whether it's a VISN (phonetic) court, whether

14   it's contact witnesses, whatever they need.

15   Q.    All right. Now, are the federal courts that

16   you handle the-- What federal courthouses are involved

17   with the federal court EEO cases that you're involved in?

18   A.    The only one I can think of right now is

19   Tampa.

20   Q.    Okay. Do you recall the-- how many cases

21   you've been involved in that have gone to federal court?

22   A.    No.

23   Q.    Do you recall when-- the first time it was

24   you went to federal court?

25   A.    No.

**Page 17**

1    MR. KENNETH:  Object to the form.
2    Mr. Magri, when you say, go to federal court,
3    do you mean just cases filed or do you mean
4    physically like a trial takes place?
5    MR. MAGRI:  Well, I actually mean filed.
6    MR. KENNETH:  Okay.  That's what I
7    thought.
8    MR. MAGRI:  I just wanted to clarify.
9    A.    The answer is no.
10    Q.    Okay.  Were you involved in Lynn Proght's
11   (phonetic) case in 2007?
12    A.    No.
13    Q.    Were you involved in the Koteh Gaust
14   (phonetic) v. Zachariah, Roxanne Lynn Bronner (phonetic)
15   case that went on for a period of time?
16    A.    No.
17    Q.    No involvement in that?
18    A.    No.
19    Q.    Do you recall any cases that you have been
20   involved in that were filed in federal court?
21    A.    You are-- involved, you mean in assisting?
22   If that's what you mean, I remember I think Pam Trimble,
23   Dr. Trask and Dr. Truitt.  I know there's-- I don't
24   remember the other ones.
25    Q.    How about Dr. Noris Babb?

**Page 18**

1    A.    Oh.  Yeah.  That should have been the first
2    one, huh?
3    Q.    Let me just ask you if you know.  Oh.  I've
4    got it right here.  How about the case involving
5    Dr. Elzion (phonetic)?
6    A.    No.
7    Q.    The cases combined as-- it's often referred
8    to as the police department cases.  But it's Jason
9    Atkinson, Darren Oates, Walter Slam, Michael Corbin,
10   Matthew Justice (phonetic), Kendra de Maria, Chad de
11   Maria, Timothy Durane (phonetic), Ronald Testa, Thomas
12   Chicklis (phonetic) and-- Christopher Waltz?
13    A.    No.
14    Q.    How about Persia Gaynor Huslew (phonetic)?
15    A.    I don't recall knowing if she went to federal
16   court, but I did work on that case on an administrative
17   level.
18    Q.    Okay.  Lynn Anderson's (ad verbum) case,
19   Dr. Lynn Anders (phonetic).
20    A.    I recall that, no.
21    Q.    Matthew Dudley?
22    A.    I worked on that case, but I don't think he
23   went to federal court.
24    Q.    If he did, would you have assisted as you do
25   in other cases?

**Page 19**

1    A.    If it was assigned to me, I would have.
2    Q.    So do sometimes they assign attorneys when
3    cases are filed in federal court?
4    A.    That's a question you have to ask management.
5    I don't know.
6    Q.    Has any case that you've worked on at the
7    administrative stage gone to federal court and you
8    haven't been assigned to assist?
9    A.    I don't recall.
10    Q.    Sabrina Patrick?
11    A.    No.  Wasn't she a part of the Koteh
12   (phonetic) case?
13    A.    No, she wasn't.  I mean, she was a witness.
14   I mean, everybody over there knows she was a witness, but
15   that was her part in that case.
16    Q.    Todd Kaleel (phonetic)?
17    A.    No.
18    Q.    Pardon?
19    A.    The cases you're naming, I probably handled
20   them on an administrative level, but I don't recall
21   working on them in federal court.
22    Q.    Do you know if someone else was assigned to
23   assist when it went to federal court?
24    A.    I don't know if it went to federal court.
25   And no, I wouldn't know that.

**Page 20**

1    Q.    Ann Stagman (phonetic)?
2    A.    No.
3    Q.    Pam Trimble I think you've already mentioned,
4    right?
5    A.    Yes.
6    Q.    Mary Mells (phonetic)?
7    A.    I believe I assisted in the administrative
8    and I think she went to federal court with Trask and
9    Truitt.
10    Q.    And would you have assisted in that case?
11    A.    Yes.  I believe I sat in on a deposition with
12   her.
13    Q.    In fact, I seem to recall that you and
14   Ms. Mulcahy were at the trial in that case, weren't you?
15    A.    Which case?
16    Q.    Trimble's.
17    MR. KENNETH:  Objection.  I thought you
18   were asking about Mells.
19    A.    Yeah.  You're confusing me.
20    Q.    Oh.  I'm sorry.  I don't mean to be confusing
21   you.  Let me go-- let's make sure that I-- In Trimble
22   you assisted.  Did you actually go to the courtroom in
23   that case?
24    A.    Yes.  I did, Mr. Magri.
25    Q.    Okay.  On Mary Mells, you're not sure that

Page 21

1  that went to federal court?
2      A.  No, I'm not sure.
3      Q.  But if it did, would you have been assisting?
4      A.  If it was assigned to me, I would.
5      Q.  Do you have any recollection that you were
6  taken off or not assigned that case when it went to
7  federal court?
8      A.  I don't remember-- I really don't remember
9  much about that case.  I don't even remember when it was.
10  So no, I don't have any recollection of anything about
11  that case.
12      Q.  How about Noris Babb?  You are assigned to
13  that when it went to federal court, right?
14      A.  Yes.
15      Q.  Rosa Slide, Anna Collingsworth, you assigned
16  to that case in federal court?
17      A.  I don't recall.  I mean, Mr. Magri, all my
18  cases I don't remember.  These cases are so old.  So I
19  can only simply-- to be honest with you, I don't recall.
20      Q.  How about Cecil Johnson's case?
21      A.  No.  I had nothing to do with his case,
22  administratively or otherwise.
23      Q.  Now, lawyers get assigned to cases in federal
24  court occasionally which they didn't handle at the
25  administrative stage.  Have you ever been assigned to a

Page 23

1      Q.  Okay.  Who are the attorneys that are located
2  in Bay Pines for either-- physically or by assignment--
3  or assigned to Bay Pines?  Because I know sometimes
4  lawyers work remotely.  But who are the lawyers, to the
5  extent you know, that are assigned to Bay Pines?
6      MR. KENNETH:  Object to the form.
7      A.  Assigned cases to Bay Pines or-- assigned
8  cases in Bay Pines?
9      Q.  I don't want to-- No.  I'm not trying to
10  limit it in that way.  I mean, I'm trying to just find
11  out who you work with.  I'm using Bay Pines because
12  that's your-- the location you indicate that you're in.
13  And what I should ask you is what other lawyers are-- and
14  I want to say assigned to that location.  But if there's
15  some better word, you can tell me in your answer to the
16  question.
17      A.  Karen Mulcahy and myself are physically
18  located at Bay Pines.
19      Q.  Okay.  Are there any other lawyers that do
20  cases that involve Bay Pines that are not located there?
21      A.  If they were assigned a case and it happened
22  to be from Bay Pines, then they would do it.
23      Q.  Do you know what type of cases they get
24  assigned?
25      A.  No.

Page 22

1  federal court case that you didn't handle at the
2  administrative stage?
3      A.  I don't recall that, no.
4      Q.  Now, how many General Counsel offices does
5  the VA have in the southeastern part of the United
6  States, if you know?
7      A.  I don't know.
8      Q.  How many did they have in Florida, if you
9  know?
10      A.  How many offices?
11      Q.  Where the attorney-- well, where the lawyers
12  can go.
13      A.  I don't want to guess.  But I only know of
14  Bay Pines in Tampa, but there may be others.  I mean, we
15  have an office in Orlando, West Palm.  Those are the only
16  four I can remember-- I can think of right off the top of
17  my head.
18      Q.  Okay.  How about Miami?  Are any there, do
19  you know?
20      A.  I don't know.  I don't know if there's an
21  office there per se.
22      Q.  Okay.  Now, do you know where the Tampa
23  office is located?
24      A.  I know it's in Tampa.  I can't tell you where
25  it is.

Page 24

1      Q.  How about the EEO cases?  Are there any other
2  lawyers other than you and Karen Mulcahy that are
3  assigned what you call Bay Pines cases?
4      A.  I don't know.  I wouldn't know.  I would not
5  know assignment of cases.  I'm not management.  So just
6  because I'm assigned a case, I don't always know, just
7  because Karen is here, what her cases are and what she's
8  assigned to.  That is not how it works.  So no, I would
9  not know.  So if your line of questioning is about
10  assignment, you should be talking to a management
11  official, not me.
12      Q.  Okay.  What I'm trying to-- at this point in
13  time, you know, there's so many different things that
14  assigned can relate to.  And I think it's been used in
15  your answers in more than one way.  But in terms of who
16  you work with on EEO cases that you handle, who are those
17  attorneys?  I'm not asking for the Assistant United
18  States Attorneys.  I'm asking for the OGC attorneys.
19      A.  Who works with me?
20      Q.  Yeah.  That work with you.
21      A.  It could vary.
22      Q.  Who are those attorneys?
23      A.  It could be any attorney within our district.
24  It could be any one of them.  So I probably have worked
25  with every one of them at some point in time.

**Page 25**

1    Q.   Okay.

2    A.   So to say there was a specific attorney that

3 I worked with on a case, no, I can't answer that.

4    Q.   All right. And do any of those attorneys

5 handle EEO cases?

6    A.   If they're working with me on an EEO case,

7 yes.

8    Q.   What attorneys have worked with you on an EEO

9 case, if you recall?

10    A.   Heather Blackman, Karen Mulcahy. Those are

11 the only two I can think of right now. But I've worked

12 with all the attorneys at some point on something.

13    Q.   And when you say all the attorneys at some

14 point on something, are you referring to EEO cases?

15    A.   Maybe. It could be-- I can't just-- I don't

16 know the difference. I work with the attorneys and I

17 don't recall which person worked with me on MSPB, EEO or

18 anything else I'm working on. I just work with the

19 attorney, so I cannot give you a list of names.

20    Q.   Do attorneys share information with each

21 other in your experience?

22    A.   I cannot speak for all the attorneys. I do

23 not know. I know I do.

24    Q.   And do you share information about EEO cases?

25    A.   Yes.

**Page 26**

1    Q.   MSPB?

2    A.   Yes.

3    Q.   Arbitration?

4    A.   Yes.

5    Q.   Grievances?

6    A.   Yes.

7    Q.   Are there attorneys that don't work on EEO

8 cases?

9    A.   I do not know.

10    Q.   You don't know any attorneys that don't?

11    A.   We do have an administrative section. And I

12 don't know if they do EEO cases or not. I don't know if

13 they've had any labor cases, so no, I don't know.

14    Q.   What do you consider a Bay Pines case?

15    A.   I would say it's where it originated from.

16    Q.   Okay. And what's that mean?

17    A.   What does what mean?

18    Q.   Where it originated from.

19    A.   Where it was filed.

20    Q.   Okay. Let's talk about EEO cases.

21    A.   I thought that's what we were talking about.

22    Q.   Okay. Good. I hope so. I just wanted to

23 make sure because your last answer just threw me a little

24 bit. But the thing is, aren't EEO cases filed with the

25 ORM?

**Page 27**

1    A.   Yes.

2    Q.   Okay. And do they-- are they filed in

3 different geographical locations with ORM?

4    A.   I don't know. I don't know how ORM is set

5 up.

6    Q.   All right. So when you say it depends on

7 where it was originated, you're not referring to-- it

8 doesn't sound to me it like you're referring to where it

9 was filed unless you're referring to the location of the

10 facility in which it-- the people are located. Can you

11 explain to me about what you mean about where it was

12 filed?

13    A.   Where it was filed is-- I guess it's better

14 to say that it's wherever the complainant's name that

15 makes the allegation against. That's what I mean.

16 Whether it's a person in Tampa, whether it's a person in

17 Gainesville, then that's what I mean by originate.

18    Q.   Okay. And we're still talking about EEO

19 cases, correct? Right?

20    A.   I am.

21    Q.   Okay. Well, I don't want to be talking

22 about-- let's just get that-- right now. Unless one of

23 us clarifies directly, let's just talk about EEO cases.

24    A.   Okay.

25    Q.   So if the person is located in Gainesville,

**Page 28**

1 you would handle that case, correct? If it's assigned to

2 you, you would handle that case?

3    A.   Yes.

4    Q.   All right. If the person is located in

5 Orlando, would you handle that case if it was assigned to

6 you?

7    A.   Yes.

8    Q.   If the person was located in Tampa, would you

9 handle that case if it was assigned to you?

10    A.   Yes.

11    Q.   If the person was in Naples, would you handle

12 that case if it was assigned to you?

13    A.   Well, that's a part of Naples.

14    Q.   Okay. And is that true for Fort Myers?

15    A.   I'm not sure if Fort Myers is a part of Bay

16 Pines.

17    Q.   How about Sarasota?

18    A.   I think Sarasota is a part of Bay Pines.

19    Q.   Okay. Do you know how many CBOCs are

20 associated with Bay Pines?

21    A.   No.

22    Q.   Okay. So have any of those cases that have

23 been assigned to you involving Gainesville, have any of

24 those ended up going to federal court?

25      MR. KENNETH: Objection. Asked and

Page 29

1  answered.  You can answer, Ms. Burton.
2  **A.**  I don't recall any.  And as I told you before
3  when you asked that, all the cases I recall are Bay
4  Pines.
5  **Q.**  That have gone to federal court?
6  **A.**  Yes.  I believe I said that early on.
7  **Q.**  Well, I'm not sure exactly what you said.
8  **A.**  Well, we can read it back.
9  **Q.**  Huh?
10  **A.**  We can read it back.
11  **Q.**  I don't need to.  I can ask the question and
12  get an answer.
13  **A.**  All right.
14  **Q.**  With regard to the cases from Orlando, have
15  any of those gone to federal court?
16  MR. KENNETH:  Object to form.
17  **A.**  I don't recall, Mr. Magri.  And the only
18  thing I can tell you so we could fast forward is the only
19  cases I recall working on or assisting are Bay Pines
20  cases.  So if you're going through each hospital, I'm
21  going to tell, it's Bay Pines.  That's all I know.
22  **Q.**  Okay.  You can.  But I'm just going to make
23  sure that on the record I've got this-- I've got this as
24  clear as I can be because I think something that was said
25  before made me feel that you were saying something

**ASKINS COURT REPORTING, INC.**
813.966.7936     d_askins@tampacourtreporting.net

Page 30

1  different.  And so I am-- I'm just making it clear in my
2  own mind.
3  With regard to Tampa EEO cases that have been
4  assigned to you, have any of those gone to federal court?
5  **A.**  I do not know.  I don't recall.
6  **Q.**  Now, have your duties as a staff attorney
7  changed since 2007?
8  **A.**  No.
9  **Q.**  Have you ever had supervisory
10  responsibilities for any other employees?
11  **A.**  No.
12  **Q.**  Let me ask you a little bit about the Trimble
13  case.  Do you recall when you were assigned to the
14  Trimble case?
15  **A.**  No.
16  **Q.**  Do you know if it was in the administrative
17  stage?
18  **A.**  Yes.
19  **Q.**  Was Ms. Mulcahy assigned to that case at the
20  administrative stage?
21  **A.**  No.
22  **Q.**  Was she assigned to it when it went to the
23  federal court stage?
24  **A.**  I don't recall.
25  **Q.**  But you were assigned to it-- or still

**ASKINS COURT REPORTING, INC.**
813.966.7936     d_askins@tampacourtreporting.net

Page 31

1  assigned to it when it went to federal court, correct?
2  **A.**  Yes.
3  **Q.**  Now, in Babb's case-- Well, let me say this.
4  There are two Babb cases, right?
5  **A.**  As far as I know.  I think so.
6  **Q.**  And are you currently assigned-- you were
7  assigned to the first Babb case: is that correct?
8  **A.**  Yes.
9  **Q.**  Okay.  Are you still assigned to that case
10  now?
11  **A.**  I am still on that case.
12  **Q.**  All right.  And with regard to the second
13  Babb case, which is the one that relates to the denial of
14  authorized absence or official time or whatever you want
15  to call it, with regard to that case, are you still
16  assigned to that?
17  **A.**  Yes.  As far as I know, I've not been taken
18  off that case.
19  **Q.**  All right.  And the-- do you know your--
20  well, I won't ask you about what's going to happen.  I
21  want to turn to the Babb case.  And when I do, I want--
22  I'm not sure who's going to pull this up, but whoever's
23  going to pull it up from my office, I'd like Exhibit 1
24  pulled up.  Let me just check.  Oh.  There we go.
25  (Screen share enabled)

**ASKINS COURT REPORTING, INC.**
813.966.7936     d_askins@tampacourtreporting.net

Page 32

1  MR. MAGRI:  Can you scroll that up?
2  **Q.**  (By Mr. Magri) Ms. Burton, if you look at the
3  screen, I'm going to be showing you a January 10th, 2022
4  letter and-- from, as you can see, the Department of
5  Justice.  And it's to myself and Meagan Culpepper.  And
6  if you scroll down, it involves Babb v. McDonough.  And
7  if you-- I'd like to scroll to Page 3.  And at some point
8  if you want to look at-- if you want to read the whole
9  letter for whatever reason, you can.  But I'm going-- the
10  part that I'm interested in from your standpoint is on
11  Page 3 of this letter.  They're not numbered pages I
12  don't think.  You just have to scroll to Page 3.
13  MR. MAGRI:  Okay.  Can you center that
14  paragraph?  Yeah.  I think the whole thing
15  can-- that's the whole paragraph.
16  **Q.**  (By Mr. Magri) Can you take a moment and read
17  that paragraph for me or with me because I'm going to be
18  reading it too.
19  **A.**  (Perusing)
20  **Q.**  Let me know when you've read it.
21  **A.**  I'm done.
22  **Q.**  Okay.  Now, is there anything in that
23  paragraph that you disagree with?
24  **A.**  No.
25  **Q.**  All right.  So you were asked by the pharmacy

**ASKINS COURT REPORTING, INC.**
813.966.7936     d_askins@tampacourtreporting.net

Page 33

1  service about the type of leave plaintiff could use for
2  depositions taken by plaintiff's attorney of agency
3  witnesses in a federal court case; is that correct?
4      A.    Yes.
5      Q.    All right.  And that's the first time that
6  you've ever been asked about that type of leave in those
7  circumstances; is that correct?
8      A.    Yes.
9      Q.    And you didn't know the answer; is that
10 correct?
11     A.    Yes.
12     Q.    And so you sought legal advice?
13     A.    I sought advice from a subject matter expert.
14     Q.    Okay.  And that is Ms. McCallum, correct?
15     A.    Yes.
16     Q.    Now, did you seek advice from HR?
17     A.    No.
18     Q.    Did you seek advice from any of the-- a
19 facility director?
20     A.    No.
21     Q.    Any of the service chiefs?
22     A.    No.
23         MR. MAGRI:  Can you pull up for us from
24 the ROI, Page 2 of the ROI.  I think it's 2.
25 It's Page 2 of the report at least.  Let me see

Page 34

1  what page that might be.  That might be page--
2  Hold on.  Page 92 of the ROI.  Page 2 of the
3  report, but Page 92 of the ROI.  Scroll to the
4  bottom.
5      Q.    (By Mr. Magri) Do you see where the--
6         MR. MAGRI:  Just scroll down a bit so we
7  can get the first paragraph of these three.
8  No.  I meant if up I guess.  There you go.
9      Q.    (By Mr. Magri) Do you see here where that
10 there's a-- that we're talking about February of 2016?
11     A.    Yes.
12     Q.    Does that sync with your memory of when
13 this-- these conversations occurred?
14     A.    I really don't have a memory of when it
15 occurred.  If that's what it says, that's what it says.
16     Q.    Okay.  Well, let me ask you this way.  Is
17 this the incident that you're talking about?  This is the
18 ROI for Dr. Babb about the denial of leave.
19     A.    Okay.  I have to clarify.  I don't believe
20 her leave was denied.  But this-- the incident-- you
21 brought that up.  I thought we were talking about the
22 advice that I got from Debra.  And then we were talking
23 about the email-- I mean, the letter from DOJ.
24         So if we're talking about where she didn't get
25 AA, then this is correct.  So I don't believe her leave

Page 35

1  was ever denied.
2      Q.    Okay.  Well, this is the ROI about her not
3  receiving AA?
4      A.    Yes.
5      Q.    Okay.  Does this first paragraph indicate the
6  correct time period for when you would have made your
7  contact with Ms. McCallum after the pharmacy contacted
8  you?
9      A.    I'm assuming-- I don't remember.  I don't
10 remember the date.  I really don't.
11     Q.    Okay.
12     A.    If this says 2016 and there's documents to
13 support that, then it must have been.  But if you're
14 asking me about my memory, I'll have to tell you, no.  I
15 do not remember.
16     Q.    Okay.  Well, what I'm going to do is I'm
17 going to go actually look at the document because as you
18 can see, they give pages tabs here where there's
19 documents relating to this.
20         But what your memory is is that it was in
21 relation to Dr. Babb's request for AA that you had to
22 contact with Ms. McCallum, correct?
23     A.    Correct.
24     Q.    Okay.
25         MR. MAGRI:  Let's go to tab-- let's see

Page 36

1  if we can get the documents that Ms. Burton
2  would like to see.  Let's go Tab 77, if we can,
3  which I think is-- I'll tell you what it is
4  because I have my tabs right here.  It's Page
5  152.
6      Q.    (By Mr. Magri) All right.  Now, this is after
7  Dr. Babb has been told she'll not get AA, I believe.
8         MR. MAGRI:  I said let's scroll this page
9  and see what it-- it started on the page before
10 it.  The page after that.  I'm not sure.  Hold
11 on a minute.  Okay.  Keep going until I think
12 it's on page-- they begin again on 155.
13     Q.    (By Mr. Magri) Now, if we look at 155, is
14 there-- I found 155.  It's Tab 178.  Tab 77 begins on
15 Page 154.  We're going to go have to through 7 and 8 in a
16 minute, but 77 begins on Page 154.  And if you go to the
17 bottom, it's Dr. Babb to Carolyn Combs.  Hi, Carol.  I
18 just got the dates and times.  I'll be needing off
19 Tuesday 16th all day, Thursday 18th all day, Friday 19th.
20 Should be done by 1:00 or 2:00.  Do you see that email,
21 Ms. Burton?
22     A.    Yes, he did.
23     Q.    Okay.  And that email is dated February 3,
24 2016, correct?
25     A.    Yes.

Page 37

1    **Q.**    And the next response is, it says-- or the
2    next email says, sorry, Friday 19th I'll request all day
3    and tentatively Friday 25th.  Don't know time yet.  I
4    believe this is AA.  Okay.  Did I read that correctly?
5    **A.**    Yes.
6    **Q.**    And that is also February 3?
7    **A.**    Okay.
8    **Q.**    So the response to that comes on February 3
9    from Carolyn Combs to Dr. Babb, correct?
10   **A.**    I don't know.
11   **Q.**    Well, it's right above it.
12   **A.**    Okay.
13   **Q.**    Thank you for the dates.  To make sure I
14   understand, the requests are 2/16, 2/18, 2/19 for the
15   entire workday.  I put in a correct request yesterday for
16   guidance on what type of leave can be granted.  I'm still
17   waiting to hear back.  Is attendance mandatory or
18   optional for these dates?  Did I read that correctly?
19   **A.**    Yes.
20   **Q.**    To your understanding, are these the-- is
21   this AA request for which you sought clarification or
22   advice from Ms. McCallum?
23   **A.**    I don't have an understanding.  I had a phone
24   call.  I did not have this email.  So it possibly can be
25   or it may be something else.  I don't know.  I did not

Page 38

1    have this email in front of me when I was seeking advice
2    from Ms. McCallum.
3    **MR. MAGRI:**  Scroll this up to the very
4    beginning of 77 and tell me if you've seen any
5    of these documents before.
6    **A.**    (Perusing)
7    **Q.**    She'll move it when you ask her to.
8    **A.**    I've seen them in the ROI.  But at the time I
9    was speaking to Ms. McCallum, no.
10   **MR. MAGRI:**  Okay.  Let's go to Tab 78.
11   **Q.**    (By Mr. Magri) Take a moment and take a look
12   at those emails that are on Tab 78, which is ROI Page
13   155.
14   **A.**    I've seen these in the ROI.  And as I've
15   said, when I sought out Ms. McCallum, no.  And I'm not
16   copied on any of these emails so I wouldn't have a reason
17   to have them.
18   **Q.**    Okay.  The top email on 155 says, per
19   Regional Counsel, the type of leave to be submitted is
20   AL?
21   **A.**    Yes, and that is true.
22   **Q.**    Okay.  Do you know if you're the Regional
23   Counsel that's referred to in this email?
24   **A.**    I probably am unless she asked someone else.
25   **Q.**    This is Gary Wilson that's writing this.

Page 39

1    **A.**    Well, unless he asked someone else.  I don't
2    know if he went to someone else.
3    **Q.**    Did he go to you?
4    **A.**    He didn't come to me, no.
5    **Q.**    Who came to you?
6    **A.**    As far as I can remember, I think it was
7    Ms. Combs.  But I did not to Mr. Wilson.  I don't
8    remember talking to him.
9    **MR. MAGRI:**  Now, let's go to Page 79.
10   It's Page 156, Tab 79.
11   **Q.**    (By Mr. Magri) Do you have that-- have you
12   had a chance to read this?
13   **A.**    Yes.
14   **Q.**    Well, let me just ask you for the record
15   purposes.  Do you have a copy of the ROI there with you?
16   **A.**    I can pull it up.
17   **Q.**    Well, that's okay.  I just wanted to know
18   whether or not you were able to get there faster than my
19   looking at the screen here.
20   **A.**    Well, you know, I can pull it up.  Let me
21   see.  I sent to me.  Okay.  Let me do this.  Okay.
22   Which one did you want me to see?
23   **Q.**    I want to you see them both.  These are two
24   emails that are on-- Tab 79, Page 156.  The first
25   email is from the EEO investigator, a Mr. Sigilai or

Page 40

1    Sigilai.
2    **A.**    Okay.
3    **Q.**    And it's to you.
4    **A.**    Okay.
5    **Q.**    And it's saying he's currently investigation
6    an EEO complaint of discrimination complaint filed at Bay
7    Pines Healthcare Center.  During testimony, Bay Pines
8    management has stated that the decision to offer the
9    complainant annual leave instead of leave that did not
10   deduct from her annual leave as she had requested was
11   made by Regional Counsel.  Can you provide insight on
12   this or was this communication of Bay Pines privileged?
13   If you give privilege, can you provide a copy of the
14   documentation relied on when deciding that annual leave
15   should be provided instead of administrative leave that
16   did not deduct from the complainant's annual leave?  We
17   request a reply this week so we can continue with the
18   investigation.  Thank you.  Did I read that correctly?
19   **A.**    Yes.
20   **Q.**    Okay.  And you responded, correct?
21   **A.**    Yes.
22   **Q.**    And your response is, as per our
23   conversation, I relied on MD.110, which applies
24   exclusively to administrative EEO complaints and 29 CFR
25   1614.605 which delineates the circumstances under which

**Page 41**

1  complainant and a representative are entitled to official
2  time and administrative litigation. Did I read that
3  correctly?
4      **A.**   Yes.
5      **Q.**   Okay. Now, are you now telling us that you
6  relied on something more than MD.110 and 29 CFR 1614.605?
7      **A.**   No. You never asked me that, but the answer
8  is no. I'm not telling you that.
9      **Q.**   I never asked you what?
10     **A.**   If I relied on anything else.
11     **Q.**   I wasn't asking you anything about that. I'm
12 asking you about your email.
13     **A.**   Oh. You're talking about the email, no. The
14 email speaks for itself. No.
15     **Q.**   Okay. So you didn't indicate in this email
16 that you relied on anything other than the documents that
17 you referred to in that email, correct?
18     **A.**   That's correct.
19     **Q.**   Now, once again, the-- having looked at this,
20 is it-- is it clear that we are talking about Dr. Babb's
21 request for leave that would not deduct from her annual
22 leave, correct?
23     **A.**   We're talking about AA. If that's what it
24 means, then yes.
25     **Q.**   Okay. You know, I've done all of this so

**Page 42**

1  that I can have a date.
2      **A.**   A what?
3      **Q.**   I can have you give me your best testimony
4  about a date from having reviewed documents.
5      **A.**   If you ask me what today's date is, I'll tell
6  you I do not know.
7      **Q.**   You'll tell me you don't know what today's
8  date is.
9      **A.**   I will tell you that.
10     **Q.**   Well, this is a-- this is even better for you
11 then in order to be able to answer the question.
12     **A.**   Okay.
13     **Q.**   There are dates on the documents written by
14 people in the investigation relating to the denial of AA
15 and they relate to depositions that are being taken in
16 February of 2016, correct?
17     **A.**   Yes.
18     **Q.**   And Dr. Babb was told in February of 2016
19 that she would have to take AL instead of AA, correct?
20     **A.**   According to the emails, yes.
21     **Q.**   All right. And it's in relation to those--
22 that leave request that you got the call from Pharmacy
23 where they asked you what type of leave is appropriate?
24     **A.**   Okay.
25     **Q.**   Well, is that correct?

**Page 43**

1      **A.**   If we were talking about the same thing, yes.
2      **Q.**   Okay. Explain to me what you mean by if we
3  were talking about--
4      **A.**   If this is about Dr. Babb, then that's
5  correct. And that's the only time I got a phone call
6  about this type of leave was with Dr. Babb. So I'm
7  going-- I'm going to say yes.
8      **Q.**   Now--
9           MR. KENNETH: And Mr. Magri, we've been
10 going an hour and 10. Can we take a break?
11          MR. MAGRI: We sure can.
12          MR. KENNETH: I appreciate it. Thank
13 you.
14          MR. MAGRI: And whoever is on this from
15 my office, I'd like you to give me a call on my
16 cell, please. Thank you.
17          MR. KENNETH: Come back at 3:20? Is that
18 good?
19          MR. MAGRI: That's fine.
20          (Off the record at 3:09 p.m.)
21          (On the record at 3:23 p.m.)
22     **Q.**   (By Mr. Magri) I'd like you to take a look at
23 Page 109 of the ROI. And actually, I'm going to first
24 look at Page 107.
25          MR. MAGRI: So if we can pull up 107.

**Page 44**

1      **A.**   Okay. So you're looking at Ms. Combs'
2  affidavit?
3      **Q.**   Yes, I am.
4      **A.**   Okay.
5      **Q.**   Now, go to Page 109, Question 9.
6      **A.**   Okay.
7      **Q.**   Tell me if I read this correctly. Please
8  describe your facility's process for requesting official
9  EEO time off. As a new supervisor with no prior
10 experience of approving leave requests for depositions, I
11 asked the Associate Chief of Clinical Pharmacy Services
12 and the Chief of Pharmacy for guidance. The Chief of
13 Pharmacy consulted Regional Counsel for guidance on the
14 type of leave-- or the leave type for attendance of
15 depositions. Did I read that correctly?
16     **A.**   Yes. Real good.
17     **Q.**   Does that in any way help you in terms of who
18 you would have talked to?
19     **A.**   I may have spoken with the Chief, but I
20 really don't recall.
21     **Q.**   Okay. Let's take a moment to go to Tab 73.
22 If you take a look at that.
23     **A.**   Okay. Gary Wilson.
24     **Q.**   That's his affidavit, correct?
25     **A.**   Yes.

Page 45

1    **Q.**    Now, if you look on Page 121.

2    **A.**    Okay.

3    **Q.**    Now. . .

4    **A.**    Are you looking at Question 10?

5    **Q.**    Actually, I was looking above it. The

6  Question 9, the 9 isn't on this page, but it's on the

7  prior page. But he's asked-- Pharmacy Chief Wilson is

8  asked why was complainant denied her request for leave

9  that did not deduct from her annual leave to attend

10  management depositions. And the answer is, per advice of

11  Regional Counsel. Do you see that there?

12    **A.**    Yes.

13    **Q.**    Okay. And when he was asked what policy or

14  procedure was used to determine it was acceptable to deny

15  the request, he said per advice of Regional Counsel. Did

16  I read that correctly?

17    **A.**    Yes.

18    **Q.**    And then when he asked about the other people

19  that were going to be testifying at the depo, he said

20  those individuals were AA to attend their own depos,

21  correct?

22    **A.**    Yes. That's what it says.

23    **Q.**    Okay. Now we'll go to Question 10. Did you

24  consult with anyone regarding the complainant's request

25  for time off that did not deduct from her annual leave to

**ASKINS COURT REPORTING, INC.**

813.966.7936    d_askins@tampacourtreporting.net

Page 46

1  attend management depositions? And the answer is yes,

2  correct?

3    **A.**    Yes.

4    **Q.**    And then under that is, if yes, with whom did

5  you consult. Answer, Regional Counsel. When did you

6  consult with this person or persons on approximately

7  February 5, 2016. What was discussed? Type of leave

8  authorized for the complainant to attend depositions

9  other than her own? What was the outcome of the

10  discussion? Per Regional Counsel, the type of leave to

11  be submitted was AL. Did I read those correctly?

12    **A.**    Yes, you did.

13    **Q.**    Does that help refresh your recollection as

14  to whether-- as to who you spoke to within Pharmacy?

15    **A.**    I believe you're trying to ask me if I spoke

16  with Gary Wilson. I don't recall speaking with Gary

17  Wilson. I do not recall that. Maybe I did. Maybe I

18  didn't. I don't recall.

19    **Q.**    Do you recall speaking with someone else?

20    **A.**    I believe I testified earlier that I believe

21  I spoke with Carolyn Combs.

22    **Q.**    Is that what your recollection is?

23    **A.**    I believe that's what I just said. That's

24  what I recall.

25    **Q.**    I know what you just said--

**ASKINS COURT REPORTING, INC.**

813.966.7936    d_askins@tampacourtreporting.net

Page 47

1    **A.**    That's what I recall.

2    **Q.**    Oh. Okay. We read her testimony. As far as

3  the-- you've mentioned-- earlier you mentioned that there

4  were different names for General Counsel. At one point

5  it was District Counsel, another time Regional Counsel

6  and another time it may have just been General Counsel;

7  is that right?

8    **A.**    No. We've always had General Counsel is how

9  we've been broken up.

10    **Q.**    Okay. And at this point how were you broken

11  up in February 3, 2016?

12    **A.**    I'm not sure. I'm not sure if we're district

13  or regional.

14    **Q.**    Did it matter in terms of who you dealt with

15  on your cases?

16    **A.**    Whether we were Regional or District?

17    **Q.**    Yes.

18    **A.**    No. Whatever the title is and however we're

19  broken up, that's just-- that's just where we were.

20    **Q.**    You still talk with the same attorneys; is

21  that correct?

22    **A.**    Unless we get new ones.

23    MR. KENNETH: Object to the form.

24    **Q.**    (By Mr. Magri) Okay. You had indicated that,

25  in one of your answers here, that you would talk to-- I'm

**ASKINS COURT REPORTING, INC.**

813.966.7936    d_askins@tampacourtreporting.net

Page 48

1  asking this question because I believe there was an

2  answer that you gave where you said-- when I asked what

3  other attorneys you would talk to. And you said other

4  attorneys in my district. So I tried to figure out what

5  this was at this point-- at this point, in February of

6  2016, whether it was district or region.

7    So with that introduction, given the fact that

8  it didn't matter whether it was a region or district,

9  should I assume that that meant it didn't matter-- or it

10  didn't affect who you would talk to?

11    MR. KENNETH: Object to the form.

12    **A.**    Well, to answer your question, no, you should

13  not assume anything. And to clarify, I will talk to any

14  attorney that works for OGC that may have some

15  information that may be considered an expert or just

16  bounce things off. We're like a law firm. We're like

17  you. Your attorneys talk to each other. It doesn't

18  matter what cases they're working on. And that is how we

19  do it as well. So district, regional, whether it-- if

20  you have partners or not, a legal issue is a legal issue

21  and you go to a person-- a source.

22    **Q.**    Okay.

23    **A.**    So no, regional or district makes no

24  difference when it comes to representing the client.

25    **Q.**    So while-- since the time you were there in

**ASKINS COURT REPORTING, INC.**

813.966.7936    d_askins@tampacourtreporting.net

## Page 49

1  2007, there were a number of depositions taken in federal
2  court, weren't there?
3      A.   I do not know. I'm assuming there were, at
4  least with me. I can only speak from my experience.
5      Q.   Okay. Did you talk to other attorneys about
6  the type of leave that was given when employees attended
7  depositions that weren't their own?
8          MR. KENNETH: Object to the form.
9      A.   As I said and testified earlier, Mr. Magri,
10 that was the first time that question had come to my
11 attention.
12     Q.   Okay. Now, who did you talk to talk to find
13 out the, quote, unquote, the subject matter question?
14     A.   I don't understand that question.
15     Q.   Well, you've referred to Ms. McCallum as the
16 subject matter expert. Who told you she was the subject
17 matter expert?
18     A.   I consider her a subject matter expert and
19 she has been deemed that as well by OGC. So I don't know
20 who deemed her to be that or who told me. But to me, she
21 is the subject matter expert.
22     Q.   With regard to federal court?
23     A.   I don't know if it's federal court. I know
24 she does primarily administrative. If there's an issue
25 involving an EEO complaint, I would consider her as the

**ASKINS COURT REPORTING, INC.**
813.966.7936    d_askins@tampacourtreporting.net

## Page 50

1  expert.
2      Q.   Okay. You appended-- you recognized there
3  was a policy with regard to leave, didn't you, at one
4  point in this case?
5          MR. KENNETH: Object to the form.
6      A.   I don't recall-- I don't know what you mean
7  by did I recognize there was a policy. I know there's a
8  leave policy.
9      Q.   Okay. Did you look at that?
10     A.   No.
11     Q.   Why not?
12     A.   Because I called the subject matter expert.
13     Q.   Do you know that the leave policy covers
14 things like court leave and administrative absence?
15     A.   I'm sure it does.
16     Q.   But you didn't look at that?
17     A.   No, I did not.
18     Q.   Have you looked at it since?
19     A.   I believe it's an ROI.
20     Q.   Okay. Do you recall what it says?
21     A.   No, I do not.
22         MR. KENNETH: Form.
23     Q.   (By Mr. Magri) Let's go to Page 138 of the
24 ROI.
25     A.   Tab 7-6?

**ASKINS COURT REPORTING, INC.**
813.966.7936    d_askins@tampacourtreporting.net

## Page 51

1      Q.   I think you're right, but let me actually see
2  it first. Yes, Tab 7-6, Page 138.
3      A.   Okay.
4      Q.   Okay. Now, that indicates at the very
5  bottom, method of request, memo through supervisory
6  channels and HRNS and ELR. Do you see that?
7      A.   Yes.
8      Q.   Okay. And then it says-- that's for the
9  method of request. And then it says approving official
10 in the right column is Associate Director, Assistant
11 Director, Chief of Staff or Associate Director For
12 Patient Nursing Services as appropriate. Do you see
13 that?
14     A.   Yes, sir.
15     Q.   And before, you indicated you did not talk to
16 any of those people about this, correct?
17     A.   Correct.
18     Q.   All right. Now, at the time you-- this
19 matter came up in February of 2016, you already knew
20 there was an issue about this, didn't you?
21     A.   An issue about what? Could you clarify?
22     Q.   Whether or not you were improperly denying
23 leave to employees in federal court.
24     A.   I'm sorry, Mr. Magri. You have to clarify
25 your question. I'm not following you.

**ASKINS COURT REPORTING, INC.**
813.966.7936    d_askins@tampacourtreporting.net

## Page 52

1      Q.   You were aware that this issue did not first
2  come to your attention in February of 2016; isn't that
3  correct?
4      A.   What issue?
5      Q.   The issue of what kind of leave somebody
6  gets.
7      A.   Okay.
8      Q.   Isn't that a fact?
9      A.   No. Because I still don't understand your
10 question.
11     Q.   Okay. Well, let me make sure I ask it so you
12 can understand it.
13     A.   Okay. Please do. Because I want to answer
14 your question.
15     Q.   I want you to, believe me.
16     A.   I don't understand it.
17     Q.   I want you to answer my question.
18     A.   Okay. I want you to ask it.
19     Q.   The first time that the leave that someone
20 gets for attending a deposition or proceeding other than
21 their own in federal court was not in February of 2016,
22 correct?
23     A.   Now you said two things, deposition and
24 proceeding.
25     Q.   Okay. Let's go with deposition.

**ASKINS COURT REPORTING, INC.**
813.966.7936    d_askins@tampacourtreporting.net

Page 53

1    **A.**   Okay.  So if I understand you right, you're
2    saying that this issue has come up before.  Is that what
3    you're trying to say?
4    **Q.**   Yes, I am.
5    **A.**   This is the first time this issue has come to
6    me.
7    **Q.**   Okay.
8    **A.**   I can only speak for me.
9    **Q.**   All right.  Has the issue come up about-- in
10   addition to depos, has the issue come up about
11   proceedings before?
12   **A.**   Not to me.  Not that I recall, Mr. Magri.
13   **Q.**   How about a client attending a federal court
14   proceeding?  Has that issue come up before this?
15   **A.**   The issue has not come up to me.
16   **Q.**   Okay.  Do you know who the supervisor of
17   Dr. Truitt and Trask was?
18   MR. KENNETH:  Object to the form.
19   **A.**   No.  I know they worked in Pharmacy and
20   Dr. Wilson was the chief.
21   **Q.**   Okay.
22   **A.**   But I don't know who they reported to.
23   **Q.**   Did they have court-- depos in federal court
24   in their case?  By the way, just so the record's clear,
25   you said that you were involved in their federal court

Page 54

1    case, assigned, right?
2    **A.**   I recall being-- sitting in a deposition with
3    them.
4    **Q.**   Okay.  Where they were deposed or other
5    depos?
6    **A.**   I don't recall.  I think there may have been
7    other depos.  I don't recall.
8    **Q.**   All right.
9    **A.**   But I want to go back to your question when
10   you said something was a fact.  I want to make it clear
11   on the record that was not a fact the way you said it and
12   what you said.
13   **Q.**   Well, I think we're going to let the record
14   speak to what the facts are.
15   **A.**   Well, good.
16   **Q.**   Now, you were involved in the Truitt and
17   Trask case, correct?
18   **A.**   I believe we've established that.  I sat in
19   on their depositions.
20   **Q.**   I know.  But you just broke the answer up
21   with some other statement so I just want to make sure
22   it's clear.  You were involved in assisting in the Truitt
23   and Trask federal court case, correct?
24   **A.**   Yes.
25   **Q.**   And the attorney, the AUSA, you were

Page 55

1    assisting in that case was Mr. Kenneth, correct?
2    **A.**   As far as I recall, yes.
3    **Q.**   Okay.  By the way, do you know who the people
4    that were being deposed in February of 2016 were?
5    **A.**   No.
6    **Q.**   Do you know whether they were the principal
7    RMOs in this case-- in Dr. Babb's case?
8    **A.**   No.  I don't recall.
9    **Q.**   Do you know that Dr. Babb was given AA for
10   some depos that didn't involve the principal RMOs?
11   **A.**   No.  I wouldn't know that.
12   **Q.**   Now, the Truitt and Trask case, they were
13   also given AA to attend many depositions, weren't they?
14   **A.**   I don't know, Mr. Magri.  I wouldn't know
15   what they got.  They don't work for me.
16   **Q.**   Okay.  You haven't looked at any of the
17   discovery that's been produced in this case concerning
18   the AA given to Truitt, Trask or Babb?
19   **A.**   I may have, yes, but I don't recall that.
20   **Q.**   Okay.
21   **A.**   So I don't know.
22   **Q.**   Let's take a look at--
23   MR. MAGRI:  If you could pull up the
24   email to Dr. Truitt.
25   **A.**   You're asking me to do that?

Page 56

1    **Q.**   No, no.  I'm asking my office.
2    **A.**   Oh.
3    MR. MAGRI:  Meagan I guess or-- Meagan or
4    Jamie.
5    THE WITNESS:  She wants to know what
6    document.  She couldn't hear you.
7    MR. MAGRI:  It was the email that related
8    to Dr. Truitt's request for AA.  I believe you
9    should-- I believe you should have there a
10   document relating to Dr. Trask and a document
11   relating to Dr. Truitt.
12   **A.**   An ROI?
13   **Q.**   No.  Not you.  I'm talking to my office.
14   **A.**   Oh.  Okay.
15   **Q.**   In fact, let's take a little break and I'm
16   going to get off here and I'm going to talk directly to
17   my office so that we don't waste time.
18   **A.**   Okay.  That's a good idea.
19   **A.**   Wait a minute.  Maybe they got it.
20   **A.**   All right.  Good.
21   MR. KENNETH:  Have these documents been
22   disclosed, Mr. Magri, or produced?
23   MR. MAGRI:  I don't know that this-- I
24   don't know whether this document has been
25   produced in this case or not as yet, but it's

Page 57

1  being produced right now.
2        MR. KENNETH:  Well, can we have these
3  documents in advance of-- the discovery closed
4  yesterday.  I'm going to object to any
5  questions about documents that haven't been
6  disclosed in this case where discovery was open
7  for a year.
8        MR. MAGRI:  The only thing is, what's
9  been disclosed in this case about the testimony
10  here of this witness and me taking this depo
11  allows me to impeach that testimony.  And we've
12  been searching for documents relating to this
13  testimony.  And we have-- in fact, that search
14  is still going on.
15        But right now would you put up that
16  document because I'm going to ask about it.
17  Otherwise, we'll come back when I can ask about
18  it.  But first, I'm going to give it a shot
19  about asking about it.
20    Q.   (By Mr. Magri)  All right.  This is a document
21  in 2015.  Do you see that?  February of 2015, correct?
22    A.   Yeah.
23    Q.   Okay.  That's a year before.
24    A.   Okay.
25    Q.   Do you know who Amanda Schmig is?

Page 58

1    A.   No.
2    Q.   The email says, Just for clarification, as
3  per our conversation yesterday, Regional Counsel and
4  Mr. Kenneth stated we could only use AL to attend the
5  deposition of Dr. Robert Stewart on February 10th and
6  11th.  We cannot use AA, correct, is the question.  Thank
7  you for your time.
8        Now, let's go up to see.  And this is from
9  Ms. Schmig to Truitt.  It is correct that you will need
10  to use AL if you choose to attend the deposition of
11  Dr. Stewart on February 10th and 11th.  To clarify, this
12  was a decision made by Regional Counsel and relayed by
13  Mr. Kenneth.  Please let me know if I can be of further
14  assistance.
15        Did I read that correctly?
16    A.   Yes, you did.
17    Q.   Okay.  Now, does that refresh your
18  recollection that these issues came up long before
19  February of 2016?
20    A.   No, it does not.
21    Q.   Okay.  But aren't-- Dr. Stewart was also an
22  RMO in the Truitt and Trask case, wasn't he?
23    A.   I don't recall.  I don't remember.  I don't
24  know.
25    Q.   Now, that same disposition was leveled on

Page 59

1  Dr. Trask at that point in time, wasn't it?
2    A.   I don't know, Mr. Magri.
3    Q.   Okay.  I'm going to--
4        MR. MAGRI:  Can we pull up the-- did
5  Dr. Trask send an email to us about this?
6        THE WITNESS:  I'm assuming you're talking
7  to your office again?
8        MR. MAGRI:  I am.  I'll talk to you
9  afterwards.
10    Q.   (By Mr. Magri)  All right.  This is an email
11  to our office.  It says my-- and I believe this email to
12  be partially wrong given the first one that I said there,
13  but I'm going to read it to you in any event.  My
14  authorized AA for trial February 10 and 11-- I believe
15  that is wrong.  I think that was a deposition.  Was
16  denied by my supervisor.  I do not want to be AWOL, but I
17  do need to attend tomorrow's trial proceeding.  This is
18  dated February 9th.  And I believe that's the depos
19  that's the next-- the one we just went over.
20        Mr. Kenneth told my supervisor not to approve
21  AA, but that AL vacation time should be approved.  I
22  think Mr. Kenneth knows that Anita and I don't have
23  enough AL to make it through trial and we will not be
24  able to attend.  And that's from Dr. Trask.
25        I thought I was more appropriate to clarify

Page 60

1  two things to do Anita Truitt's email from her-- which
2  involved her supervisor.  And that the-- I believe it
3  clarifies what was happening on February 10 and 11 and
4  also that the decision was actually made by Regional
5  Counsel and relayed to Mr. Kenneth.
6        But in any event, you still maintain that the
7  first time you heard about this was February of 2016,
8  correct?
9    A.   That's what I recall, Mr. Magri, if it was
10  2016.
11    Q.   Thank you, ma'am.
12    A.   You're welcome.
13    Q.   Now, when Rosa Sligh (phonetic) was attending
14  depos in her case, she was allowed to do that on AA until
15  you came to a depo that involved the RMO in her case,
16  Donna Griffin Hall; isn't that correct?
17    A.   No, it's not correct.
18    Q.   Well, did you have-- did you ever have any
19  role in denying AA to Rosa Sligh (phonetic)?
20    A.   First of all, I don't deny leave.  That's the
21  first thing.  I'm not a supervisor and I'm not Rosa
22  Sligh's supervisor, so no.  I didn't have any role in
23  denying anybody's leave.
24    Q.   Okay.  Do you think you had any role in
25  denying Dr. Babb's leave?

Page 61

1    **A.**    I don't deny leave, Mr.-- Mr.--

2    **Q.**    Magri.

3    **A.**    Magri.  I had another name, but that's okay.

4    Magri's good.

5    **Q.**    Thank you.  Thank you.  I'm not even going to

6    guess what the other name would be.  I'm sure it's very

7    pleasant.  As far as-- as far as if it's the supervisor

8    that denies the leave, why didn't you-- why didn't you

9    encourage the supervisor to follow the AA policy through

10   the normal channels?

11   **A.**    Well, first off, I don't know if the

12   supervisor is the one who denies the leave depending on

13   the service.  I don't know.  It's a big facility,

14   different services.  So I don't know if it's a supervisor

15   that would deny the leave or a designated person.  I

16   don't know.  And when the call came into me, it was a

17   legal question.  And as an attorney, I have an ethical

18   obligation to try to help my client.  And that is what I

19   did.

20   **Q.**    And your first advice wasn't to follow the

21   channels that are in place and have been in place for

22   years to answer this question?

23   **A.**    My advice was what the guidance I received

24   from Ms. McCallum.

25   **Q.**    Yeah.  But she's not in the chain of

Page 62

1    command--

2    **A.**    And I'm not either.

3          MR. MAGRI:  Now, let's get a couple other

4    pages.

5    **Q.**    (By Mr. Magri) I had various questions that I

6    wanted to ask you about.  Let me just step back.  We've

7    been produced in this case various documents that relate

8    to administrative absence.  And I think you indicated

9    that you may have looked through those documents: is that

10   correct?

11   **A.**    May have.

12   **Q.**    But you're not sure?

13   **A.**    No.  I'm not sure.

14   **Q.**    And there's nothing in them that you have any

15   opinions about?

16   **A.**    No, sir.

17         MR. KENNETH:  Object to the form.

18   **Q.**    (By Mr. Magri) How about the-- since you got

19   this advice from Ms. McCallum, who have you talked to in

20   the Regional Counsel's office concerning this?

21   **A.**    I don't recall everybody I spoke with,

22   Mr. Magri.  I don't recall.  I mean, do you want to

23   narrow it down?  Do you want to ask me what specific day

24   did I talk about it to?  That's one thing, but no.

25   **Q.**    Well, if you remember anyone specific that

Page 63

1    you talked to, I'd like to know.

2    **A.**    No.

3    **Q.**    You don't remember?

4    **A.**    No.

5    **Q.**    Did you talk to the facility director about

6    it?

7    **A.**    I don't recall speaking with the facility

8    director about this issue.

9    **Q.**    Did you talk to any of the approving

10   officials that are listed in that policy about it?

11   **A.**    No.  I don't recall talking to them either.

12   Not to say I didn't.  I just don't recall it, Mr. Magri.

13   **Q.**    Has there been any guidance issued-- written

14   guidance issued by VA Central Office concerning this

15   issue?

16   **A.**    I don't know, Mr. Magri.

17   **Q.**    Are you aware of any?

18   **A.**    I'm not aware of any, no.

19   **Q.**    Are you aware of any guidance issued by the

20   General Counsel's Office on these matters?

21   **A.**    I'm not aware, but there may have been.  I

22   don't know.

23   **Q.**    Okay.  You recall the AIB investigation that

24   went into Pam-- Pamela Trimble?

25   **A.**    No, sir.  I do not.

Page 64

1    **Q.**    Okay.  Let me focus on a portion of it.  Do

2    you recall that there was a recommendation for a

3    three-day suspension without pay against Ms. Trimble?  Do

4    you recall that?

5    **A.**    No, I do not.

6    **Q.**    Do you recall that being issued by someone

7    who had had no experience with Ms. Trimble or what had

8    been going on prior to the time that they issued it?

9    **A.**    I don't recall the three-day suspension, so

10   no, I would not recall if it was issued.

11   **Q.**    Do you recall Judge Scriven asking you to

12   stand up along with Ms. Mulcahy in federal court and

13   discuss that issue?

14   **A.**    No, I do not.

15   **Q.**    Okay.

16   **A.**    I recall Judge Scriven asking me to stand up.

17   **Q.**    Oh.  Okay.  And what do you recall her asking

18   or saying?

19   **A.**    Why I shook my head.

20   **Q.**    Oh.  About signaling witnesses?

21   **A.**    No.  She asked me why I shook my head.

22   **Q.**    And what did you say?

23   **A.**    I said it was a reaction.

24   **Q.**    And is that what she called you up for?

25   Anything else?

Page 65

**A.**  No.

**Q.**  Okay.  In Ms. Trimble's case, that AIB investigation resulted in a finding or a-- I don't know if it's a finding or a--

MR. MAGRI:  Can you pull-- do we have that document where it references Ms. Burton, the AIB report?  I don't want to call it a finding if it was a-- many things they called things.  So I want to make sure that I'm right.  Do we have that document?  If so, can we pull up the portion that relates to Ms. Burton?

MR. KENNETH:  Mr. Magri, are we disclosing more documents after the close of discovery?

MR. MAGRI:  I don't know.  I mean, this has not been disclosed in-- this has been disclosed in this case in fact.  This was the disclosed in the administrative stage.  So let's--

Can we go to the court-- the part that relates to Ms. Burton?  No.  This is not-- this doesn't look like-- Oh.  This is her testimony.  But I'm actually interested in the report where it made a statement about Ms. Burton.

Page 66

**A.**  For the record, that's not my testimony if it's Mr. Burton.

**Q.**  Oh.  Okay.  Maybe I should-- Hold on one second.

THE WITNESS:  I'm going to get some water.

MR. MAGRI:  Go ahead.  Do you have to leave?  Because we'll take a brief break if you want.

THE WITNESS:  No.  I'm just stepping outside my door while you do what you do.  It won't take me less-- it will take me less than--

MR. MAGRI:  All right.  Thank you very much.

I'm going to mute this and talk to my office.

MR. KENNETH:  Sounds good.

THE WITNESS:  I'm back.

(A recess was taken at 4:01 p.m.)

(The Zoom deposition resumed at 4:04 p.m.)

**Q.**  (By Mr. Magri) Okay.  I'm going to do-- at this point, because I guess they-- my office does not have the Report of Investigation handy.  There was an

Page 67

affidavit filed by Pamela Trimble at the administrative stage.  And I'm going to read one of-- Paragraph 4 of that and ask you if you agree with this.

The September 26, 2012 AIB report of investigation contained the following statement:  Quote, information developed by T.B. Burton in the course of the ongoing related litigation inflamed an already divisive and hostile environment in cardiology.  Do you recall that being in the AIB?

**A.**  (Inaudible)

**Q.**  I didn't get the answer.  Maybe the court reporter did.

**A.**  No.  I was muted, Mr. Magri.  No.  I don't recall that.

**Q.**  All right.  Thank you.

MR. MAGRI:  Okay.  Can we take a brief break?  I'm almost done.  I just want to chat with my office and make sure I know what it is they have or don't have.

MR. KENNETH:  Okay.  Sure.

(A recess was taken at 4:06 p.m.)

(The Zoom deposition resumed at 4:13 p.m.)

MR. MAGRI:  I'm going to forward and mark as exhibits in the order that they were

Page 68

presented.  Jamie has been keeping track of the Bates numbers and documents that we've got.  And so I'm going to-- and if there's a group, she's kept them in the group.  I'm going to list what numbers they are and they should line up with these numbers in the transcript.  Okay?

Exhibit 2, Jamie, will be what?  I think Exhibit 1 was identified as the January 10th letter.  And I'm told that I didn't put an additional exhibit number after that.

So Exhibit 2, Jamie, would be what documents?

MR. KENNETH:  It doesn't look like Jamie's on the call anymore.

MR. MAGRI:  Meagan, you're--

THE WITNESS:  Exhibit 2 is ROI, Page 92 according to Meagan.

MR. MAGRI:  Meagan, you're muted here.  Can you unmute?

THE WITNESS:  I mean, that's what she typed.  Did you see it?

MR. MAGRI:  Oh.  I didn't see it.

THE WITNESS:  Yes.  That's the only way is she's typing in the answers.

MR. MAGRI:  Oh.  I'm not-- I didn't see

## Page 69

1 the typing.

2 THE WITNESS: Yes.

3 MR. MAGRI: Okay. Then Exhibit 3. Thank

4 you.

5 THE WITNESS: She said she cannot talk

6 because she does not have a mike.

7 MR. MAGRI: Okay. Exhibit 3.

8 THE WITNESS: Exhibit 3 is Page 152 to

9 154 in ROI.

10 MR. MAGRI: Okay. Exhibit 4.

11 THE WITNESS: Exhibit 4 is Page 155 in

12 the ROI.

13 MR. MAGRI: Exhibit 5.

14 THE WITNESS: Exhibit 5 is Page 156 in

15 ROI.

16 MR. MAGRI: Okay. Exhibit--

17 THE WITNESS: 6.

18 MR. MAGRI: 6.

19 THE WITNESS: Exhibit 6 is Page 138 in

20 ROI, however, I am not sure if that was the

21 identified before the Trask and Truitt emails.

22 MR. MAGRI: What was that number?

23 MR. KENNETH: 138.

24 MR. MAGRI: Okay. Well, I have my

25 thoughts about it, but the best place to know

## Page 70

1 that is in the record. So Exhibit 7.

2 THE WITNESS: Thank you, T.B. for

3 helping, smiley face. Exhibit 7 is-- Exhibit 7

4 is Truitt email.

5 MR. MAGRI: Exhibit 8.

6 THE WITNESS: Exhibit 8 is Trask email.

7 MR. MAGRI: Exhibit--

8 THE WITNESS: 9.

9 MR. MAGRI: 9.

10 THE WITNESS: We have no additional

11 exhibits at this time.

12 MR. MAGRI: Okay. That must have been

13 where I was talking about the AIB. They have

14 not actually found the document, so there's no

15 exhibit.

16 All right. I don't have any

17 questions at this point.

18 MR. KENNETH: I have no questions--

19 MR. MAGRI: I do have one other-- I do

20 have another. I do have one other question.

21 Q. (By Mr. Magri) In fact, there would be a few

22 other questions all on the same topic. Are you aware

23 that there are cases that are-- Have you talked with

24 attorneys that handle cases from the Tampa VA facility

25 about EEO matters?

## Page 71

1 A. EEO matters or about cases, yes. I talked to

2 whatever attorney wherever they're assigned, if they call

3 me or if I reach out to them.

4 Q. Is there any geographical area that the

5 Office of Regional Counsel that you're in covers? Do you

6 understand what I'm saying?

7 A. No.

8 Q. Well, you indicated there was an office in

9 Bay Pines, right?

10 A. Uh-huh.

11 Q. You've got to answer audibly.

12 A. I'm sorry. Yes.

13 Q. And you indicated there was an office in

14 Tampa, correct?

15 A. Yes.

16 Q. But sometimes there may be cases from one

17 location (unintelligible) to the other that an attorney

18 from Bay Pines might handle a Tampa case or vice versa,

19 Tampa attorney may handle a Bay Pines case depending on

20 various factors, whatever they may be: is that right?

21 A. Yes.

22 Q. Okay. Now, do you know what office

23 Ms. Blackmon is in?

24 A. I believe-- I don't know-- she is in-- she's

25 in the St. Pete office.

## Page 72

1 Q. Okay. But she handles cases in-- for

2 Gainesville, right?

3 A. Yes.

4 Q. You do too, right?

5 A. If it's assigned to me. We handle cases

6 whatever is assigned to us wherever it is.

7 Q. Okay. Does she also handle cases in

8 Jacksonville?

9 A. I do not know.

10 Q. So if there's Tampa, Bay Pines-- and Palm

11 Beach is another office: is that correct?

12 A. I don't think we have an office in Palm

13 Beach. I don't remember.

14 Q. West Palm Beach?

15 A. West Palm?

16 Q. You mentioned West Palm Beach.

17 A. Yes, yes. Okay.

18 Q. Do they handle cases in Tampa or Bay Pines or

19 Orlando?

20 A. If they're assigned those cases, yes.

21 Q. So it's all-- all these offices handle cases

22 wherever they're assigned to them?

23 A. Well, just consider us a large law firm and

24 the cases are assigned.

25 Q. All right. Do people in-- is there another

Page 73

1  office besides those three that do cases in Florida?
2      A.    Well, we can do cases anywhere when they're
3  assigned.  But I mean, we have an office in Orlando as
4  well.  So I'm not-- if you're asking-- I'm not getting
5  where you're trying to go.  As far as geographic, the
6  cases are assigned as they come in by the supervisor
7  wherever they are.  And I don't know who has what case
8  and where they are.  So I can't speak to geographic
9  issues or concerns that you may have.
10     Q.    I understand.  I'm just trying to-- I think
11 you're explaining to me what it is and-- in other words,
12 the Office of General Counsel is a national office,
13 right?
14     A.    Pretty much.  It's like DOJ.
15     Q.    Okay.  So they don't operate under rules that
16 are different than-- I mean, they operate under the same
17 rules, right?
18         MR. KENNETH:  Object to the form.
19     A.    I'm not understanding.  What rules are you
20 speaking of?
21     Q.    Whatever rules by which you operate as
22 attorneys are applicable to each office and each
23 attorney, right?
24     A.    No office-- I can't say that.  I can't say.
25 Management styles are different, like attorneys are

**ASKINS COURT REPORTING, INC.**
813.966.7936    d_askins@tampacourtreporting.net

Page 74

1  different.  But we work for the federal government, so if
2  that's what you're saying.  But I can't say that what
3  Tampa does is exactly the same thing that Bay Pines does.
4  I don't know.
5      Q.    Okay.  But I guess what I'm saying is, in
6  terms of a policy that would be applicable to employees--
7      A.    Are you talking about OGC employees?
8      Q.    I'm talking about VA employees.
9      A.    I can't speak to that.
10     Q.    Why not?
11     A.    Because I don't know the answer.
12     Q.    And the reason you don't know the answer is?
13     A.    Because I don't know.  I mean, is there a
14 reason not to know something?
15     Q.    Maybe.
16     A.    Seriously, I do not know your answer and I
17 don't understand your question.  You're asking me VAJ and
18 all over the country.  No.  I don't know.  Each hospital
19 is different.  I do not know.  So no, I cannot answer
20 your question.
21     Q.    But what I'm asking you is, why should a few
22 employees at a facility in Florida be treated differently
23 with regard to when you can get AA than employees in
24 other facilities around the state?
25         MR. KENNETH:  Object to the form.

**ASKINS COURT REPORTING, INC.**
813.966.7936    d_askins@tampacourtreporting.net

Page 75

1      A.    That's a management question, Mr. Magri.  You
2  would really need to talk to someone in management.  I
3  can't speak to that.
4      Q.    All right.  So you would have no authority of
5  causing people to be treated differently when it comes to
6  AA yourself?
7      A.    I have no authority over leave of anybody
8  else, not even mine.  I can request it and I have to wait
9  for it to be approved.  So I have no authority over
10 leave.
11         MR. MAGRI:  Okay.  I don't have any other
12     questions, thanks.
13         MR. KENNETH:  No questions.  We'll read.
14            S T I P U L A T I O N
15     It is hereby stipulated and agreed by and between
16 counsel present at this deposition and by the deponent
17 that the reading and signing of this deposition is not
18 waived.
19     (This Zoom deposition was concluded at 4:26 p.m.)
20
21
22
23
24
25

**ASKINS COURT REPORTING, INC.**
813.966.7936    d_askins@tampacourtreporting.net

Page 76

1              CERTIFICATE OF OATH
2
3
4  STATE OF FLORIDA    :
5  COUNTY OF HILLSBOROUGH   :
6
7      I, Debbie E. Askins, FPR, Notary Public, State of
8  Florida, certify that **Tanya B. Burton** personally appeared
9  before me on May 4, 2022 and was duly sworn.
10
11 Signed this 13th day of May, 2022.
12
13
14
              DEBBIE E. ASKINS, FPR
15            Notary Public, State of Florida
              My Commission No. HH 110711
16            Expires:  05/13/2025
17
18
19
20
21
22
23
24
25

**ASKINS COURT REPORTING, INC.**
813.966.7936    d_askins@tampacourtreporting.net

Page 77

```
 1              CERTIFICATE OF REPORTER

 2

 3
   STATE OF FLORIDA    :
 4
   COUNTY OF HILLSBOROUGH   :
 5
       I, DEBBIE E. ASKINS, FPR, do hereby certify that I
 6  was authorized to and did stenographically report the
    Zoom deposition of Tanya B. Burton; that a review of the
 7  transcript was requested; and that the foregoing
    transcript, pages 1 through 79, is a true record of my
 8  stenographic notes.
       I FURTHER CERTIFY that I am not a relative,
 9  employee, or attorney or counsel of any of the parties,
    nor am I a relative or employee of any of the parties'
10  attorney or counsel connected with the action, nor am I
    financially interested in the action.
11

12     DATED this 13th day of May, 2022.

13

14          Debbie E. Askins, FPR
            Notary Public, State of Florida
15

16
17
18
19
20
21
22
23
24
25
```

**ASKINS COURT REPORTING, INC.**
813.966.7936    d_askins@tampacourtreporting.net

Page 78

```
             UNITED STATES DISTRICT COURT
             MIDDLE DISTRICT OF FLORIDA
                   TAMPA DIVISION


   NORIS BABB,
        Plaintiff,
               CASE NO.:  8:20-CV-2825-T-35CPT
   vs.

   DENIS MCDONOUGH, SECRETARY
   DEPARTMENT OF VETERANS AFFAIRS,
        Defendant.
   _____/

   IN RE:  Zoom Deposition of Tanya Burton
   TAKEN:  05/04/2022

   DATE SENT TO WITNESS:  5/13/2022

   TO:  Tanya Burton,
        c/o Michael Kenneth, AUSA
        (michael.kenneth@usdoj.gov)

    The referenced transcript has been completed and awaits
   reading and signing.
    Please arrange to have the witness read and sign the
   transcript.  The transcript is 79 pages long, and the
   witness should allow sufficient time.
    The original of this deposition has been forwarded to
   the ordering party and your errata, once received, will
   be forwarded to all ordering parties as listed below.
    Thank you.

   _____
    Debbie E. Askins, Professional Court Reporter

   CC: Michael Kenneth, AUSA: michael.kenneth@usdoj.gov
       Joseph D. Magri, Esq.:  jmagri@merklemagri.com
```

**ASKINS COURT REPORTING, INC.**
813.966.7936    d_askins@tampacourtreporting.net

Page 79

**ERRATA SHEET**
**DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES**

Style:  Noris Babb vs. Denis McDonough,
Case No. 8:20-CV-2825-T-35CPT, Zoom Deposition of Tanya
B. Burton, 05/04/2022
REPORTED BY: Debbie E. Askins, FPR


Page  Line  Change                    Reason
___  _____  _____  _____
___  _____  _____  _____
___  _____  _____  _____
___  _____  _____  _____
___  _____  _____  _____
___  _____  _____  _____
___  _____  _____  _____
___  _____  _____  _____
___  _____  _____
___  _____  _____
___  _____  _____
___  _____  _____

Under penalties of perjury, I declare that I have read
the foregoing document and that the facts stated in it
are true.


_____        _____
Date                  Tanya B. Burton


CC: Michael Kenneth, AUSA: michael.kenneth@usdoj.gov
    Joseph D. Magri, Esq.:  jmagri@merklemagri.com

**ASKINS COURT REPORTING, INC.**
813.966.7936    d_askins@tampacourtreporting.net

Re: Noris Babb v Denis McDonough/VA  Case 8:20-cv-02825-MSS-CPT  Document 71-1  Filed 08/19/22  Page 22 of 98 PageID 923  ROUGH DRAFT - Zoom deposition of Tanya B. Burton, 5/4/2022

Page 1

**'**

**'79** [1] - 6:4
**'80s** [1] - 6:4

**0**

**05/04/2022** [2] - 78:9, 79:3
**05/13/2025** [1] - 76:16

**1**

**1** [5] - 1:20, 3:2, 31:23, 68:8, 77:7
**1/10/22** [1] - 3:2
**10** [5] - 43:10, 45:4, 45:23, 59:14, 60:3
**107** [1] - 43:24, 43:25
**109** [2] - 43:23, 44:5
**10th** [4] - 32:3, 58:5, 58:11, 68:9
**11** [2] - 59:14, 60:3
**110711** [1] - 76:15
**11th** [2] - 58:6, 58:11
**121** [1] - 45:1
**138** [4] - 50:23, 51:2, 69:19, 69:23
**138/ROI** [1] - 3:7
**13th** [2] - 76:11, 77:11
**152** [2] - 36:5, 69:8
**152-154/ROI** [1] - 3:4
**154** [3] - 36:15, 36:16, 69:9
**155** [6] - 36:12, 36:13, 36:14, 38:13, 38:18, 69:11
**155/ROI** [1] - 3:5
**156** [3] - 39:10, 39:24, 69:14
**156/ROI** [1] - 3:6
**1614.605** [2] - 40:25, 41:6
**16th** [1] - 36:19
**178** [1] - 36:14
**18th** [1] - 36:19
**19th** [2] - 36:19, 37:2
**1:00** [1] - 36:20

**2**

**2** [8] - 3:3, 33:24, 33:25, 34:2, 68:7, 68:11, 68:16
**2/16** [1] - 37:14
**2/18** [1] - 37:14
**2/19** [1] - 37:14
**2004** [3] - 6:17, 6:20, 6:22
**2007** [4] - 7:12, 17:11, 30:7, 49:1
**2012** [1] - 67:4
**2015** [2] - 57:21
**2016** [15] - 34:10, 35:12, 36:24, 42:16, 42:18, 46:7, 47:11, 48:6, 51:19, 52:2, 52:21, 55:4, 58:19, 60:7, 60:10
**2022** [5] - 1:12, 32:3, 76:9, 76:11, 77:11
**25th** [1] - 37:3
**26** [1] - 67:4
**29** [2] - 40:24, 41:6
**2:00** [1] - 1:13, 36:20

**3**

**3** [11] - 3:4, 32:7, 32:11, 32:12, 36:23, 37:6, 37:8, 47:11, 69:3, 69:7, 69:8
**31** [1] - 3:2
**3200** [1] - 2:8
**33** [1] - 3:3
**33602** [1] - 2:8
**33609-3452** [1] - 2:3
**36** [2] - 3:4, 3:5
**39** [1] - 3:6
**3:09** [1] - 43:20
**3:20** [1] - 43:17
**3:23** [1] - 43:21

**4**

**4** [6] - 1:12, 3:5, 67:2, 69:10, 69:11, 76:9
**400** [2] - 2:3, 2:8
**4:01** [1] - 66:20
**4:04** [1] - 66:21
**4:06** [1] - 67:21
**4:13** [1] - 67:22
**4:26** [1] - 1:13, 75:19

**5**

**5** [5] - 2:16, 3:6, 46:7, 69:13, 69:14
**5/13/2022** [1] - 78:10
**50** [1] - 3:7
**56** [1] - 3:8
**5601** [1] - 2:3
**59** [1] - 3:9

**6**

**6** [4] - 3:7, 69:17, 69:18, 69:19

**7**

**7** [5] - 3:8, 36:15, 70:1, 70:3
**7-6** [2] - 50:25, 51:2
**73** [1] - 44:21
**76** [1] - 2:17
**77** [5] - 2:18, 36:2, 36:14, 36:16, 38:4
**78** [3] - 2:19, 38:10, 38:12
**79** [7] - 1:20, 2:20, 39:9, 39:10, 39:24, 77:7, 78:14

**8**

**8** [4] - 3:9, 36:15, 70:5, 70:6
**813.274.6000** [1] - 2:9
**813.281.9000** [1] - 2:4
**8:20-CV-2825-T-35CPT** [3] - 1:4, 78:4, 79:3

**9**

**9** [5] - 44:5, 45:6, 70:8, 70:9

**92** [3] - 34:2, 34:3, 68:16
**92/ROI** [1] - 3:3
**9th** [1] - 59:18

**A**

**A&O** [6] - 14:18, 14:25, 15:2, 15:3
**AA** [22] - 34:25, 35:3, 35:21, 36:7, 37:4, 37:21, 41:23, 42:14, 42:19, 45:20, 55:9, 55:13, 55:18, 56:8, 58:6, 59:14, 59:21, 60:14, 60:19, 61:9, 74:23, 75:6
**able** [3] - 39:18, 42:11, 59:24
**absence** [3] - 31:14, 50:14, 62:8
**acceptable** [1] - 45:14
**according** [2] - 42:20, 68:17
**acknowledge** [1] - 4:2
**acknowledged** [1] - 5:3
**Acknowledgement** [1] - 15:4
**action** [2] - 77:10, 77:10
**ad** [1] - 18:18
**addition** [1] - 53:10
**additional** [2] - 68:10, 70:10
**administrating** [1] - 4:5
**administrative** [20] - 14:19, 15:14, 15:25, 18:16, 19:7, 19:20, 20:7, 21:25, 22:2, 26:11, 30:16, 30:20, 40:15, 40:24, 41:2, 49:24, 50:14, 62:8, 65:18, 67:1
**administratively** [1] - 21:22
**ADR** [1] - 15:10
**advance** [1] - 57:3
**advice** [12] - 33:12, 33:13, 33:16, 33:18, 34:22, 37:22, 38:1, 45:10, 45:15, 61:20, 61:23, 62:19
**Affairs** [1] - 2:12
**AFFAIRS** [2] - 1:6, 78:6
**affect** [2] - 11:7, 48:10
**affidavit** [3] - 44:2, 44:24, 67:1
**afternoon** [1] - 5:9
**afterwards** [1] - 59:9
**Agency** [1] - 8:8
**agency** [1] - 33:2
**agree** [2] - 4:14, 67:3
**agreed** [1] - 75:15
**agreement** [2] - 4:9, 4:10
**ahead** [2] - 8:23, 11:20, 66:7
**AIB** [6] - 63:23, 65:2, 65:7, 67:4, 67:9, 70:13
**AL** [7] - 38:20, 42:19, 46:11, 58:4, 58:10, 59:21, 59:23
**ALL** [1] - 1:14
**allegation** [1] - 27:15
**allow** [1] - 78:15
**allowed** [1] - 60:14
**allows** [1] - 57:11
**almost** [1] - 67:17
**ALSO** [1] - 2:11
**Amanda** [1] - 57:25
**Anders** [1] - 18:19

Re: Noris Babб & Denis McDonough/VA    Case 8:20-cv-02825-MSS-CPT  Document 71-1  Filed 08/19/22  Page 23 of 98 PageID 924
ROUGH DRAFT - Zoom deposition of Tanya B. Burton, 5/4/2022

Page 2

**Anderson's** [1] - 18:18
**Anita** [2] - 59:22, 60:1
**ann** [1] - 20:1
**Anna** [1] - 21:15
**annual** [7] - 40:9, 40:10, 40:14, 40:16, 41:21, 45:9, 45:25
**answer** [30] - 10:2, 11:24, 12:1, 13:11, 13:13, 13:20, 17:9, 23:15, 25:3, 26:23, 29:1, 29:12, 33:9, 41:7, 42:11, 45:10, 46:1, 46:5, 48:2, 48:12, 52:13, 52:17, 54:20, 61:22, 67:11, 71:11, 74:11, 74:12, 74:16, 74:19
**answered** [1] - 29:1
**answers** [3] - 24:15, 47:25, 68:24
**appeal** [5] - 15:15, 15:17, 15:20, 15:21
**appeals** [2] - 15:24, 16:1
**APPEARANCES** [2] - 2:1, 2:6
**appeared** [1] - 76:8
**appended** [1] - 50:2
**applicable** [2] - 73:22, 74:6
**applies** [1] - 40:23
**appreciate** [1] - 43:12
**appropriate** [3] - 42:23, 51:12, 59:25
**approve** [1] - 59:20
**approved** [2] - 59:21, 75:9
**approving** [3] - 44:10, 51:9, 63:9
**arbitration** [2] - 13:9, 26:3
**arbitrations** [2] - 12:9, 12:11
**area** [7] - 9:3, 9:14, 9:20, 9:25, 12:8, 71:4
**areas** [2] - 8:21, 8:25
**arrange** [1] - 78:14
**arrangement** [1] - 4:7
**Askins** [6] - 1:17, 4:3, 76:7, 77:14, 78:18, 79:4
**ASKINS** [2] - 76:14, 77:5
**assign** [2] - 14:1, 19:2
**assigned** [53] - 9:15, 11:11, 11:13, 13:24, 14:3, 14:9, 14:12, 14:17, 15:8, 19:1, 19:8, 19:22, 21:4, 21:6, 21:12, 21:15, 21:23, 21:25, 23:3, 23:5, 23:7, 23:14, 23:21, 23:24, 24:3, 24:6, 24:8, 24:14, 28:1, 28:5, 28:9, 28:12, 28:23, 30:4, 30:13, 30:19, 30:22, 30:25, 31:1, 31:6, 31:7, 31:9, 31:16, 54:1, 71:2, 72:5, 72:6, 72:20, 72:22, 72:24, 73:3, 73:6
**assignment** [3] - 23:2, 24:5, 24:10
**assist** [3] - 16:8, 19:8, 19:23
**assistance** [2] - 16:10, 58:14
**Assistant** [3] - 2:13, 24:17, 51:10
**assistant** [1] - 16:9
**assisted** [4] - 18:24, 20:7, 20:10, 20:22
**assisting** [5] - 17:21, 21:3, 29:19, 54:22, 55:1
**Associate** [4] - 5:24, 44:11, 51:10, 51:11
**associated** [1] - 28:20
**assume** [2] - 48:9, 48:13

**assuming** [3] - 35:9, 49:3, 59:6
**Atkinson** [1] - 18:9
**attend** [9] - 45:9, 45:20, 46:1, 46:8, 55:13, 58:4, 58:10, 59:17, 59:24
**attendance** [2] - 37:17, 44:14
**attended** [2] - 5:20, 49:6
**attending** [3] - 52:20, 53:13, 60:13
**attention** [2] - 49:11, 52:2
**attorney** [19] - 7:21, 8:7, 9:2, 9:23, 22:11, 24:23, 25:2, 25:19, 30:6, 33:2, 48:14, 54:25, 61:17, 71:2, 71:17, 71:19, 73:23, 77:9, 77:10
**Attorney's** [1] - 2:7
**attorneys** [27] - 4:1, 7:25, 9:4, 19:2, 23:1, 24:17, 24:18, 24:22, 25:4, 25:8, 25:12, 25:13, 25:16, 25:20, 25:22, 26:7, 26:10, 47:20, 48:3, 48:4, 48:17, 49:5, 70:24, 73:22, 73:25
**Attorneys** [1] - 24:18
**audibly** [1] - 71:11
**AUSA** [9] - 2:6, 2:7, 16:8, 16:9, 16:11, 54:25, 78:11, 78:20, 79:24
**authority** [3] - 75:4, 75:7, 75:9
**authorized** [4] - 31:14, 46:8, 59:14, 77:6
**available** [1] - 9:24
**awaits** [1] - 78:13
**aware** [7] - 10:2, 52:1, 63:17, 63:18, 63:19, 63:21, 70:22
**AWOL** [1] - 59:16

# B

**BABB** [2] - 1:3, 78:3
**Babb** [18] - 5:10, 17:25, 21:12, 31:4, 31:7, 31:13, 31:21, 32:6, 34:18, 36:7, 36:17, 37:9, 42:18, 43:4, 43:6, 55:9, 55:18, 79:2
**Babb's** [5] - 31:3, 35:21, 41:20, 55:7, 60:25
**background** [1] - 5:16
**balancing** [1] - 9:22
**basis** [1] - 13:8
**Bates** [1] - 68:2
**Bay** [30] - 11:13, 14:8, 16:7, 22:14, 23:2, 23:3, 23:5, 23:7, 23:8, 23:11, 23:18, 23:20, 23:22, 24:3, 26:14, 28:15, 28:18, 28:20, 29:3, 29:19, 29:21, 40:6, 40:7, 40:12, 71:9, 71:18, 71:19, 72:10, 72:18, 74:3
**Beach** [4] - 72:11, 72:13, 72:14, 72:16
**begin** [1] - 36:12
**beginning** [2] - 14:15, 38:4
**begins** [2] - 36:14, 36:16
**Behalf** [1] - 1:11
**below** [1] - 78:16
**best** [2] - 42:3, 69:25
**better** [4] - 15:3, 23:15, 27:13, 42:10
**between** [3] - 10:12, 13:4, 75:15
**beyond** [4] - 15:13, 15:16, 15:18, 15:19
**big** [1] - 61:13

**bit** [4] - 8:2, 26:24, 30:12, 34:6
**Blackman** [1] - 25:10
**blackmon** [1] - 71:23
**born** [1] - 10:13
**boss** [1] - 11:9
**bottom** [3] - 34:4, 36:17, 51:5
**bounce** [1] - 48:16
**break** [4] - 43:10, 56:15, 66:8, 67:17
**brief** [2] - 66:8, 67:16
**broke** [1] - 54:20
**broken** [4] - 10:8, 47:9, 47:10, 47:19
**Bronner** [1] - 17:14
**brought** [1] - 34:21
**BURTON** [2] - 1:10, 5:2
**Burton** [19] - 2:15, 4:16, 8:23, 29:1, 32:2, 36:1, 36:21, 65:6, 65:11, 65:21, 65:25, 66:2, 67:6, 76:8, 77:6, 78:8, 78:11, 79:3, 79:23
**BY** [2] - 5:8, 79:4

# C

**c/o** [1] - 78:11
**cannot** [5] - 25:19, 25:22, 58:6, 69:5, 74:19
**cardiology** [1] - 67:8
**career** [1] - 14:5
**Carol** [1] - 36:17
**Carolina** [6] - 5:24, 6:7, 6:8, 6:11, 7:5, 10:13
**Carolyn** [3] - 36:17, 37:9, 46:21
**case** [77] - 9:23, 9:24, 11:10, 11:12, 12:25, 13:2, 13:5, 13:9, 14:12, 14:17, 15:11, 17:11, 17:15, 18:4, 18:16, 18:18, 18:22, 19:6, 19:12, 19:15, 20:10, 20:14, 20:15, 20:23, 21:6, 21:9, 21:11, 21:16, 21:20, 21:21, 22:1, 23:21, 24:6, 25:3, 25:6, 25:9, 26:14, 28:1, 28:2, 28:5, 28:9, 28:12, 30:13, 30:14, 30:19, 31:3, 31:7, 31:9, 31:11, 31:13, 31:15, 31:18, 31:21, 33:3, 50:4, 53:24, 54:1, 54:17, 54:23, 55:1, 55:7, 55:12, 55:17, 56:25, 57:6, 57:9, 58:22, 60:14, 60:15, 62:7, 65:2, 65:17, 71:18, 71:19, 73:7
**CASE** [2] - 1:4, 78:4
**Case** [1] - 79:3
**cases** [74] - 8:2, 9:18, 9:19, 10:1, 11:7, 11:16, 11:21, 11:23, 12:9, 12:22, 13:15, 13:21, 14:3, 14:9, 14:13, 14:23, 15:13, 16:3, 16:6, 16:17, 16:20, 17:3, 17:19, 18:7, 18:8, 18:25, 19:3, 19:19, 21:18, 21:23, 23:7, 23:8, 23:20, 23:23, 24:1, 24:3, 24:5, 24:7, 24:16, 25:5, 25:14, 25:24, 26:8, 26:12, 26:13, 26:20, 26:24, 27:19, 27:23, 28:22, 29:3, 29:14, 29:19, 29:20, 30:3, 31:4, 47:15, 48:18, 70:23, 70:24, 71:1, 71:16, 72:1, 72:5, 72:7, 72:18, 72:20, 72:21, 72:24, 73:1, 73:2, 73:6

Re: Noris Babb v Denis McDonough/VA    Case 8:20-cv-02825-MSS-CPT   Document 71-1   Filed 08/19/22   Page 24 of 98 PageID 925    ROUGH DRAFT - Zoom deposition of Tanya B. Burton, 5/4/2022

Page  3

**catch** [1] - 12:13
**causing** [1] - 75:5
**CBOCs** [1] - 28:19
**CC** [2] - 78:20, 79:24
**CCU** [2] - 6:1, 6:6
**Cecil** [1] - 21:20
**cell** [1] - 43:16
**center** [1] - 32:13
**Center** [1] - 40:7
**Central** [3] - 5:23, 6:11, 63:14
**central** [1] - 6:8
**CERTIFICATE** [2] - 76:1, 77:1
**Certificate** [2] - 2:17, 2:18
**certify** [2] - 76:8, 77:5
**CERTIFY** [1] - 77:8
**CFR** [2] - 40:24, 41:6
**Chad** [1] - 18:10
**chain** [1] - 61:25
**chance** [1] - 39:12
**Change** [1] - 79:5
**changed** [1] - 30:7
**CHANGES** [1] - 79:1
**channels** [3] - 51:6, 61:10, 61:21
**character** [1] - 10:7
**chat** [1] - 67:17
**check** [1] - 31:24
**Chicklis** [1] - 18:12
**Chief** [6] - 44:11, 44:12, 44:19, 45:7, 51:11
**chief** [1] - 53:20
**chiefs** [1] - 33:21
**choose** [3] - 9:17, 15:10, 58:10
**Christopher** [1] - 18:12
**circumstances** [2] - 33:7, 40:25
**clarification** [3] - 5:13, 37:21, 58:2
**clarifies** [2] - 27:23, 60:3
**clarify** [10] - 12:3, 13:16, 16:8, 17:8, 34:19, 48:13, 51:21, 51:24, 58:11, 59:25
**clear** [6] - 29:24, 30:1, 41:20, 53:24, 54:10, 54:22
**client** [3] - 48:24, 53:13, 61:18
**Clinical** [1] - 44:11
**close** [1] - 65:13
**closed** [1] - 57:3
**Coastal** [1] - 6:7
**college** [1] - 5:19
**College** [5] - 5:20, 5:21, 5:22, 5:23, 6:8
**Collingsworth** [1] - 21:15
**column** [1] - 51:10
**combined** [1] - 18:7
**Combs** [4] - 36:17, 37:9, 39:7, 46:21
**Combs'** [1] - 44:1
**coming** [1] - 8:15
**command** [1] - 62:1
**Commission** [1] - 76:15
**communication** [1] - 40:12
**complainant** [6] - 15:6, 15:10, 40:9, 41:1, 45:8, 46:8

**complainant's** [3] - 27:14, 40:16, 45:24
**complaint** [3] - 40:6, 49:25
**complaints** [1] - 40:24
**completed** [1] - 78:13
**Complies** [1] - 4:23
**concerning** [3] - 55:17, 62:20, 63:14
**concerns** [1] - 73:9
**concluded** [1] - 75:19
**conference** [1] - 14:23
**confusing** [2] - 20:19, 20:20
**connected** [1] - 77:10
**consent** [1] - 4:7
**consider** [5] - 12:21, 26:14, 49:18, 49:25, 72:23
**considered** [1] - 48:15
**consult** [3] - 45:24, 46:5, 46:6
**consulted** [1] - 44:13
**contact** [3] - 16:14, 35:7, 35:22
**contacted** [1] - 35:7
**contained** [1] - 67:5
**continue** [1] - 40:17
**conversation** [2] - 40:23, 58:3
**conversations** [1] - 34:13
**copied** [1] - 38:16
**copy** [2] - 39:15, 40:13
**Corbin** [1] - 18:9
**correct** [47] - 9:10, 9:11, 13:23, 15:25, 27:19, 28:1, 31:1, 31:7, 33:3, 33:7, 33:10, 33:14, 34:25, 35:6, 35:22, 35:23, 36:24, 37:9, 37:15, 40:20, 41:7, 41:18, 41:22, 42:16, 42:19, 42:25, 43:5, 44:24, 45:21, 46:2, 47:21, 51:16, 51:17, 52:3, 52:22, 54:17, 54:23, 55:1, 57:21, 58:6, 58:9, 60:8, 60:16, 60:17, 62:10, 71:14, 72:11
**correctly** [9] - 37:4, 37:18, 40:18, 41:3, 44:7, 44:15, 45:16, 46:11, 58:15
**Counsel** [32] - 7:8, 7:17, 10:6, 10:8, 10:11, 10:14, 10:15, 10:21, 10:23, 10:25, 11:1, 11:3, 22:4, 38:19, 38:23, 40:11, 44:13, 45:11, 45:15, 46:5, 46:10, 47:4, 47:5, 47:6, 47:8, 58:3, 58:12, 60:5, 71:5, 73:12
**counsel** [4] - 4:7, 75:16, 77:9, 77:10
**Counsel's** [2] - 62:20, 63:20
**country** [4] - 6:21, 6:24, 10:9, 74:18
**cOUNTY** [1] - 76:5
**COUNTY** [1] - 77:4
**couple** [2] - 14:10, 62:3
**course** [3] - 15:9, 15:20, 67:6
**court** [43] - 4:3, 16:4, 16:13, 16:17, 16:21, 16:24, 17:2, 17:20, 18:16, 18:23, 19:3, 19:7, 19:21, 19:23, 19:24, 20:8, 21:1, 21:7, 21:13, 21:16, 21:24, 22:1, 28:24, 29:5, 29:15, 30:4, 30:23, 31:1, 33:3, 49:2, 49:22, 49:23, 50:14, 51:23, 52:21, 53:13, 53:23, 53:25, 54:23, 64:12, 65:20, 67:11
**COURT** [7] - 1:1, 4:1, 4:12, 4:15, 4:21, 5:6, 78:1

**Court** [1] - 78:18
**courthouses** [1] - 16:16
**courtroom** [1] - 20:22
**courts** [2] - 15:21, 16:15
**cover** [1] - 8:21
**covers** [2] - 50:13, 71:5
**crosstalk** [1] - 12:1
**Crosstalk** [1] - 12:3
**Culpepper** [2] - 2:2, 32:5

---

# D

**Darren** [1] - 18:9
**date** [5] - 35:10, 42:1, 42:4, 42:5, 42:8
**Date** [1] - 79:23
**DATE** [2] - 1:12, 78:10
**dated** [2] - 36:23, 59:18
**DATED** [1] - 77:11
**dates** [4] - 36:18, 37:13, 37:18, 42:13
**de** [2] - 18:10
**dealt** [1] - 47:14
**debbie** [1] - 1:17
**Debbie** [5] - 4:3, 76:7, 77:14, 78:18, 79:4
**DEBBIE** [2] - 76:14, 77:5
**Debra** [1] - 34:22
**deciding** [1] - 40:14
**decision** [3] - 40:8, 58:12, 60:4
**declare** [1] - 79:21
**deduct** [5] - 40:10, 40:16, 41:21, 45:9, 45:25
**deemed** [2] - 49:19, 49:20
**deems** [1] - 9:21
**DEFENDANT** [1] - 2:6
**Defendant** [1] - 1:7, 78:7
**DEFENDANT'S** [1] - 3:12
**Defense** [1] - 4:14
**define** [1] - 15:3
**degree** [1] - 5:24
**delineates** [1] - 40:25
**denial** [3] - 31:13, 34:18, 42:14
**denied** [4] - 34:20, 35:1, 45:8, 59:16
**denies** [2] - 61:8, 61:12
**Denis** [1] - 79:2
**DENIS** [2] - 1:6, 78:6
**deny** [4] - 45:14, 60:20, 61:1, 61:15
**denying** [4] - 51:22, 60:19, 60:23, 60:25
**department** [1] - 18:8
**Department** [2] - 2:12, 32:4
**DEPARTMENT** [2] - 1:6, 78:6
**depo** [3] - 45:19, 57:10, 60:15
**deponent** [1] - 75:16
**depos** [8] - 45:20, 53:10, 53:23, 54:5, 54:7, 55:10, 59:18, 60:14
**deposed** [2] - 54:4, 55:4
**deposition** [16] - 4:2, 20:11, 52:20, 52:23, 52:25, 54:2, 58:5, 58:10, 59:15, 66:21, 67:22, 75:16, 75:17, 75:19, 77:6, 78:15

Re: Noris Babb v Denis McDonough/VA     Case 8:20-cv-02825-MSS-CPT   Document 71-1   Filed 08/19/22   Page 25 of 98 PageID 926     ROUGH DRAFT - Zoom deposition of Tanya B. Burton 5/4/2022

Page   4

**Deposition** [3] - 2:15, 78:8, 79:3
**DEPOSITION** [1] - 1:9
**depositions** [11] - 33:2, 42:15, 44:10, 44:15, 45:10, 46:1, 46:8, 49:1, 49:7, 54:19, 55:13
**describe** [1] - 44:8
**Description** [2] - 3:1, 3:12
**designated** [1] - 61:15
**determine** [1] - 45:14
**developed** [1] - 67:6
**difference** [2] - 25:16, 48:24
**different** [11] - 9:13, 10:5, 24:13, 27:3, 30:1, 47:4, 61:14, 73:16, 73:25, 74:1, 74:19
**differently** [2] - 74:22, 75:5
**DIRECT** [1] - 5:7
**Direct** [1] - 2:16
**directly** [2] - 27:23, 56:16
**director** [3] - 33:19, 63:5, 63:8
**Director** [2] - 51:10, 51:11
**disagree** [1] - 32:23
**disclosed** [6] - 56:22, 57:6, 57:9, 65:16, 65:17, 65:18
**disclosing** [1] - 65:13
**discovery** [5] - 16:13, 55:17, 57:3, 57:6, 65:14
**discrimination** [1] - 40:6
**discuss** [1] - 64:13
**discussed** [1] - 46:7
**discussion** [1] - 46:10
**disposition** [1] - 58:25
**distinction** [1] - 13:4
**DISTRICT** [4] - 1:1, 1:1, 78:1, 78:1
**District** [6] - 10:10, 10:15, 11:3, 11:6, 47:5, 47:16
**district** [9] - 10:20, 11:4, 24:23, 47:12, 48:4, 48:6, 48:8, 48:19, 48:23
**DIVISION** [2] - 1:2, 78:2
**divisive** [1] - 67:7
**DO** [1] - 79:1
**document** [11] - 35:17, 56:6, 56:10, 56:24, 57:16, 57:20, 65:6, 65:10, 70:14, 79:21
**documentation** [1] - 40:14
**documents** [16] - 35:12, 35:19, 36:1, 38:5, 41:16, 42:4, 42:13, 56:21, 57:3, 57:5, 57:12, 62:7, 62:9, 65:13, 68:2, 68:12
**DOJ** [2] - 34:23, 73:14
**done** [5] - 15:25, 32:21, 36:20, 41:25, 67:17
**Donna** [1] - 60:16
**door** [1] - 66:11
**down** [4] - 10:8, 32:6, 34:6, 62:23
**Dr** [29] - 17:23, 17:25, 18:5, 18:19, 34:18, 35:21, 36:7, 36:17, 37:9, 41:20, 42:18, 43:4, 43:6, 53:17, 53:20, 55:7, 55:9, 55:24, 56:8, 56:10, 56:11, 58:5, 58:11, 58:21, 59:1, 59:5, 59:24, 60:25

**Dudley** [1] - 18:21
**duly** [2] - 5:3, 76:9
**Durane** [1] - 18:11
**Durham** [1] - 6:1
**during** [2] - 14:5, 40:7
**duties** [4] - 7:22, 8:1, 8:6, 30:6

## E

**early** [1] - 29:6
**education** [1] - 5:17
**EEO** [29] - 8:1, 12:9, 12:22, 12:24, 14:2, 14:12, 16:17, 24:1, 24:16, 25:5, 25:6, 25:8, 25:14, 25:17, 25:24, 26:7, 26:12, 26:20, 26:24, 27:18, 27:23, 30:3, 39:25, 40:6, 40:24, 44:9, 49:25, 70:25, 71:1
**EEOs** [1] - 13:15
**either** [3] - 23:2, 62:2, 63:11
**ELR** [1] - 51:6
**Elzion** [1] - 18:5
**email** [25] - 3:8, 3:9, 34:23, 36:20, 36:23, 37:2, 37:24, 38:1, 38:18, 38:23, 39:25, 41:12, 41:13, 41:14, 41:15, 41:17, 55:24, 56:7, 58:2, 59:5, 59:10, 59:11, 60:1, 70:4, 70:6
**emails** [5] - 38:12, 38:16, 39:24, 42:20, 69:21
**employed** [1] - 7:6
**employee** [2] - 77:9, 77:9
**employees** [8] - 30:10, 49:6, 51:23, 74:6, 74:7, 74:8, 74:22, 74:23
**employment** [7] - 8:9, 8:11, 8:13, 9:9, 9:12, 12:8, 12:17
**enabled** [1] - 31:25
**encourage** [1] - 61:9
**end** [1] - 15:12
**ended** [1] - 28:24
**ENTER** [1] - 79:1
**entire** [1] - 37:15
**entitled** [1] - 41:1
**entity** [1] - 7:7
**environment** [1] - 67:8
**Errata** [1] - 2:20
**errata** [1] - 78:16
**ERRATA** [1] - 79:1
**error** [1] - 10:24
**Esq** [2] - 78:20, 79:25
**Esquire** [2] - 2:1, 2:2
**established** [1] - 54:18
**estimating** [1] - 6:22
**ethical** [1] - 61:17
**event** [2] - 59:13, 60:6
**Ex** [8] - 3:2, 3:3, 3:4, 3:5, 3:6, 3:7, 3:8, 3:9
**exactly** [2] - 29:7, 74:3
**EXAMINATION** [1] - 5:7
**Examination** [2] - 1:16, 2:16
**example** [1] - 9:22

**except** [1] - 15:19
**exclusively** [1] - 40:24
**excuse** [1] - 11:15
**execution** [1] - 2:20
**Exhibit** [18] - 31:23, 68:7, 68:8, 68:11, 68:16, 69:3, 69:7, 69:8, 69:10, 69:11, 69:13, 69:14, 69:19, 70:1, 70:3, 70:5, 70:6
**exhibit** [4] - 68:10, 69:16, 70:7, 70:15
**EXHIBIT** [2] - 3:1, 3:12
**exhibits** [2] - 67:25, 70:11
**experience** [5] - 6:14, 25:21, 44:10, 49:4, 64:7
**expert** [8] - 33:13, 48:15, 49:16, 49:17, 49:18, 49:21, 50:1, 50:12
**Expires** [1] - 76:16
**explain** [5] - 8:17, 10:4, 11:22, 27:11, 43:2
**explaining** [1] - 73:11
**extent** [1] - 23:5

## F

**face** [1] - 70:3
**facilities** [3] - 11:12, 14:3, 74:24
**facility** [7] - 27:10, 33:19, 61:13, 63:5, 63:7, 70:24, 74:22
**facility's** [1] - 44:8
**fact** [9] - 20:13, 48:7, 52:8, 54:10, 54:11, 56:15, 57:13, 65:17, 70:21
**factors** [1] - 71:20
**facts** [2] - 54:14, 79:21
**far** [10] - 5:18, 16:7, 31:5, 31:17, 39:6, 47:2, 55:2, 61:7, 73:5
**fast** [1] - 29:18
**faster** [1] - 39:18
**February** [21] - 34:10, 36:23, 37:6, 37:8, 42:16, 42:18, 46:7, 47:11, 48:5, 51:19, 52:2, 52:21, 55:4, 57:21, 58:5, 58:11, 58:19, 59:14, 59:18, 60:3, 60:7
**federal** [40] - 16:4, 16:15, 16:16, 16:17, 16:21, 16:24, 17:2, 17:20, 18:15, 18:23, 19:3, 19:7, 19:21, 19:23, 19:24, 20:8, 21:1, 21:7, 21:13, 21:16, 21:23, 22:1, 28:24, 29:5, 29:15, 30:4, 30:23, 31:1, 33:3, 49:1, 49:22, 49:23, 51:23, 52:21, 53:13, 53:23, 53:25, 54:23, 64:12, 74:1
**few** [2] - 70:21, 74:21
**fiduciary** [1] - 7:25
**figure** [1] - 48:4
**filed** [12] - 17:3, 17:5, 17:20, 19:3, 26:19, 26:24, 27:2, 27:9, 27:12, 27:13, 40:6, 67:1
**financially** [1] - 77:10
**fine** [1] - 43:19
**firm** [2] - 48:16, 72:23
**first** [24] - 7:3, 10:10, 10:19, 10:23, 16:23, 18:1, 31:7, 33:5, 34:7, 35:5, 39:24, 43:23, 49:10, 51:2, 52:1, 52:19,

Re: Noris Babb v Denis McDonough/VA    Case 8:20-cv-02825-MSS-CPT   Document 71-1   Filed 08/19/22   Page 26 of 98 PageID 927    ROUGH DRAFT - Zoom deposition of Tanya S. Burton, 5/4/2022

Page 5

53:5, 57:18, 59:12, 60:7, 60:20, 60:21, 61:11, 61:20
**Florida** [19] - 2:3, 2:8, 7:1, 7:15, 8:6, 8:10, 8:12, 8:15, 8:18, 10:19, 11:13, 14:6, 14:7, 22:8, 73:1, 74:22, 76:8, 76:15, 77:14
**FLORIDA** [4] - 1:1, 76:4, 77:3, 78:1
**flow** [1] - 10:18
**focus** [3] - 8:11, 8:12, 64:1
**focused** [1] - 8:9
**follow** [2] - 61:9, 61:20
**following** [4] - 13:17, 13:18, 51:25, 67:5
**follows** [1] - 5:4
**FOR** [2] - 2:1, 2:6
**foregoing** [2] - 77:7, 79:21
**form** [16] - 8:22, 9:6, 11:16, 15:23, 17:1, 23:6, 29:16, 47:23, 48:11, 49:8, 50:5, 50:22, 53:18, 62:17, 73:18, 74:25
**Fort** [2] - 28:14, 28:15
**forward** [2] - 29:18, 67:24
**forwarded** [3] - 2:20, 78:15, 78:16
**four** [1] - 22:16
**FPR** [6] - 1:17, 76:7, 76:14, 77:5, 77:14, 79:4
**Friday** [3] - 36:19, 37:2, 37:3
**front** [1] - 38:1
**FURTHER** [1] - 77:8

### G

**Gainesville** [8] - 9:23, 11:8, 11:14, 14:10, 27:17, 27:25, 28:23, 72:2
**Gary** [4] - 38:25, 44:23, 46:16
**Gaust** [1] - 17:13
**Gaynor** [1] - 18:14
**general** [3] - 6:19, 7:25, 8:15
**General** [12] - 7:8, 7:16, 10:5, 10:8, 10:24, 11:1, 22:4, 47:4, 47:6, 47:8, 63:20, 73:12
**geographic** [7] - 9:13, 9:25, 13:14, 13:16, 13:17, 73:5, 73:8
**geographical** [2] - 27:3, 71:4
**geographically** [2] - 9:5, 9:8
**given** [6] - 48:7, 49:6, 55:9, 55:13, 55:18, 59:12
**government** [1] - 74:1
**graduated** [2] - 5:23, 6:4
**granted** [1] - 37:16
**greens** [1] - 7:5
**Greensburg** [1] - 5:22
**grievance** [1] - 13:12
**grievances** [4] - 12:10, 12:12, 12:14, 12:15
**Grievances** [1] - 26:5
**Griffin** [1] - 60:16
**group** [3] - 7:7, 68:3, 68:4
**guaranty** [1] - 8:1
**guess** [7] - 22:13, 27:13, 34:8, 56:3, 61:6, 66:24, 74:5
**guidance** [7] - 37:16, 44:12, 44:13,

61:23, 63:13, 63:14, 63:19

### H

**half** [1] - 5:21
**Hall** [1] - 60:16
**hand** [1] - 4:22
**handle** [20] - 12:22, 13:23, 15:11, 16:16, 21:24, 22:1, 24:16, 25:5, 28:1, 28:2, 28:5, 28:9, 28:11, 70:24, 71:18, 71:19, 72:5, 72:7, 72:18, 72:21
**handled** [1] - 19:19
**handles** [1] - 72:1
**handling** [1] - 12:25
**handy** [1] - 66:25
**happy** [1] - 5:14
**Haughn** [1] - 2:13
**head** [3] - 22:17, 64:19, 64:21
**Healthcare** [1] - 40:7
**hear** [2] - 37:17, 56:6
**heard** [2] - 10:4, 60:7
**hearing** [2] - 15:6, 15:7
**Heather** [1] - 25:10
**help** [3] - 44:17, 46:13, 61:18
**helping** [1] - 70:3
**hereby** [2] - 75:15, 77:5
**HH** [1] - 76:15
**Hi** [1] - 36:17
**High** [2] - 5:21, 5:23
**HILLSBOROUGH** [2] - 76:5, 77:4
**Hold** [2] - 34:2, 66:3
**hold** [1] - 36:10
**honest** [1] - 21:19
**hope** [1] - 26:22
**hospital** [2] - 29:20, 74:18
**hostile** [1] - 67:8
**hour** [1] - 43:10
**HR** [1] - 33:16
**HRNS** [1] - 51:6
**Huslew** [1] - 18:14

### I

**idea** [1] - 56:18
**identified** [2] - 68:8, 69:21
**impeach** [1] - 57:11
**improperly** [1] - 51:22
**IN** [1] - 78:8
**inaudible** [1] - 67:10
**incident** [2] - 34:17, 34:20
**INDEX** [2] - 3:1, 3:12
**indicate** [4] - 4:9, 23:12, 35:5, 41:15
**indicated** [6] - 13:21, 47:24, 51:15, 62:8, 71:8, 71:13
**indicates** [1] - 51:4
**individuals** [1] - 45:20
**inflamed** [1] - 67:7
**informal** [2] - 14:23, 15:1
**information** [4] - 25:20, 25:24, 48:15,

67:6
**insight** [1] - 40:11
**instance** [1] - 9:9
**instead** [3] - 40:9, 40:15, 42:19
**Institute** [1] - 5:24
**interested** [3] - 32:10, 65:23, 77:10
**introduction** [1] - 48:7
**Investigation** [1] - 66:25
**investigation** [6] - 40:5, 40:18, 42:14, 63:23, 65:3, 67:5
**investigator** [1] - 39:25
**involve** [3] - 13:15, 23:20, 55:10
**involved** [20] - 14:13, 14:14, 14:16, 14:22, 16:3, 16:7, 16:8, 16:16, 16:17, 16:21, 17:10, 17:13, 17:20, 17:21, 53:25, 54:16, 54:22, 60:2, 60:15
**involvement** [1] - 17:17
**involves** [1] - 32:6
**involving** [3] - 18:4, 28:23, 49:25
**issue** [17] - 48:20, 49:24, 51:20, 51:21, 52:1, 52:4, 52:5, 53:2, 53:5, 53:9, 53:10, 53:14, 53:15, 63:8, 63:15, 64:13
**issued** [6] - 63:13, 63:14, 63:19, 64:6, 64:8, 64:10
**issues** [2] - 58:18, 73:9
**itself** [1] - 41:14

### J

**Jacksonville** [1] - 72:8
**Jamie** [5] - 2:13, 56:4, 68:1, 68:7, 68:11
**Jamie's** [1] - 68:14
**January** [2] - 32:3, 68:8
**Jason** [1] - 18:8
**jmagri@merklemagri.com** [3] - 2:4, 78:20, 79:25
**job** [1] - 7:20
**Joe** [2] - 4:11, 5:10
**Johnson's** [1] - 21:20
**joined** [2] - 6:20, 7:3
**Joseph** [3] - 2:1, 78:20, 79:25
**Judge** [2] - 64:11, 64:16
**judge** [2] - 14:17, 15:9
**Junior** [1] - 5:20
**Justice** [2] - 18:10, 32:5

### K

**Kaleel** [1] - 19:16
**Karen** [5] - 2:11, 23:17, 24:2, 24:7, 25:10
**keep** [1] - 36:11
**keeping** [1] - 68:1
**Kendra** [1] - 18:10
**KENNETH** [33] - 4:13, 8:22, 9:6, 11:15, 11:20, 15:23, 17:1, 17:6, 20:17, 23:6, 28:25, 29:16, 43:9, 43:12, 43:17, 47:23, 48:11, 49:8, 50:5, 50:22, 53:18, 56:21, 57:2, 62:17, 65:12, 66:18,

Re: Noris Babb v Denis McDonough/VA    Case 8:20-cv-02825-MSS-CPT   Document 71-1   Filed 08/19/22   Page 27 of 98 PageID 928    ROUGH DRAFT - Zoom deposition of Tanya B. Burton, 5/4/2022

Page 6

67:20, 68:13, 69:23, 70:18, 73:18, 74:25, 75:13
**Kenneth** [11] - 2:6, 4:13, 55:1, 58:4, 58:13, 59:20, 59:22, 60:5, 78:11, 78:20, 79:24
**kept** [1] - 68:4
**kind** [1] - 52:5
**kinds** [1] - 10:1
**knowing** [1] - 18:15
**knows** [2] - 19:14, 59:22
**Koteh** [2] - 17:13, 19:11

## L

**label** [1] - 12:24
**labor** [3] - 11:17, 11:23, 26:13
**large** [1] - 72:23
**last** [2] - 13:6, 26:23
**law** [12] - 5:25, 6:2, 6:10, 8:9, 8:11, 8:13, 9:9, 9:12, 12:8, 12:17, 48:16, 72:23
**Law** [1] - 6:12
**lawyer** [1] - 11:23
**lawyers** [8] - 8:20, 21:23, 22:11, 23:4, 23:13, 23:19, 24:2
**least** [2] - 33:25, 49:4
**leave** [44] - 33:1, 33:6, 34:18, 34:20, 34:25, 37:16, 38:19, 40:9, 40:10, 40:14, 40:15, 40:16, 41:21, 41:22, 42:22, 42:23, 43:6, 44:10, 44:14, 45:8, 45:9, 45:25, 46:7, 46:10, 49:6, 50:3, 50:8, 50:13, 50:14, 51:23, 52:5, 52:19, 60:20, 60:23, 60:25, 61:1, 61:8, 61:12, 61:15, 66:8, 75:7, 75:10
**Legal** [1] - 2:13
**legal** [4] - 33:12, 48:20, 61:17
**less** [2] - 66:12
**Letter** [1] - 2:19
**letter** [6] - 3:2, 32:4, 32:9, 32:11, 34:23, 68:9
**level** [2] - 18:17, 19:20
**leveled** [1] - 58:25
**Liggett** [1] - 5:20
**limit** [6] - 9:5, 9:8, 13:14, 13:16, 13:17, 23:10
**limits** [1] - 10:1
**Line** [1] - 79:5
**line** [2] - 24:9, 68:5
**list** [2] - 25:19, 68:5
**listed** [2] - 63:10, 78:16
**litigation** [2] - 41:2, 67:7
**loan** [1] - 8:1
**located** [9] - 16:6, 22:23, 23:1, 23:18, 23:20, 27:10, 27:25, 28:4, 28:8
**location** [4] - 23:12, 23:14, 27:9, 71:17
**locations** [1] - 27:3
**look** [14] - 32:2, 32:8, 35:17, 36:13, 38:11, 43:22, 43:24, 44:22, 45:1, 50:9, 50:16, 55:22, 65:22, 68:13
**looked** [4] - 41:19, 50:18, 55:16, 62:9
**looking** [4] - 39:19, 44:1, 45:4, 45:5

**looks** [1] - 4:16
**Lynn** [4] - 17:10, 17:14, 18:18, 18:19

## M

**ma'am** [1] - 60:11
**Magri** [50] - 2:1, 2:2, 2:16, 4:11, 5:10, 8:23, 9:7, 11:25, 12:20, 15:24, 17:2, 20:24, 21:17, 29:17, 32:2, 32:16, 34:5, 34:9, 36:6, 36:13, 38:11, 39:11, 43:9, 43:22, 47:24, 49:9, 50:23, 51:24, 53:12, 55:14, 56:22, 57:20, 59:2, 59:10, 60:9, 61:2, 61:3, 62:5, 62:18, 62:22, 63:12, 63:16, 65:12, 66:23, 67:13, 70:21, 75:1, 78:20, 79:25
**MAGRI** [50] - 4:11, 5:8, 11:17, 17:5, 17:8, 32:1, 32:13, 33:23, 34:6, 35:25, 36:8, 38:3, 38:10, 39:9, 43:11, 43:14, 43:19, 43:25, 55:23, 56:3, 56:7, 56:23, 57:8, 59:4, 59:8, 62:3, 65:5, 65:15, 66:7, 66:14, 67:16, 67:24, 68:15, 68:18, 68:22, 68:25, 69:3, 69:7, 69:10, 69:13, 69:16, 69:18, 69:22, 69:24, 70:5, 70:7, 70:9, 70:12, 70:19, 75:11
**Magri's** [1] - 61:4
**maintain** [1] - 60:6
**Mamie** [1] - 2:7
**management** [11] - 11:17, 11:23, 19:4, 24:5, 24:10, 40:8, 45:10, 46:1, 73:25, 75:1, 75:2
**mandatory** [1] - 37:17
**manner** [1] - 4:8
**Maria** [2] - 18:10, 18:11
**Mariner** [1] - 2:3
**mark** [1] - 67:24
**MARKED** [1] - 3:13
**Mary** [2] - 20:6, 20:25
**matter** [20] - 12:24, 12:25, 13:1, 13:3, 13:5, 13:10, 14:12, 33:13, 47:14, 48:8, 48:9, 48:18, 49:13, 49:16, 49:17, 49:18, 49:21, 50:12, 51:19
**matters** [6] - 11:17, 12:7, 13:15, 63:20, 70:25, 71:1
**Matthew** [1] - 18:10
**matthew** [1] - 18:21
**McCallum** [10] - 33:14, 35:7, 35:22, 37:22, 38:2, 38:9, 38:15, 49:15, 61:24, 62:19
**MCDONOUGH** [2] - 1:6, 78:6
**McDonough** [2] - 32:6, 79:2
**MD.110** [2] - 40:23, 41:6
**Meagan** [7] - 2:2, 32:5, 56:3, 68:15, 68:17, 68:18
**mean** [34] - 6:23, 9:8, 9:16, 10:16, 11:4, 11:16, 12:16, 15:15, 15:19, 17:3, 17:5, 17:21, 17:22, 19:13, 19:14, 20:20, 21:17, 22:14, 23:10, 26:16, 26:17, 27:11, 27:15, 27:17, 34:23, 43:2, 50:6, 62:22, 65:15, 68:20, 73:3, 73:16, 74:13

**means** [3] - 9:17, 11:5, 41:24
**meant** [2] - 34:8, 48:9
**Mells** [3] - 20:6, 20:18, 20:25
**memo** [1] - 51:5
**memory** [4] - 34:12, 34:14, 35:14, 35:20
**mentioned** [4] - 20:3, 47:3, 72:16
**Merkle** [1] - 2:2
**method** [2] - 51:5, 51:9
**Miami** [2] - 14:11, 22:18
**Michael** [6] - 2:6, 4:13, 18:9, 78:11, 78:20, 79:24
**michael.kenneth@usdoj.gov** [4] - 2:9, 78:12, 78:20, 79:24
**MIDDLE** [2] - 1:1, 78:1
**might** [4] - 9:19, 34:1, 71:18
**mike** [1] - 69:6
**Mike** [1] - 11:19
**mind** [1] - 30:2
**mine** [1] - 75:8
**minute** [3] - 36:11, 36:16, 56:19
**moment** [3] - 32:16, 38:11, 44:21
**move** [1] - 38:7
**moved** [2] - 7:15, 11:2
**movie** [1] - 10:7
**MR** [83] - 4:11, 4:13, 5:8, 8:22, 9:6, 11:15, 11:17, 11:20, 15:23, 17:1, 17:5, 17:6, 17:8, 20:17, 23:6, 28:25, 29:16, 32:1, 32:13, 33:23, 34:6, 35:25, 36:8, 38:3, 38:10, 39:9, 43:9, 43:11, 43:12, 43:14, 43:17, 43:19, 43:25, 47:23, 48:11, 49:8, 50:5, 50:22, 53:18, 55:23, 56:3, 56:7, 56:21, 56:23, 57:2, 57:8, 59:4, 59:8, 62:3, 62:17, 65:5, 65:12, 65:15, 66:7, 66:14, 66:18, 67:16, 67:20, 67:24, 68:13, 68:15, 68:18, 68:22, 68:25, 69:3, 69:7, 69:10, 69:13, 69:16, 69:18, 69:22, 69:23, 69:24, 70:5, 70:7, 70:9, 70:12, 70:18, 70:19, 73:18, 74:25, 75:11, 75:13
**MSPB** [6] - 8:2, 12:9, 12:22, 13:2, 25:17, 26:1
**Mulcahy** [7] - 2:11, 20:14, 23:17, 24:2, 25:10, 30:19, 64:12
**must** [2] - 35:13, 70:12
**mute** [1] - 66:16
**muted** [3] - 4:17, 67:13, 68:18
**Myers** [2] - 28:14, 28:15

## N

**name** [4] - 4:10, 27:14, 61:3, 61:6
**name's** [1] - 5:9
**names** [2] - 25:19, 47:4
**naming** [1] - 19:19
**Naples** [2] - 28:11, 28:13
**narrow** [1] - 62:23
**national** [2] - 10:20, 73:12
**need** [9] - 5:13, 9:23, 12:3, 16:12, 16:14, 29:11, 58:9, 59:17, 75:2
**needed** [1] - 9:22

**needing** [1] - 36:18
**never** [2] - 41:7, 41:9
**new** [2] - 44:9, 47:22
**next** [3] - 37:1, 37:2, 59:19
**NO** [2] - 1:4, 78:4
**NONE** [1] - 3:13
**NORIS** [2] - 1:3, 78:3
**Noris** [4] - 5:10, 17:25, 21:12, 79:2
**normal** [1] - 61:10
**North** [4] - 2:8, 6:11, 7:5, 10:12
**NOT** [1] - 79:1
**Notary** [4] - 1:17, 76:7, 76:15, 77:14
**notes** [1] - 77:8
**nothing** [2] - 21:21, 62:14
**number** [3] - 49:1, 68:10, 69:22
**numbered** [1] - 32:11
**numbers** [3] - 68:2, 68:5, 68:6
**Nursing** [1] - 51:12

## O

**Oates** [1] - 18:9
**oath** [2] - 4:6, 5:4
**Oath** [1] - 2:17
**OATH** [1] - 76:1
**object** [16] - 8:22, 9:6, 11:15, 15:23, 17:1, 23:6, 29:16, 47:23, 48:11, 49:8, 50:5, 53:18, 57:4, 62:17, 73:18, 74:25
**objection** [3] - 13:7, 20:17, 28:25
**objections** [1] - 4:8
**obligation** [1] - 61:18
**occasionally** [1] - 21:24
**occurred** [2] - 34:13, 34:15
**OF** [11] - 1:1, 1:6, 1:9, 76:1, 76:4, 76:5, 77:1, 77:3, 77:4, 78:1, 78:6
**offer** [1] - 40:8
**office** [29] - 7:8, 7:14, 10:20, 10:24, 22:15, 22:21, 22:23, 31:23, 43:15, 56:1, 56:13, 56:17, 59:7, 59:11, 62:20, 66:17, 66:24, 67:18, 71:8, 71:13, 71:22, 71:25, 72:11, 72:12, 73:1, 73:3, 73:12, 73:22, 73:24
**Office** [10] - 2:7, 7:16, 10:5, 10:7, 10:20, 10:23, 63:14, 63:20, 71:5, 73:12
**offices** [3] - 22:4, 22:10, 72:21
**official** [5] - 24:11, 31:14, 41:1, 44:8, 51:9
**officials** [1] - 63:10
**often** [1] - 18:7
**OGC** [4] - 24:18, 48:14, 49:19, 74:7
**old** [1] - 21:18
**ON** [1] - 79:1
**once** [3] - 10:7, 41:19, 78:16
**one** [22] - 9:24, 14:4, 16:18, 18:2, 24:15, 24:24, 24:25, 27:22, 31:13, 39:22, 47:4, 47:25, 50:3, 59:12, 59:19, 61:12, 62:24, 66:3, 67:2, 70:19, 70:20, 71:16
**ones** [2] - 17:24, 47:22
**ongoing** [1] - 67:7

**open** [1] - 57:6
**operate** [3] - 73:15, 73:16, 73:21
**opinions** [1] - 62:15
**optional** [1] - 37:18
**order** [2] - 42:11, 67:25
**Order** [1] - 15:4
**ordering** [2] - 78:16, 78:16
**organization** [1] - 10:16
**original** [1] - 78:15
**originate** [1] - 27:17
**originated** [3] - 26:15, 26:18, 27:7
**Orlando** [6] - 14:11, 22:15, 28:5, 29:14, 72:19, 73:3
**ORM** [3] - 26:25, 27:3, 27:4
**otherwise** [2] - 21:22, 57:17
**outcome** [1] - 46:9
**outside** [1] - 66:11
**own** [7] - 6:15, 6:17, 30:2, 45:20, 46:9, 49:7, 52:21

## P

**P.A** [1] - 2:2
**p.m** [8] - 1:13, 43:20, 43:21, 66:20, 66:22, 67:21, 67:23, 75:19
**page** [9] - 34:1, 34:2, 36:8, 36:9, 36:10, 36:12, 45:6, 45:7
**PAGE** [1] - 2:15
**Page** [28] - 3:1, 3:12, 32:7, 32:11, 32:12, 33:24, 33:25, 34:2, 34:3, 36:4, 36:15, 36:16, 38:12, 39:9, 39:10, 39:24, 43:23, 43:24, 44:5, 45:1, 50:23, 51:2, 68:16, 69:8, 69:11, 69:14, 69:19, 79:5
**Pages** [1] - 1:20
**pages** [5] - 32:11, 35:18, 62:4, 77:7, 78:14
**Palm** [6] - 22:15, 72:10, 72:12, 72:14, 72:15, 72:16
**Pam** [3] - 17:22, 20:3, 63:24
**Pamela** [2] - 63:24, 67:1
**Paragraph** [1] - 67:2
**paragraph** [6] - 32:14, 32:15, 32:17, 32:23, 34:7, 35:5
**paralegal** [1] - 5:25
**Pardon** [2] - 10:24, 19:18
**part** [10] - 6:21, 6:24, 19:11, 19:15, 22:5, 28:13, 28:15, 28:18, 32:10, 65:20
**partially** [1] - 59:12
**participate** [1] - 15:12
**participating** [1] - 4:2
**PARTIES** [1] - 1:14
**parties** [3] - 4:6, 77:9, 78:16
**parties'** [1] - 77:9
**partners** [1] - 48:20
**party** [1] - 78:16
**Patient** [1] - 51:12
**Patrick** [1] - 19:10
**pay** [1] - 64:3
**penalties** [1] - 79:21

**people** [7] - 27:10, 42:14, 45:18, 51:16, 55:3, 72:25, 75:5
**per** [7] - 22:21, 38:18, 40:22, 45:10, 45:15, 46:10, 58:3
**perform** [1] - 12:7
**period** [2] - 17:15, 35:6
**perjury** [1] - 79:21
**Persia** [1] - 18:14
**person** [11] - 15:11, 25:17, 27:16, 27:25, 28:4, 28:8, 28:11, 46:6, 48:21, 61:15
**personally** [1] - 76:8
**persons** [1] - 46:6
**perusing** [1] - 38:6
**Perusing** [1] - 32:19
**Pete** [1] - 71:25
**Petersburg** [4] - 7:1, 8:18, 8:20, 11:9
**Pg** [5] - 3:3, 3:4, 3:5, 3:6, 3:7
**pharmacy** [2] - 32:25, 35:7
**Pharmacy** [7] - 42:22, 44:11, 44:12, 44:13, 45:7, 46:14, 53:19
**phone** [2] - 37:23, 43:5
**phonetic** [15] - 16:13, 17:11, 17:14, 18:5, 18:10, 18:11, 18:12, 18:14, 19:12, 19:16, 20:1, 20:6, 60:13, 60:19
**phonetic)** [1] - 18:19
**physically** [3] - 17:4, 23:2, 23:17
**pick** [1] - 9:17
**Pines** [30] - 11:13, 14:8, 16:7, 22:14, 23:2, 23:3, 23:5, 23:7, 23:8, 23:11, 23:18, 23:20, 23:22, 24:3, 26:14, 28:16, 28:18, 28:20, 29:4, 29:19, 29:21, 40:7, 40:12, 71:9, 71:18, 71:19, 72:10, 72:18, 74:3
**PLACE** [1] - 1:14
**place** [6] - 11:8, 14:3, 17:4, 61:21, 69:25
**plaintiff** [1] - 33:1
**Plaintiff** [3] - 1:4, 1:11, 78:4
**PLAINTIFF** [1] - 2:1
**PLAINTIFF'S** [1] - 3:1
**plaintiff's** [1] - 33:2
**pleasant** [1] - 61:7
**point** [16] - 7:13, 14:4, 24:12, 24:25, 25:12, 25:14, 32:7, 47:4, 47:10, 48:5, 50:4, 59:1, 66:24, 70:17
**Point** [2] - 5:21, 5:23
**points** [1] - 10:5
**police** [1] - 18:8
**policy** [8] - 45:13, 50:3, 50:7, 50:8, 50:13, 61:9, 63:10, 74:6
**portion** [2] - 64:1, 65:11
**position** [1] - 13:23
**possibly** [1] - 37:24
**practice** [6] - 6:15, 6:17, 6:18, 6:19, 9:1, 9:3
**PRESENT** [2] - 1:14, 2:11
**present** [2] - 4:4, 75:16
**presented** [1] - 68:1
**pretty** [1] - 73:14
**primarily** [2] - 8:9, 49:24

Re: Noris Babb v Denis McDonough/VA    Case 8:20-cv-02825-MSS-CPT   Document 71-1   Filed 08/19/22   Page 29 of 98 PageID 930    ROUGH DRAFT - Zoom deposition of Tanya B. Burton - 5/4/2022

Page 8

**principal** [2] - 55:6, 55:10
**privilege** [1] - 40:13
**privileged** [1] - 40:12
**procedure** [1] - 45:14
**proceeding** [4] - 52:20, 52:24, 53:14, 59:17
**proceedings** [2] - 4:5, 53:11
**process** [2] - 15:25, 44:8
**produced** [5] - 55:17, 56:22, 56:25, 57:1, 62:7
**Professional** [1] - 78:18
**Proght's** [1] - 17:10
**provide** [3] - 16:11, 40:11, 40:13
**provided** [1] - 40:15
**Public** [4] - 1:17, 76:7, 76:15, 77:14
**pull** [10] - 31:22, 31:23, 33:23, 39:16, 39:20, 43:25, 55:23, 59:4, 65:5, 65:10
**pulled** [1] - 31:24
**purposes** [1] - 39:15
**put** [3] - 37:15, 57:15, 68:9

## Q

**questioning** [1] - 24:9
**questions** [9] - 5:11, 5:12, 57:5, 62:5, 70:17, 70:18, 70:22, 75:12, 75:13
**quote** [2] - 49:13, 67:5

## R

**raise** [1] - 4:22
**RE** [1] - 78:8
**reach** [1] - 71:3
**reaction** [1] - 64:23
**read** [21] - 29:8, 29:10, 32:8, 32:16, 32:20, 37:4, 37:18, 39:12, 40:18, 41:2, 44:7, 44:15, 45:16, 46:11, 47:2, 58:15, 59:13, 67:2, 75:13, 78:14, 79:21
**Read** [1] - 2:19
**reading** [3] - 32:18, 75:17, 78:13
**ready** [3] - 4:18, 4:19, 4:20
**real** [1] - 44:16
**really** [5] - 21:8, 34:14, 35:10, 44:20, 75:2
**Reason** [1] - 79:5
**reason** [4] - 32:9, 38:16, 74:12, 74:14
**received** [2] - 61:23, 78:16
**receiving** [1] - 35:3
**recess** [2] - 66:20, 67:21
**recognize** [1] - 50:7
**recognized** [1] - 50:2
**recollection** [5] - 21:5, 21:10, 46:13, 46:22, 58:18
**recommendation** [1] - 64:2
**reconsiderations** [1] - 16:2
**record** [11] - 4:10, 5:9, 29:23, 39:14, 43:20, 43:21, 54:11, 54:13, 66:1, 70:1, 77:7
**record's** [1] - 53:24
**referenced** [1] - 78:13

**references** [1] - 65:6
**referred** [4] - 18:7, 38:23, 41:17, 49:15
**referring** [4] - 25:14, 27:7, 27:8, 27:9
**refresh** [2] - 46:13, 58:17
**regard** [11] - 8:25, 10:7, 12:21, 14:2, 29:14, 30:3, 31:12, 31:15, 49:22, 50:3, 74:23
**regarding** [1] - 45:24
**region** [3] - 9:13, 48:6, 48:8
**Regional** [17] - 10:11, 10:14, 38:19, 38:22, 40:11, 44:13, 45:11, 45:15, 46:5, 46:10, 47:5, 47:16, 58:3, 58:12, 60:4, 62:20, 71:5
**regional** [4] - 10:20, 47:13, 48:19, 48:23
**regions** [1] - 10:9
**relate** [3] - 24:14, 42:15, 62:7
**related** [2] - 56:7, 67:7
**relates** [3] - 17:13, 65:11, 65:21
**relating** [5] - 35:19, 42:14, 56:10, 56:11, 57:12
**relation** [2] - 35:21, 42:21
**relative** [2] - 77:8, 77:9
**relayed** [2] - 58:12, 60:5
**relied** [5] - 40:14, 40:23, 41:6, 41:10, 41:16
**remember** [19] - 6:5, 6:16, 6:23, 17:22, 17:24, 21:8, 21:9, 21:18, 22:16, 35:9, 35:10, 35:15, 39:6, 39:8, 58:23, 62:25, 63:3, 72:13
**REMOTELY** [1] - 1:14
**remotely** [2] - 4:6, 23:4
**reorganizations** [1] - 10:18
**reorganized** [3] - 7:24, 8:4, 8:8
**reply** [1] - 40:17
**Report** [1] - 66:25
**report** [6] - 33:25, 34:3, 65:7, 65:24, 67:4, 77:6
**reported** [2] - 53:22, 79:4
**Reporter** [2] - 2:18, 78:18
**REPORTER** [6] - 4:1, 4:12, 4:15, 4:21, 5:6, 77:1
**reporter** [2] - 4:3, 67:12
**reporting** [2] - 4:5, 4:8
**represent** [1] - 5:10
**representative** [1] - 41:1
**representing** [1] - 48:24
**request** [16] - 15:6, 15:7, 35:21, 37:2, 37:15, 37:21, 40:17, 41:21, 42:22, 45:8, 45:15, 45:24, 51:5, 51:9, 56:8, 75:8
**requested** [2] - 40:10, 77:7
**requesting** [1] - 44:8
**requests** [2] - 37:14, 44:10
**responded** [1] - 40:20
**response** [3] - 37:1, 37:8, 40:22
**responsibilities** [2] - 8:7, 30:10
**resulted** [1] - 65:3
**resumed** [2] - 66:21, 67:22
**review** [1] - 77:6

**reviewed** [1] - 42:4
**RMO** [2] - 58:22, 60:15
**RMOs** [2] - 55:7, 55:10
**Robert** [1] - 58:5
**ROI** [19] - 33:24, 34:2, 34:3, 34:18, 35:2, 38:8, 38:12, 38:14, 39:15, 43:23, 50:19, 50:24, 56:12, 68:16, 69:9, 69:12, 69:15, 69:20
**role** [3] - 60:19, 60:22, 60:24
**Ronald** [1] - 18:11
**Rosa** [4] - 21:15, 60:13, 60:19, 60:21
**Roxanne** [1] - 17:14
**rules** [4] - 73:15, 73:17, 73:19, 73:21

## S

**Sabrina** [1] - 19:10
**Salem** [4] - 7:5, 7:11, 7:19, 7:22
**Sarasota** [2] - 28:17, 28:18
**sat** [2] - 20:11, 54:18
**Schmig** [2] - 57:25, 58:9
**school** [3] - 5:25, 6:3, 6:10
**School** [1] - 6:12
**Screen** [1] - 31:25
**screen** [2] - 32:3, 39:19
**Scriven** [2] - 64:11, 64:16
**scroll** [8] - 32:1, 32:6, 32:7, 32:12, 34:3, 34:6, 36:8, 38:3
**se** [1] - 22:21
**search** [1] - 57:13
**searching** [1] - 57:12
**second** [2] - 31:12, 66:4
**SECRETARY** [2] - 1:6, 78:6
**section** [1] - 26:11
**see** [21] - 32:4, 33:25, 34:5, 34:9, 35:18, 35:25, 36:2, 36:9, 36:20, 39:21, 39:22, 39:23, 45:11, 51:1, 51:6, 51:12, 57:21, 58:8, 68:21, 68:22, 68:25
**seek** [2] - 33:16, 33:18
**seeking** [1] - 38:1
**seem** [2] - 20:13
**send** [2] - 14:18, 59:5
**SENT** [1] - 78:10
**sent** [1] - 39:21
**September** [1] - 67:4
**seriously** [1] - 74:16
**service** [3] - 33:1, 33:21, 61:13
**Services** [2] - 44:11, 51:12
**services** [1] - 61:14
**set** [1] - 27:4
**settlement** [2] - 14:23, 15:10
**share** [3] - 25:20, 25:24, 31:25
**Sheet** [1] - 2:20
**SHEET** [1] - 79:1
**shook** [2] - 64:19, 64:21
**shot** [1] - 57:18
**showing** [1] - 50:3
**Sigilai** [2] - 39:25, 40:1
**sign** [1] - 78:14

Re: Noris Babb v Denis McDonough VA    Case 8:20-cv-02825-MSS-CPT   Document 71-1   Filed 08/19/22   Page 30 of 98 PageID 931    ROUGH DRAFT - Zoom deposition of Tanya B. Burton 5/4/2022

Page 9

**Sign** [1] - 2:19
**signaling** [1] - 64:20
**signed** [1] - 76:11
**signing** [2] - 75:17, 78:13
**simply** [1] - 21:19
**sitting** [1] - 54:2
**Slam** [1] - 18:9
**Slide** [1] - 21:15
**Sligh** [2] - 60:13, 60:19
**Sligh's** [1] - 60:22
**smiley** [1] - 70:3
**someone** [8] - 19:22, 38:24, 39:1, 39:2, 46:19, 52:19, 64:6, 75:2
**sometimes** [3] - 19:2, 23:3, 71:16
**somewhere** [1] - 10:12
**sorry** [5] - 11:19, 20:20, 37:2, 51:24, 71:12
**sought** [4] - 33:12, 33:13, 37:21, 38:15
**sound** [1] - 27:8
**Sounds** [1] - 66:18
**source** [1] - 48:21
**southeast** [1] - 9:12
**southeastern** [1] - 22:5
**speaking** [5] - 38:9, 46:16, 46:19, 63:7, 73:20
**speaks** [1] - 41:14
**Special** [2] - 10:21, 10:23
**specialized** [1] - 8:9
**specializing** [1] - 8:3
**specific** [3] - 25:2, 62:23, 62:25
**spoken** [1] - 44:19
**St** [5] - 7:1, 8:18, 8:20, 11:9, 71:25
**Staff** [1] - 51:11
**staff** [3] - 7:21, 8:7, 30:6
**stage** [13] - 14:13, 14:20, 14:24, 15:1, 15:14, 19:7, 21:25, 22:2, 30:17, 30:20, 30:23, 65:18, 67:2
**Stagman** [1] - 20:1
**stand** [2] - 64:12, 64:16
**standpoint** [1] - 32:10
**started** [5] - 6:15, 6:16, 8:3, 10:10, 36:9
**state** [1] - 74:24
**STATE** [2] - 76:4, 77:3
**State** [3] - 76:7, 76:15, 77:14
**statement** [3] - 54:21, 65:24, 67:5
**States** [3] - 2:7, 22:6, 24:18
**STATES** [2] - 1:1, 78:1
**stating** [1] - 4:9
**stenographic** [1] - 77:8
**stenographically** [1] - 77:6
**step** [1] - 62:6
**stepping** [1] - 66:10
**Stewart** [2] - 58:5, 58:21
**stewart** [1] - 58:11
**stick** [1] - 14:7
**still** [13] - 4:17, 7:16, 8:5, 27:18, 30:25, 31:9, 31:11, 31:15, 37:16, 47:20, 52:9, 57:14, 60:6
**stipulated** [1] - 75:15

**Street** [2] - 2:3, 2:8
**style** [1] - 79:2
**styles** [1] - 73:25
**subject** [7] - 33:13, 49:13, 49:16, 49:18, 49:21, 50:12
**submitted** [2] - 38:19, 46:11
**sufficient** [1] - 78:15
**Suite** [2] - 2:3, 2:8
**supervisor** [14] - 9:21, 13:22, 44:9, 53:16, 59:16, 59:20, 60:2, 60:21, 60:22, 61:7, 61:9, 61:12, 61:14, 73:6
**supervisory** [2] - 30:9, 51:5
**support** [1] - 35:13
**suspension** [2] - 64:3, 64:9
**swear** [1] - 4:17
**sworn** [2] - 5:3, 76:9
**sync** [1] - 34:12

---

## T

**T.B** [2] - 67:6, 70:2
**tab** [1] - 35:25
**Tab** [10] - 36:2, 36:14, 38:10, 38:12, 39:10, 39:24, 44:21, 50:25, 51:2
**tabs** [2] - 35:18, 36:4
**TAKEN** [2] - 1:12, 78:9
**Tampa** [18] - 2:3, 2:8, 2:8, 14:10, 16:19, 22:14, 22:22, 22:24, 27:16, 28:8, 30:3, 70:24, 71:14, 71:18, 71:19, 72:10, 72:18, 74:3
**TAMPA** [2] - 1:2, 78:2
**Tanya** [7] - 2:15, 76:8, 77:6, 78:8, 78:11, 79:3, 79:23
**TANYA** [2] - 1:10, 5:2
**Technical** [2] - 5:24, 6:8
**technology** [1] - 5:25
**tentatively** [1] - 37:3
**terms** [4] - 24:15, 44:17, 47:14, 74:6
**Testa** [1] - 18:11
**testified** [3] - 5:4, 46:20, 49:9
**testifying** [1] - 45:19
**testimony** [8] - 40:7, 42:3, 47:2, 57:9, 57:11, 57:13, 65:23, 66:1
**THE** [25] - 2:1, 2:6, 4:20, 4:23, 5:5, 11:19, 56:5, 59:6, 66:5, 66:10, 66:19, 68:16, 68:20, 68:23, 69:2, 69:5, 69:8, 69:11, 69:14, 69:17, 69:19, 70:2, 70:6, 70:8, 70:10
**themselves** [2] - 9:5, 9:8
**they've** [1] - 26:13
**thinking** [1] - 10:6
**Thomas** [1] - 18:11
**thoughts** [1] - 69:25
**three** [4] - 34:7, 64:3, 64:9, 73:1
**three-day** [2] - 64:3, 64:9
**threw** [1] - 26:23
**Thursday** [1] - 36:19
**TIME** [1] - 1:13
**timeline** [1] - 6:23

**Timothy** [1] - 18:11
**title** [2] - 7:20, 47:18
**TO** [1] - 78:10
**today** [1] - 6:25
**today's** [2] - 42:5, 42:7
**Todd** [1] - 19:16
**tomorrow's** [1] - 59:17
**took** [3] - 11:7, 11:10, 13:21
**top** [2] - 22:16, 38:18
**topic** [1] - 70:22
**torts** [1] - 8:1
**track** [1] - 68:1
**TRANSCRIPT** [1] - 79:1
**transcript** [6] - 68:6, 77:7, 77:7, 78:13, 78:14
**transfer** [1] - 7:13
**transferred** [1] - 5:21
**Trask** [15] - 3:9, 17:23, 20:8, 53:17, 54:17, 54:23, 55:12, 55:18, 56:10, 58:22, 59:1, 59:5, 59:24, 69:21, 70:6
**treated** [2] - 74:22, 75:5
**trial** [5] - 17:4, 20:14, 59:14, 59:17, 59:23
**tried** [1] - 48:4
**Trimble** [9] - 17:22, 20:3, 20:21, 30:12, 30:14, 63:24, 64:3, 64:7, 67:1
**Trimble's** [2] - 20:16, 65:2
**true** [4] - 28:14, 38:21, 77:7, 79:22
**Truitt** [14] - 3:8, 17:23, 20:9, 53:17, 54:16, 54:22, 55:12, 55:18, 55:24, 56:11, 58:9, 58:22, 69:21, 70:4
**Truitt's** [2] - 56:8, 60:1
**truth** [1] - 5:3
**try** [2] - 13:7, 61:18
**trying** [8] - 8:24, 13:19, 23:9, 23:10, 24:12, 46:15, 53:3, 73:5, 73:10
**Tuesday** [1] - 36:19
**turn** [1] - 31:21
**two** [5] - 25:11, 31:4, 39:23, 52:23, 60:1
**type** [16] - 11:21, 11:22, 12:7, 16:10, 23:23, 33:1, 33:6, 37:16, 38:19, 42:23, 43:6, 44:14, 46:7, 46:10, 49:6
**typed** [1] - 68:21
**typing** [2] - 68:24, 69:1

---

## U

**under** [4] - 40:25, 46:4, 73:15, 73:16
**Under** [1] - 79:21
**unintelligible** [1] - 71:17
**United** [3] - 2:7, 22:5, 24:17
**UNITED** [2] - 1:1, 78:1
**University** [2] - 6:7, 6:12
**unless** [5] - 27:9, 27:22, 38:24, 39:1, 47:22
**unmute** [1] - 68:19
**unquote** [1] - 49:13
**up** [33] - 27:5, 28:24, 31:22, 31:23, 31:24, 32:1, 33:23, 34:8, 34:21, 38:3,

Re: Noris Babb v. Denis McDonough/VA          ROUGH DRAFT - Zoom deposition of Tanya B. Burton, 3/4/2022          Page 31 of 98 PageID 932

Page 10

39:16, 39:20, 43:25, 47:9, 47:11,
47:19, 51:19, 53:2, 53:9, 53:10, 53:14,
53:15, 54:20, 55:23, 57:15, 58:8,
58:18, 59:4, 64:12, 64:16, 64:24,
65:11, 68:6
**USCG** [1] - 5:22

## V

**VA** [9] - 6:17, 6:20, 7:3, 7:7, 8:3, 22:5,
63:14, 70:24, 74:8
**vacation** [1] - 59:21
**VAJ** [1] - 74:17
**various** [3] - 62:5, 62:7, 71:20
**vary** [1] - 24:21
**verbum** [1] - 18:18
**versa** [1] - 71:18
**VETERANS** [2] - 1:6, 78:6
**Veterans** [1] - 2:12
**vice** [1] - 71:18
**view** [2] - 13:9, 13:12
**VISN** [1] - 16:13
**VISNs** [1] - 10:13
**vs** [3] - 1:5, 78:5, 79:2

## W

**wait** [2] - 56:19, 75:8
**waiting** [1] - 37:17
**waive** [1] - 4:7
**waived** [1] - 75:18
**Walter** [1] - 18:9
**Waltz** [1] - 18:12
**wants** [1] - 56:5
**waste** [1] - 56:17
**water** [1] - 66:6
**week** [1] - 40:17
**welcome** [1] - 60:12
**West** [4] - 22:15, 72:14, 72:15, 72:16
**WHEREUPON** [1] - 5:1
**whoever's** [1] - 31:22
**whole** [3] - 32:8, 32:14, 32:15
**Wilson** [7] - 38:25, 39:7, 44:23, 45:7,
46:16, 46:17, 53:20
**Winston** [5] - 7:5, 7:11, 7:19, 7:22, 11:2
**Winston-Salem** [4] - 7:5, 7:11, 7:19,
7:22
**Wise** [1] - 2:7
**WITNESS** [24] - 4:20, 4:23, 5:5, 11:19,
56:5, 59:6, 66:5, 66:10, 66:19, 68:16,
68:20, 68:23, 69:2, 69:5, 69:8, 69:11,
69:14, 69:17, 69:19, 70:2, 70:6, 70:8,
70:10, 78:10
**Witness** [1] - 2:19
**witness** [7] - 1:16, 4:4, 19:13, 19:14,
57:10, 78:14, 78:15
**witnesses** [3] - 16:14, 33:3, 64:20
**word** [1] - 23:15
**words** [1] - 73:11
**workday** [1] - 37:15

**workload** [1] - 9:22
**works** [4] - 11:18, 24:8, 24:19, 48:14
**WRITE** [1] - 79:1
**writing** [1] - 38:25
**written** [2] - 42:13, 63:13

## Y

**year** [3] - 5:20, 57:7, 57:23
**years** [1] - 61:22
**yesterday** [3] - 37:15, 57:4, 58:3
**yourself** [1] - 75:6

## Z

**Zachariah** [1] - 17:14
**Zoom** [7] - 2:15, 5:11, 66:21, 67:22,
75:19, 77:6, 79:3
**zoom** [1] - 78:8
**ZOOM** [1] - 1:9

# EXHIBIT B

Page 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
CASE NO.: 8:20-CV-2825-T-35CPT
-------------------------X
NORIS BABB,                )
                           )
        Plaintiff,         )
                           )
v                          )  DEPOSITION OF:
                           )  DEBORAH K. McCALLUM
DENIS McDonough,           )
SECRETARY, DEPARTMENT      )
OF VETERANS AFFAIRS,       )
                           )
        Defendant.         )
-------------------------X

TAKEN BY:      Joseph D. Magri, Esquire

DATE:          Thursday, February 17, 2022

TIME:          1:59 p.m. - 2:55 p.m.

PLACE:         Via Videoconference

                Heidi Fabrikant, FPR
                Executive Reporting Service
                Ulmerton Business Center
                13555 Automobile Boulevard
                Suite 130
                Clearwater, Florida  33762

---

Page 2

1       REMOTE APPEARANCES
2
3       JOSEPH D. MAGRI, ESQUIRE
        Merkle Magri & Meythaler PA
4       5601 Mariner Street
        Suite 400
5       Tampa, Florida  33609-3452
        813-281-9000
6       jmagri@merklemagri.com
        Attorney for the Plaintiff
7
8
9       MICHAEL R. KENNETH, ESQUIRE
        U.S.A.O. Middle District of Florida
10      400 North Tampa Street
        Suite 3200
11      Tampa, Florida  33602-4798
        813-274-6000
12      michael.kenneth@usdoj.gov
        Attorney for the Defendant
13
14
15
16
17
18
19      Also Present:
20        Megan Culpepper
21
22
23
24
25

---

Page 3

1                     INDEX
2
        DEPOSITION OF DEBORAH K. McCALLUM
3
4       Direct Examination by Mr. Kenneth        4
5       Certification of Oath            30
6       Certification of Reporter        31
7       Errata Sheet                     32
8       Read and Sign Letter             33
9
10
11             PLAINTIFF'S EXHIBITS
12      Number      Description      Page
12             (No Exhibits)
13
14             DEFENDANTS' EXHIBITS
15      Number      Description      Page
16             (No Exhibits)
17
18
19
20
21
22
23
24
25

---

Page 4

1       THEREUPON,
2              DEBORAH K. McCALLUM,
3       was adduced as the deponent herein, and being first
4       duly sworn upon oath via videoconference, was
5       questioned and testified as follows:
6           THE DEPONENT:  I do, ma'am.
7              DIRECT EXAMINATION
8       BY MR. MAGRI:
9       Q.   Okay.  Good afternoon.
10      A.   Good afternoon, sir.
11      Q.   What position are you currently in the VA?
12      A.   I'm the senior EEO attorney advisor for OGC
13      and the Secretary.
14      Q.   Okay.  And how long have you had that
15      position?
16      A.   That position, approximately seven years, I
17      think.
18      Q.   Okay.  And what position have you had before
19      that?
20      A.   Prior to that, I was an SES, I was the
21      assistant general counsel for Professional Staff Group
22      4 and the Office of General Counsel.
23      Q.   And what's Group 4?
24      A.   Group 4 was the group that handled EEO cases,
25      EEO training.  About seven years ago OGC underwent a

---

Electronically signed by Heidi Fabrikant (401-362-739-5523)
Electronically signed by Heidi Fabrikant (401-362-739-5523)

bfb4cde4-ebeb-4fd5-9898-5fd54d809e9c

Page 5

1    reorganization and they combined two staff groups --
2    one was Staff Group 3, which did MSPB grievances and
3    everything that wasn't EEOC, with Group 4 -- and the
4    combined group is now known as the Personnel Law Group.
5        Q.   Are you associated with the Personnel Law
6    Group?
7        A.   I am a member of the Personnel Law Group,
8    sir.  I'm an SL.  I'm a senior leader in the Personnel
9    Law Group.
10       Q.   So how long were you in -- how long have you
11   been in these various positions?
12       A.   I was the deputy assistant general counsel
13   for, I think, about 15 years; and then I was the deputy
14   general counsel probably for another seven or eight
15   years; and then the rest of the time I was a staff
16   attorney.  This will be my 33rd year with the VA.
17       Q.   Okay.  All right.  And what's your role in
18   your current position?
19       A.   My current role is to advise -- to provide
20   legal guidance and advice to Agency officials and to
21   the Secretary on matters involving the EEO, whether
22   it's -- and also I provide -- I conduct EEO training
23   with the Agency.
24           I also am considered the Agency's subject
25   matter expert on disability law and reasonable

Page 6

1    accommodations, so I provide guidance and training on
2    that as well.  I also handle the defense of EEO
3    complaints that involve Agency officials at the 15
4    level and above, 15 level and above cases that have
5    attracted the attention of Congress or cases that have
6    attracted the attention of the media.  I defend the
7    Agency in those cases.
8        Q.   Okay.  Who makes the rules for the Agency --
9    for the VA regarding time and attendance?
10       A.   If you're just talking about overall time and
11   attendance, I believe it's HR, human resources.  I
12   mean, that's a general question.  I think they issue
13   the rules and regulations on how time and attendance is
14   handled as far as I know.
15       Q.   Okay.  All right.
16           Now, you're here as a "Rule 30(b)(6) witness
17   for VISN 8 with specific knowledge of the policies,
18   regulations, and rules relating to the granting of
19   administrative absence or official time for federal
20   employees to attend federal court depositions or
21   proceedings."
22           MR. KENNETH:  Objection.
23           Mr. Magri, every time this issue has come up
24   we've objected to the "VISN 8" portion of it
25   because there is nothing specific to "VISN 8."  Ms.

Page 7

1    McCallum is here broader than that.  She can
2    otherwise answer your question.  I just wanted to
3    put that on the record.
4    BY MR. MAGRI:
5        Q.   Okay.  Do you understand that you're here --
6    I'm going to leave the VISN 8 portion out and read that
7    again.
8        A.   Yes, sir.
9        Q.   You're here as a "Rule 30(b)(6) witness with
10   specific knowledge of the policies, regulations, and
11   rules relating to the granting of administrative
12   absence or official time for federal employees to
13   attend federal court depositions or proceedings";
14   correct?
15       A.   I am, sir.
16       Q.   Okay.  What's the basis of your knowledge of
17   that subject?
18       A.   The basis of my knowledge of the subject is
19   being a litigator and having such requests made to me,
20   but also familiarity with the obligations to provide
21   what on an administrative level was called official
22   time, and my research and understanding that there are
23   no rules as to granting administrative leave once the
24   case gets out of the administrative phase and gets into
25   proceedings of federal district court.

Page 8

1        Q.   And can you point me to a rule that says what
2    you just said?
3            MR. KENNETH:  Object to the form.
4        A.   No.
5        Q.   Can you point me to a rule that says what you
6    just said?
7        A.   I cannot point to a specific rule.  I just
8    know from personal knowledge that there is no authority
9    for granting administrative leave to an employee to
10   attend depositions for themselves or for others once
11   the case -- at least in federal district court, unlike
12   at the administrative level, which requires that you
13   grant official time.
14           There is authority to grant an employee time
15   in terms of official time to attend such things.
16       Q.   Now, you say your "personal knowledge."  What
17   is that personal knowledge?
18       A.   My personal knowledge is from trying and
19   defending cases in which this has come up as the
20   subject matter.
21           The research that I've done has indicated
22   that I've been unable to find any authority that
23   requires the Agency in the federal rules or anywhere
24   else that requires an agency to grant an employee
25   administrative leave to attend depositions once the

Executive Reporting Service

Electronically signed by Heidi Fabrikant (401-362-739-5523)
Electronically signed by Heidi Fabrikant (401-362-739-5523)                                    bfb4cde4-ebeb-4fd5-9898-5fd54d809e9c

Page 9

1   case enters federal district court.
2       Q.   Okay.  Now, are you aware of any rules that
3   prohibit that?
4       A.   I'm not aware of any.  I've never looked for
5   any rules that prohibit it.  When I'm asked the
6   question, I look for authorization to do something.  I
7   have researched this issue a number of times when it
8   has come before me for my purposes and when others have
9   asked me whether they have the authorization to grant
10  such leave, and I have never found any authorization.
11  I have not found any prohibition, but I have not found
12  any authority to grant such leave.
13      Q.   Okay.  You would agree with me that
14  administrative absence is often granted for employees
15  that go to federal court?
16      A.   I can't say that, sir.  I don't know.  I
17  don't know what goes on throughout the Agency.  I can
18  tell you that every time that I have been called by a
19  management official or an OGC attorney or anyone and
20  asked whether there is authorization to grant the
21  leave, my response has always been no, but I don't know
22  what goes on in other facilities.  I don't know whether
23  other managers or supervisors grant AA leave.  I don't
24  have any firsthand knowledge of that.
25          I have firsthand knowledge of the advice that

Page 10

1   I've given in the situations that I've given it, and
2   it's always been that there is no authorization.
3       Q.   Okay.  Now, are you saying that those that
4   have given AA are not authorized to have done that?
5       A.   I'm saying according to my understanding of
6   the law, there is no authorization to do it.  That's
7   correct.
8       Q.   Has the agency -- let me skip back a minute.
9       A.   Okay.
10      Q.   Do you know who approves leave --
11          MR. KENNETH:  Object to form; beyond the
12  scope.
13          Go ahead.  You can answer the question, Ms.
14  McCallum.
15      A.   Well, he hasn't finished the question.  I'm
16  waiting for him to finish the question.
17      Q.   Do you know who approves leave for AA?
18      A.   I don't know if there is a specific person.
19  Sometimes it could be the first-level supervisor,
20  sometimes it can be the second-level supervisor, and it
21  could be the facility director.  I don't know that
22  there is a specific person who is authorized to grant
23  administrative leave.
24      Q.   Okay.  How about an authorized absence?  Do
25  you know who --

Page 11

1       A.   Same answer.
2       Q.   Same answer?
3       A.   Same answer, sir.
4       Q.   Okay.
5          Do the people that grant authorized absences
6   or administrative absences have rules and policies that
7   they're supposed to follow when doing time and
8   attendance and leave?
9       A.   I would imagine they do.  I don't know what
10  those are.  That's not in my lane.  I don't deal with
11  HR matters.  That's a function of HR, and I'm not
12  involved in HR matters.
13      Q.   Okay.  So your knowledge applies to what
14  advice you would give OGC attorneys?
15      A.   No.  I have had supervisors and managers call
16  me and ask me the same question, and my answer has
17  always been the same.
18      Q.   Okay.  To your knowledge, can you identify
19  any that you recall?
20      A.   No, sir.  Usually, when it comes in, it comes
21  in as a phone call, a very brief phone call where
22  someone would call and ask me if this is something that
23  is authorized, and I'll answer the question.  I don't
24  keep track of names.  I just answer the question.
25          I've been doing this for 30 years.  I'm sure

Page 12

1   there have been dozens and dozens of people that call
2   me, but I don't keep track of the names.
3       Q.   Now, did a person by the name of TB Burton
4   call you?
5       A.   She did.
6       Q.   Okay.  Tell me what you recall about that
7   conversation.
8       A.   Ms. Burton called me and she told me that she
9   had an employee who wanted to -- who had requested for
10  administrative leave -- first of all, she told me the
11  case was in federal district court and she had an
12  employee who wanted administrative leave in order to
13  attend her own deposition as well as the deposition of
14  the other people to be called for depositions.  She
15  asked me if there was any authorization to grant
16  administrative leave to an employee for those purposes,
17  and my response was no.
18      Q.   Now, when you spoke to her, do you remember
19  any other parts of that conversation?
20      A.   No.  The whole conversation I would say was
21  not more than five minutes.  She didn't tell me
22  anything about -- I didn't know who the employee was.
23  She just said "an employee."  She may have told me it
24  was at the Tampa facility.  She may have told me where
25  it was at, but she didn't tell me the name of the

3  (Pages 9 to 12)

Executive Reporting Service

Electronically signed by Heidi Fabrikant (401-362-739-5523)
Electronically signed by Heidi Fabrikant (401-362-739-5523)

bfb4cde4-ebeb-4fd5-9898-5fd54d809e9c

Page 13

1   employee.  She didn't tell me who the employee was or
2   anything.  She just said she had an employee that
3   wanted to take this leave and wanted to know if we were
4   authorized to grant her leave for that purpose, and I
5   said no.
6       Q.   Do you recall what the employee's name was?
7       A.   No.  She didn't tell me the employee's name.
8   She never mentioned the employee's name.
9       Q.   Now, did she tell you why she was calling?
10      A.   She said she had the question posed to her by
11  a supervisor wanting to know if there was the authority
12  to grant this employee leave.  She was not sure about
13  whether there was the authority to do so, but she knew
14  as a subject matter expert for EEO that I probably had
15  knowledge of this, so she called me and asked me for my
16  input.
17      Q.   All right.  Did she indicate to you why she
18  was not sure?
19      A.   No, she didn't say.  She just asked me could
20  she do it, could the supervisor do it, was there
21  authority to do it.  She didn't give me an explanation
22  as to why.  She was unsure and she wanted to know my
23  thoughts on it.  I gave her my opinion, my legal
24  opinion.
25      Q.   Okay.  Now, did she indicate what the

Page 14

1   practice -- do you recall what part of the OGC, Office
2   of General Counsel, she was working for at the time of
3   the call?
4       A.   I think she's always been down at the
5   southwestern area, somewhere in Florida.  I'm not
6   exactly sure of what facility, but I know she was
7   working down in the southern area, the area that
8   encompasses Florida and, you know, Louisiana and those
9   states down there, I believe.
10      Q.   Did she indicate to you what position the
11  southern -- did you describe that as southern or did
12  you say "southwestern"?
13      A.   I said she was down in the southern area of
14  the United States.  The time she called me I just
15  think it was officially -- I'm not sure if it was
16  officially known as the southwestern district because
17  we did a reorganization a few years ago and they -- we
18  used to have 23 regional offices, and they did a
19  reorganization and they cut down the 23 regional
20  offices, I think, into five or six districts.  That's
21  when they started having southwest, northwest,
22  continental, and so forth.  This call occurred before,
23  if I recall, that reorganization.  So I just knew she
24  worked in one of the southern states and I thought it
25  was Florida.

Page 15

1       Q.   Okay.  Did she indicate what the OGC's
2   position had been in that area?
3       A.   No, she did not.
4       Q.   Now, you may have indicated that -- I think
5   that you indicated that one of your responsibilities
6   was being involved in seminars.  Am I wrong or did you
7   say that?
8       A.   Yes, I do training for the Agency.  That's
9   correct.
10      Q.   Training of who?
11      A.   Training of supervisors, training of
12  employees; trained people in the Office of Resolution
13  Management, who handled the processing of EEO
14  complainants.  I've trained reasonable accommodation
15  coordinators, and I've trained OGC attorneys.
16      Q.   Okay.  Did you ever train Ms. Burton?
17      A.   I don't know if Ms. Burton ever was involved
18  or attended one of my trainings or not.  I don't know
19  because I was all over the country training.  I've been
20  training probably for -- of the 33 years, probably
21  about 25 of them.  I've also trained by phone.  I've
22  also done, you know, training by phone before all of
23  this COVID stuff was happening.  I would do training
24  seminars by weConnect, so on and so forth.
25      Q.   Did you have specific training on this issue?

Page 16

1       A.   I did not.
2       Q.   Did you demonstrate --
3       A.   It never came up.  It never came up and I
4   never -- this usually came up when somebody asked me
5   about it.
6       Q.   Oh, okay.
7            Now, are there rules, to your knowledge, that
8   specifically authorize leave for federal court
9   proceedings?
10      A.   Not that I'm aware of.
11          MR. KENNETH:  Object to the form.
12          MR. MAGRI:  What's the basis of that?
13          MR. KENNETH:  I don't know.  When you say
14  "federal court proceedings," that's pretty broad.
15  Do you mean for EEO cases like this one or are you
16  talking about like a bad situation or are you
17  talking about as a witness in a private matter?
18          MR. MAGRI:  Okay.  I'll talk about EEO cases.
19          THE DEPONENT:  I know that there are
20  procedures for authorizing leave when an individual
21  is subpoenaed to testify at a federal court
22  proceeding because they have to respond to the
23  subpoena.  I'm aware that there are rules that
24  govern that.
25  BY MR. MAGRI:

4 (Pages 13 to 16)

Executive Reporting Service

Electronically signed by Heidi Fabrikant (401-362-739-5523)
Electronically signed by Heidi Fabrikant (401-362-739-5523)                                    bfb4cde4-ebeb-4fd5-9898-5fd54d809e9c

Page 17

1    Q.   And they get some form of leave?
2    A.   I believe we're required to grant them leave
3  if they're subpoenaed, yes, because we can't have them
4  defy a court subpoena.
5    Q.   Okay.  So there are instances where people do
6  get leave to appear at a court proceeding or deposition
7  if --
8    A.   I don't know about depositions.  I do know
9  about the actual trial court proceeding itself.  If
10 they are called as a witness or as the complainant, you
11 know, gets a subpoena themselves or as a person is
12 called to be a witness, I know about that.  I can't
13 speak to depositions.  I can speak to the actual court
14 proceedings themselves.
15   Q.   Okay.  So to your knowledge, a complainant
16 who received -- would notice of deposition suffice for
17 a subpoena?
18   A.   A subpoena is a subpoena and a notice of
19 deposition is a notice of deposition.
20       MR. KENNETH:  Did we lose her?
21       THE DEPONENT:  I'm here.  Did you hear me?
22 Wait a minute.  It's saying my "internet connection
23 is unstable."  Give me a minute and let it
24 stabilize.
25       Is that better?  Can you hear me?

Page 18

1        THE REPORTER:  Yes.  If you can, please
2  repeat your last answer.
3        THE DEPONENT:  What I said was that I
4  consider a notice of deposition and a subpoena to
5  be two different things.  Subpoena not failing --
6  in my mind not responding to a subpoena is defying
7  an order of the court.
8        A deposition is served on somebody to be
9  deposed, but there is not -- it doesn't carry the
10 weight of a court order that a subpoena does.
11 That's why I consider them to be different.
12   Q.   Okay.  So to your way of thinking, someone
13 who received a notice of deposition would not be
14 entitled to pay for the time they spent in that depo;
15 correct?
16   A.   Not if they were in federal district court.
17   Q.   Okay.  If someone was -- if a complainant was
18 given a notice of a court hearing, would that entitle a
19 complainant to --
20   A.   Just a notice, not a subpoena?
21   Q.   Not a subpoena.
22   A.   I don't think they would be compelled.  Well,
23 let me think about that for a minute.
24       If the notice was issued in the form of -- if
25 the person is ordered by the court to -- how I look at

Page 19

1  it is how can the individual be penalized if they don't
2  show up?  That's the dividing line that I use.  If I
3  just get a notice in the mail that I'm being asked to
4  appear in court, unless I will suffer some penalty if I
5  don't show up, then the notice in and of itself is not
6  going to be enough.
7    Q.   By "penalty" you mean --
8    A.   Held in contempt of court, jailed, or some
9  adverse consequences will come to me via the court if I
10 don't show up.
11   Q.   Okay.  And are you talking about a situation
12 where the court needs no involvement from the parties,
13 just has the authority to do it on its own?
14   A.   Or where the court issues -- if the court
15 themselves issues a subpoena for the person to serve.
16 I mean, the court can issue its own subpoena for an
17 individual to appear in court.
18   Q.   All right.  Well, I guess what I'm asking is,
19 you know, in civil discovery if people violate rules.
20 There are motions to compel that can be filed, et
21 cetera.
22   A.   Right.
23   Q.   That isn't what you're talking about, or is
24 it?
25   A.   They can, you know, file motions to compel,

Page 20

1  but if the person doesn't comply with the discovery,
2  the usual remedy is sanctions.  It doesn't -- sanctions
3  to the party for failure to comply with discovery.  It
4  doesn't result in jailing and so forth.
5        What I'm saying is that short of -- if there
6  are no consequences to the person if they fail to obey
7  the court notice to appear, then I don't believe it has
8  the same weight as a subpoena.  That's what I'm trying
9  to say.
10   Q.   Okay.  And you don't use sanctions as being
11 the type of penalty or weight that you would give a --
12   A.   Sanctions usually go to the case, not the
13 individual.  In other words, the judge will sanction
14 one of the parties by refusing to allow certain
15 evidence to be brought into the case or they will
16 require them to pay the cost of discovery or
17 depositions in order to get the information, but there
18 is no personal penalty to the individual.
19       If a person is issued a subpoena and they
20 don't show up for court, they can face personal adverse
21 consequences for not showing up pursuant to that
22 subpoena.
23   Q.   Okay.  And what rule is it that makes the
24 distinction you're drawing?
25   A.   I don't know that there is a rule.  You asked

Executive Reporting Service

Electronically signed by Heidi Fabrikant (401-362-739-5523)
Electronically signed by Heidi Fabrikant (401-362-739-5523)

bfb4cde4-ebeb-4fd5-9898-5fd54d809e9c

Page 21

1   me what I thought, so that's what I was telling you.
2       The point is if I can -- I haven't memorized
3   the federal rules.  There could very well be a federal
4   rule, but I don't know.  I don't memorize federal rules
5   because I don't really practice much in federal court.
6   I'm pretty much an administrative person --
7       Q.   Okay.
8       A.   -- other than an assistant to AUSA when
9   they're in federal court.  Because once it gets to
10  federal court, I'm there to assist.  I don't prosecute
11  the case.
12      Q.   Okay.  Now, are you aware of the fact that
13  here in Florida where Ms. Burton has worked, AA to
14  attend depositions has been given to plaintiffs for a
15  long time?
16      A.   No.  I don't have any awareness of that.
17      Q.   Are you aware that that went on for years and
18  maybe more than years -- I mean, more than a decade
19  before Ms. Burton's telephone call to you?
20      A.   I wasn't aware of that.  Other than having
21  read your pleading, which you declared that, I was
22  unaware of that until I read your pleadings.
23      Q.   Are you aware that it's going on since Ms.
24  Burton had the conversation with you?
25      A.   I don't have any firsthand knowledge of that.

Page 22

1   In fact, I don't have any knowledge of that at all,
2   period.
3       Q.   Sorry?
4       A.   I said I don't have any knowledge of that
5   firsthand or otherwise.
6       Q.   And you have -- so you would have no
7   knowledge as to why that is; correct?
8       A.   That's correct.
9       Q.   Okay.  Did Ms. Burton give you any indication
10  of what her policy or her practice had been when she
11  called?
12      A.   No.
13      Q.   Okay.
14          MR. MAGRI:  Can we take a break here for a
15  moment?
16          MR. KENNETH:  A moment or five minutes or
17  what would you like to do?
18          MR. MAGRI:  Five minutes.
19          MR. KENNETH:  Okay.  That sounds good.
20          (Brief recess)
21          MR. MAGRI:  Okay.  Just a couple follow-up
22  questions.
23  BY MR. MAGRI:
24      Q.   To the extent that you said -- let me step
25  back.

Page 23

1       How long has your work been primarily
2   administrative?
3           MR. KENNETH:  Object to the form.
4       A.   The only time my role was purely
5   administrative was during the periods that I was the
6   assistant general counsel.  When I was the assistant
7   general counsel, I did not do any hearings or trial
8   work.  I did do some EEOC appeals, but primarily my
9   role at that time as the SES head of the division was
10  administrative.  For all the rest of the time in my
11  career, I have been a trial attorney.
12      Q.   Okay.  In the -- when were you the deputy
13  assistant?
14      A.   I was deputy assistant attorney for about
15  ten years.  I stopped being -- I stepped down from the
16  SES position and took my current position approximately
17  eight years ago and I was the assistant general counsel
18  for about ten to twelve years.  I'd have to go back and
19  look at my chronology.  I don't know exactly, but
20  around ten or twelve years.
21      Q.   Okay.  Now, what did you -- when you -- now,
22  in your current position, what type of litigation do
23  you do?
24      A.   EEO, strictly all EEO litigation.
25      Q.   Where?

Page 24

1       A.   At the administrative level.  As I said, once
2   the case goes into federal district court, the AUSA
3   takes over as the Agency's representative, and I become
4   -- my role becomes that of litigation assistant to the
5   AUSA.
6       Q.   Okay.  Before I asked you whether you were
7   aware of AA being given before and after Ms. Burton's
8   phone call, and you indicated that you were not;
9   correct?
10      A.   That is correct.
11      Q.   And it is -- when you use AA, are you talking
12  about leave to go to court, federal court?
13          MR. KENNETH:  Object to the form.
14      A.   When I'm talking about leave, I'm talking
15  about when somebody needs leave to go to a proceeding
16  and the person requesting to go to federal district
17  court.  And of course during the administrative process
18  employees also ask for leave, but that's known as
19  official time and that is required by MD-110 in the
20  EEOC rules and regulations, granting of reasonable
21  amount of official time.
22      Q.   Okay.  And that's for the complainant;
23  correct?
24      A.   Yes, that's correct.
25      Q.   So in all fairness, you're not really

6  (Pages 21 to 24)

Executive Reporting Service

Page 25

1    familiar with the practices that are going on out there
2    with regard to AA and federal court?
3        MR. KENNETH:  Object to the form.
4        A.   I'm aware of them only to the extent that I
5    get questions asking if that leave can be granted.  I
6    don't know anything system-wide or region-wide.  I know
7    to the extent of the times over the past 30 years when
8    I've been called by someone -- either an OGC attorney
9    or a management official and so forth -- and asked for
10   guidance on that.  I know it to that extent, and those
11   calls come in from various facilities throughout the
12   country.
13       Q.   And I think -- do you know how many of those
14   calls you've had?
15       A.   In 30 years I have no idea.
16       Q.   Before -- I thought before you said dozens.
17       A.   I may have.  Sir, like I said, I've got
18   people calling me.  I get, you know, 10, 12, 15 phone
19   calls a day, and I don't keep track necessarily about
20   what they're about.
21       I'm sure over the past 30 years I've probably
22   had, you know, several dozen -- two or three dozen
23   phone calls about whether administrative leave had to
24   be granted.  It could have been more.  I'm just
25   guessing.

Page 26

1        Q.   How about court leave?  Do you consider court
2    leave to be different?
3        A.   Can you explain?  You would have to explain
4    --
5        Q.   What I'm asking is when you're answering, are
6    you talking to us about any leave for federal court
7    including what someone else might say as court leave?
8        A.   I am.
9        Q.   Pardon?
10       A.   I said if you're talking about any leave to
11   do anything in district court, the answer to your
12   question is yes.
13       Q.   Okay.  Now, let me show you a document.
14       MR. MAGRI:  Megan, perhaps you can pull this
15   up.  It was in the ROI.  It's page 131 of the ROI.
16       MS. CULPEPPER:  I'm going to be able to share
17   my screen, I think.  Give me one second.
18       THE DEPONENT:  Okay.  I just remember you
19   saying that you had to call in.
20       MS. CULPEPPER:  Yeah, I did.  The computer
21   I'm on doesn't have a camera.
22       THE DEPONENT:  Okay.
23       MS. CULPEPPER:  Let's see how this works.
24   I'm going to try to share my screen now.
25       MR. KENNETH:  Megan, can you tell me the page

Page 27

1    again?  I'm sorry.  I missed that.
2        MR. MAGRI:  Three zeros and a 1-3-1.
3        MR. KENNETH:  Thank you.
4        THE DEPONENT:  All right.  I see the screen.
5        MR. MAGRI:  Scroll down to court view.
6    BY MR. MAGRI:
7        Q.   Now, I don't know if on your screen you have
8    a bunch of pictures of people.
9        A.   I see it, sir.  I see the document.
10       Q.   All right.  The first sentence -- why don't
11   you read that first sentence?
12       A.   It says "Court Leave:  The regulations on
13   court leave are complex, e.g., official versus
14   unofficial witnesses or on the behalf of the witnesses
15   of the government can be an official duty pay status
16   and can be court leave (verbatim as read).
17       "Consequently, advice should be obtained from
18   the Human Resources Management Service."
19       Q.   Okay.  Does HR also give advice on AA?
20       MR. KENNETH:  Object to the form.
21       A.   As I said earlier in my testimony, I'm not an
22   HR person.  I'm sure that HR knows the regulations
23   about the various circumstances under which regular
24   leave can be granted more than I do.
25       My focus is only on the leave that can be

Page 28

1    whether AA has authorization to grant AA for the
2    purposes that I was asked the question, to go and
3    attend depositions.
4        Q.   All right.
5        A.   That's what I meant earlier when I said I'm
6    not an HR specialist, and I don't profess to be.
7        Q.   Okay.  What I'm asking you now is would it be
8    improper for HR to have an opinion about that?
9        MR. KENNETH:  Object to the form.
10       A.   I don't know.  I don't know.  I don't know if
11   it would or not.
12       Q.   Now --
13       MS. CULPEPPER:  Do you want me to stop the
14   screen share?
15       MR. MAGRI:  Yeah, you can stop that.
16       Now, there's also a -- pull up page 138, if
17   you would.
18    BY MR. MAGRI:
19       Q.   You see there where it says "other uses of
20   authorized absences"?
21       A.   I do.
22       Q.   Take a look there and see if that has to go
23   through supervisory channels and HRMS and ELR.  Do you
24   see that?
25       A.   I'm sure that some requests of administrative

7  (Pages 25 to 28)

Executive Reporting Service

Electronically signed by Heidi Fabrikant (401-362-739-5523)
Electronically signed by Heidi Fabrikant (401-362-739-5523)                                    bfb4cde4-ebeb-4fd5-9898-5fd54d809e9c

## Page 29

1    absences do have to -- I don't know if this is the one
2    we're talking about.  I'm well aware that certain
3    administrative leaves have to go through human
4    resources.
5        Q.   Okay.  Now, I'm just trying to piece together
6    why it is that administrative absences or whatever they
7    want to call it -- authorized absences or authorized
8    leave -- that's been given routinely in cases in
9    Florida, and --
10       A.   I have no firsthand knowledge of that.  You
11   say that, but I don't have any firsthand knowledge of
12   that, so --
13       Q.   Okay.  What is HRMS?
14       A.   Human Resources Management Services I think
15   it stands for.
16           MR. MAGRI:  All right.  By the way, I
17   appreciate your time here today.  Thank you.
18           MR. KENNETH:  We have no questions.  We'll
19   read.
20           (Deposition concluded at 2:55 p.m.)
21               - - -
22
23
24
25

## Page 30

1               CERTIFICATE OF OATH
2    STATE OF FLORIDA )
3    COUNTY OF PASCO  )
4
5        I, the undersigned authority, certify that
6    DEBORAH K. MCCALLUM appeared before me via
7    videoconference on Thursday, February 17, 2022, at 1:59
8    p.m. and was duly sworn.
9        WITNESS my hand and official seal this
10   11th day of March, 2022.
11
12
13
14
15
16
17
18
     _____
     Heidi Fabrikant, FPR
19
20
21
22
23
24
25

## Page 31

1           CERTIFICATE OF COURT REPORTER
2    STATE OF FLORIDA )
3    COUNTY OF PASCO  )
4
5        I, Heidi Fabrikant, Florida Professional
6    Reporter, certify that I was authorized to and did
7    stenographically report the videoconference deposition
8    of DEBORAH K. MCCALLUM; that a review of the transcript
9    was requested; and that the transcript, pages 1 through
10   29, is a true and correct record of my stenographic
11   notes.
12       I FURTHER CERTIFY that I am not a relative,
13   employee, attorney or counsel of the parties, nor am I
14   a relative or employee of any of the parties' attorneys
15   or counsel connected with the action, nor am I
16   financially interested in the action.
17
18       DATED this 11th day of March, 2022.
19
20
21   _____
     Heidi Fabrikant, FPR
22
23
24
25

## Page 32

1              E R R A T A  S H E E T
2        DO NOT WRITE ON TRANSCRIPT-ENTER CHANGES
3    IN RE:  Noris Babb v Denis McDonough, Secretary,
         Department of Veterans Affairs
4
              DEBORAH K. MCCALLUM
5         February 17, 2022
6    PAGE    LINE      READS AND SHOULD READ
7    ____   ____   _____
8    ____   ____   _____
9    ____   ____   _____
10   ____   ____   _____
11   ____   ____   _____
12   ____   ____   _____
13   ____   ____   _____
14   ____   ____   _____
15   ____   ____   _____
16   ____   ____   _____
17   ____   ____   _____
18       Under penalties of perjury, I declare that I have
19   read the foregoing document and that the facts stated
20   in it are true.
21
22   _____    _____
       Date             DEBORAH K. McCALLUM
23
24
25

8  (Pages  29  to  32)

Electronically signed by Heidi Fabrikant (401-362-739-5523)
Electronically signed by Heidi Fabrikant (401-362-739-5523)

bfb4cde4-ebeb-4fd5-9898-5fd54d809e9c

Page 33



1          Executive Reporting Service
              Ulmerton Business Center
2       13555 Automobile Blvd., Suite 130
              Clearwater, Florida  33762
3                (727)823-4155
4                March 11, 2022
5       Deborah K. McCallum
     c/o  Michael R. Kenneth, Esquire
6       U.S.A.O. Middle District of Florida
        400 North Tampa Street
7       Suite 3200
        Tampa, Florida  33602-4798

8       RE:  Noris Babb v Denis McDonough, Secretary,
        Department of Veterans Affairs
9       CASE NO.: 8:20-cv-2825-T-35CPT
10
        Dear Mr. Kenneth:
11
              The deposition of Deborah K. McCallum taken on
12      Thursday, February 17, 2021, in the above-styled case,
        is ready for review.  Please have the deponent make an
13      appointment to review the transcript in our office.
14            In the alternative, if you have ordered a copy of
        the transcript and will be handling reading and
15      signing, have the deponent note any corrections on the
        errata sheet provided.
16
              You need to respond prior to any trial or final
17      hearing date.  Please return the errata sheet to:
        Executive Reporting Service, 13555 Automobile Blvd.,
18      Suite 130, Clearwater, Florida  33762, so it may be
        included with the original transcript.
19
              Please contact our office if there are any
20      questions you may have.  Thank you for your prompt and
        careful attention to this matter.
21
                    Sincerely,
22
23
                    Executive Reporting Service
24                  production@executivereporting.com
25

9  (Page 33)

Executive Reporting Service

Electronically signed by Heidi Fabrikant (401-362-739-5523)
Electronically signed by Heidi Fabrikant (401-362-739-5523)

bfb4cde4-ebeb-4fd5-9898-5fd54d809e9c

**A**

AA 9:23 10:4,17
  21:13 24:7,11
  25:2 27:19
  28:1,1
able 26:16
above-styled
  33:12
absence 6:19
  7:12 9:14
  10:24
absences 11:5,6
  28:20 29:1,6,7
accommodation
  15:14
accommodati...
  6:1
action 31:15,16
actual 17:9,13
adduced 4:3
administrative
  6:19 7:11,21
  7:23,24 8:9,12
  8:25 9:14
  10:23 11:6
  12:10,12,16
  21:6 23:2,5,10
  24:1,17 25:23
  28:25 29:3,6
adverse 19:9
  20:20
advice 5:20 9:25
  11:14 27:17,19
advise 5:19
advisor 4:12
Affairs 1:8 32:3
  33:9
afternoon 4:9,10
agency 5:20,23
  6:3,7,8 8:23,24
  9:17 10:8 15:8
Agency's 5:24
  24:3
ago 4:25 14:17
  23:17
agree 9:13
ahead 10:13

allow 20:14
alternative
  33:14
amount 24:21
answer 7:2
  10:13 11:1,2,3
  11:16,23,24
  18:2 26:11
answering 26:5
appeals 23:8
appear 17:6
  19:4,17 20:7
APPEARAN...
  2:1
appeared 30:6
applies 11:13
appointment
  33:13
appreciate
  29:17
approves 10:10
  10:17
approximately
  4:16 23:16
area 14:7,7,13
  15:2
asked 9:5,9,20
  12:15 13:15,19
  16:4 19:3
  20:25 24:6
  25:9 28:2
asking 19:18
  25:5 26:5 28:7
assist 21:10
assistant 4:21
  5:12 21:8 23:6
  23:6,13,14,17
  24:4
associated 5:5
attend 6:20 7:13
  8:10,15,25
  12:13 21:14
  28:3
attendance 6:9
  6:11,13 11:8
attended 15:18
attention 6:5,6
  33:20

attorney 2:6,12
  4:12 5:16 9:19
  23:11,14 25:8
  31:13
attorneys 11:14
  15:15 31:14
attracted 6:5,6
AUSA 21:8 24:2
  24:5
authority 8:8,14
  8:22 9:12
  13:11,13,21
  19:13 30:5
authorization
  9:6,9,10,20
  10:2,6 12:15
  28:1
authorize 16:8
authorized 10:4
  10:22,24 11:5
  11:23 13:4
  28:20 29:7,7
  31:6
authorizing
  16:20
Automobile
  1:22 33:2,17
aware 9:2,4
  16:10,23 21:12
  21:17,20,23
  24:7 25:4 29:2
awareness 21:16

**B**

Babb 1:4 32:3
  33:8
back 10:8 22:25
  23:18
bad 16:16
basis 7:16,18
  16:12
behalf 27:14
believe 6:11
  14:9 17:2 20:7
better 17:25
beyond 10:11
Blvd 33:2,17
Boulevard 1:22

break 22:14
brief 11:21
  22:20
broad 16:14
broader 7:1
brought 20:15
bunch 27:8
Burton 12:3,8
  15:16,17 21:13
  21:24 22:9
Burton's 21:19
  24:7
Business 1:22
  33:1

**C**

c/o 33:5
call 11:15,21,21
  11:22 12:1,4
  14:3,22 21:19
  24:8 26:19
  29:7
called 7:21 9:18
  12:8,14 13:15
  14:14 17:10,12
  22:11 25:8
calling 13:9
  25:18
calls 25:11,14,19
  25:23
camera 26:21
career 23:11
careful 33:20
carry 18:9
case 1:3 7:24
  8:11 9:1 12:11
  20:12,15 21:11
  24:2 33:9,12
cases 4:24 6:4,5
  6:7 8:19 16:15
  16:18 29:8
Center 1:22
  33:1
certain 20:14
  29:2
CERTIFICA...
  30:1 31:1
Certification 3:5

3:6
certify 30:5 31:6
  31:12
cetera 19:21
CHANGES 32:2
channels 28:23
chronology
  23:19
circumstances
  27:23
civil 19:19
Clearwater 1:23
  33:2,18
combined 5:1,4
come 6:23 8:19
  9:8 19:9 25:11
comes 11:20,20
compel 19:20,25
compelled 18:22
complainant
  17:10,15 18:17
  18:19 24:22
complainants
  15:14
complaints 6:3
complex 27:13
comply 20:1,3
computer 26:20
concluded 29:20
conduct 5:22
Congress 6:5
connected 31:15
connection
  17:22
consequences
  19:9 20:6,21
Consequently
  27:17
consider 18:4,11
  26:1
considered 5:24
contact 33:19
contempt 19:8
continental
  14:22
conversation
  12:7,19,20
  21:24

coordinators
  15:15
copy 33:14
correct 7:14
  10:7 15:9
  18:15 22:7,8
  24:9,10,23,24
  31:10
corrections
  33:15
cost 20:16
counsel 4:21,22
  5:12,14 14:2
  23:6,7,17
  31:13,15
country 15:19
  25:12
COUNTY 30:3
  31:3
couple 22:21
course 24:17
court 1:1 6:20
  7:13,25 8:11
  9:1,15 12:11
  16:8,14,21
  17:4,6,9,13
  18:7,10,16,18
  18:25 19:4,8,9
  19:12,14,14,16
  19:17 20:7,20
  21:5,9,10 24:2
  24:12,12,17
  25:2 26:1,1,6,7
  26:11 27:5,12
  27:13,16 31:1
COVID 15:23
Culpepper 2:20
  26:16,20,23
  28:13
current 5:18,19
  23:16,22
currently 4:11
cut 14:19

— D —
D 1:11 2:3
date 1:12 32:22
  33:17

DATED 31:18
day 25:19 30:10
  31:18
deal 11:10
Dear 33:10
Deborah 1:7 3:2
  4:2 30:6 31:8
  32:4,22 33:5
  33:11
decade 21:18
declare 32:18
declared 21:21
defend 6:6
Defendant 1:9
  2:12
DEFENDAN...
  3:14
defending 8:19
defense 6:2
defy 17:4
defying 18:6
demonstrate
  16:2
Denis 1:7 32:3
  33:8
Department 1:8
  32:3 33:9
depo 18:14
deponent 4:3,6
  16:19 17:21
  18:3 26:18,22
  27:4 33:12,15
deposed 18:9
deposition 1:6
  3:2 12:13,13
  17:6,16,19,19
  18:4,8,13
  29:20 31:7
  33:11
depositions 6:20
  7:13 8:10,25
  12:14 17:8,13
  20:17 21:14
  28:3
deputy 5:12,13
  23:12,14
describe 14:11
Description 3:11

3:15
different 18:5
  18:11 26:2
Direct 3:4 4:7
director 10:21
disability 5:25
discovery 19:19
  20:1,3,16
distinction
  20:24
district 1:1,1 2:9
  7:25 8:11 9:1
  12:11 14:5,16
  18:16 24:2,16
  26:11 33:6
districts 14:20
dividing 19:2
division 1:2 23:9
document 26:13
  27:9 32:19
doing 11:7,25
dozen 25:22,22
dozens 12:1,1
  25:16
drawing 20:24
duly 4:4 30:8
duty 27:15

— E —
E 32:1,1,1
e.g 27:13
earlier 27:21
  28:5
EEO 4:12,24,25
  5:21,22 6:2
  13:14 15:13
  16:15,18 23:24
  23:24
EEOC 5:3 23:8
  24:20
eight 5:14 23:17
either 25:8
ELR 28:23
employee 8:9,14
  8:24 12:9,12
  12:16,22,23
  13:1,1,2,12
  31:13,14

employee's 13:6
  13:7,8
employees 6:20
  7:12 9:14
  15:12 24:18
encompasses
  14:8
enters 9:1
entitle 18:18
entitled 18:14
errata 3:7 33:15
  33:17
Esquire 1:11 2:3
  2:9 33:5
et 19:20
evidence 20:15
exactly 14:6
  23:19
Examination
  3:4 4:7
Executive 1:21
  33:1,17,23
Exhibits 3:10,12
  3:14,16
expert 5:25
  13:14
explain 26:3,3
explanation
  13:21
extent 22:24
  25:4,7,10

— F —
Fabrikant 1:21
  30:18 31:5,21
face 20:20
facilities 9:22
  25:11
facility 10:21
  12:24 14:6
fact 21:12 22:1
facts 32:19
fail 20:6
failing 18:5
failure 20:3
fairness 24:25
familiar 25:1
familiarity 7:20

far 6:14
February 1:12
  30:7 32:5
  33:12
federal 6:19,20
  7:12,13,25
  8:11,23 9:1,15
  12:11 16:8,14
  16:21 18:16
  21:3,3,4,5,9,10
  24:2,12,16
  25:2 26:6
file 19:25
filed 19:20
final 33:16
financially
  31:16
find 8:22
finish 10:16
finished 10:15
first 4:3 12:10
  27:10,11
first-level 10:19
firsthand 9:24
  9:25 21:25
  22:5 29:10,11
five 12:21 14:20
  22:16,18
Florida 1:1,23
  2:5,9,11 14:5,8
  14:25 21:13
  29:9 30:2 31:2
  31:5 33:2,6,7
  33:18
focus 27:25
follow 11:7
follow-up 22:21
follows 4:5
foregoing 32:19
form 8:3 10:11
  16:11 17:1
  18:24 23:3
  24:13 25:3
  27:20 28:9
forth 14:22
  15:24 20:4
  25:9
found 9:10,11

9:11
**FPR** 1:21 30:18
  31:21
**function** 11:11
**FURTHER**
  31:12

**G**

**general** 4:21,22
  5:12,14 6:12
  14:2 23:6,7,17
**give** 11:14 13:21
  17:23 20:11
  22:9 26:17
  27:19
**given** 10:1,1,4
  18:18 21:14
  24:7 29:8
**go** 9:15 10:13
  20:12 23:18
  24:12,15,16
  28:2,22 29:3
**goes** 9:17,22
  24:2
**going** 7:6 19:6
  21:23 25:1
  26:16,24
**good** 4:9,10
  22:19
**govern** 16:24
**government**
  27:15
**grant** 8:13,14,24
  9:9,12,20,23
  10:22 11:5
  12:15 13:4,12
  17:2 28:1
**granted** 9:14
  25:5,24 27:24
**granting** 6:18
  7:11,23 8:9
  24:20
**grievances** 5:2
**group** 4:21,23
  4:24,24 5:2,3,4
  5:4,6,7,9
**groups** 5:1
**guess** 19:18

**guessing** 25:25
**guidance** 5:20
  6:1 25:10

**H**

**H** 32:1
**hand** 30:9
**handle** 6:2
**handled** 4:24
  6:14 15:13
**handling** 33:14
**happening**
  15:23
**head** 23:9
**hear** 17:21,25
**hearing** 18:18
  33:17
**hearings** 23:7
**Heidi** 1:21 30:18
  31:5,21
**Held** 19:8
**HR** 6:11 11:11
  11:11,12 27:19
  27:22,22 28:6
  28:8
**HRMS** 28:23
  29:13
**human** 6:11
  27:18 29:3,14

**I**

**idea** 25:15
**identify** 11:18
**imagine** 11:9
**improper** 28:8
**included** 33:18
**including** 26:7
**INDEX** 3:1
**indicate** 13:17
  13:25 14:10
  15:1
**indicated** 8:21
  15:4,5 24:8
**indication** 22:9
**individual** 16:20
  19:1,17 20:13
  20:18
**information**

20:17
**input** 13:16
**instances** 17:5
**interested** 31:16
**internet** 17:22
**involve** 6:3
**involved** 11:12
  15:6,17
**involvement**
  19:12
**involving** 5:21
**issue** 6:12,23 9:7
  15:25 19:16
**issued** 18:24
  20:19
**issues** 19:14,15

**J**

**jailed** 19:8
**jailing** 20:4
**jmagri@merk...**
  2:6
**Joseph** 1:11 2:3
**judge** 20:13

**K**

**K** 1:7 3:2 4:2
  30:6 31:8 32:4
  32:22 33:5,11
**keep** 11:24 12:2
  25:19
**Kenneth** 2:9 3:4
  6:22 8:3 10:11
  16:11,13 17:20
  22:16,19 23:3
  24:13 25:3
  26:25 27:3,20
  28:9 29:18
  33:5,10
**knew** 13:13
  14:23
**know** 6:14 8:8
  9:16,17,21,22
  10:10,17,18,21
  10:25 11:9
  12:22 13:3,11
  13:22 14:6,8
  15:17,18,22

16:13,19 17:8
  17:8,11,12
  19:19,25 20:25
  21:4 23:19
  25:6,6,10,13
  25:18,22 27:7
  28:10,10,10
  29:1
**knowledge** 6:17
  7:10,16,18 8:8
  8:16,17,18
  9:24,25 11:13
  11:18 13:15
  16:7 17:15
  21:25 22:1,4,7
  29:10,11
**known** 5:4 14:16
  24:18
**knows** 27:22

**L**

**lane** 11:10
**law** 5:4,5,7,9,25
  10:6
**leader** 5:8
**leave** 7:6,23 8:9
  8:25 9:10,12
  9:21,23 10:10
  10:17,23 11:8
  12:10,12,16
  13:3,4,12 16:8
  16:20 17:1,2,6
  24:12,14,15,18
  25:5,23 26:1,2
  26:6,7,10
  27:12,13,16,24
  27:25 29:8
**leaves** 29:3
**legal** 5:20 13:23
**Let's** 26:23
**Letter** 3:8
**level** 6:4,4 7:21
  8:12 24:1
**line** 19:2 32:6
**litigation** 23:22
  23:24 24:4
**litigator** 7:19
**long** 4:14 5:10

5:10 21:15
  23:1
**look** 9:6 18:25
  23:19 28:22
**looked** 9:4
**lose** 17:20
**Louisiana** 14:8

**M**

**ma'am** 4:6
**Magri** 1:11 2:3,3
  4:8 6:23 7:4
  16:12,18,25
  22:14,18,21,23
  26:14 27:2,5,6
  28:15,18 29:16
**mail** 19:3
**management**
  9:19 15:13
  25:9 27:18
  29:14
**managers** 9:23
  11:15
**March** 30:10
  31:18 33:4
**Mariner** 2:4
**matter** 5:25 8:20
  13:14 16:17
  33:20
**matters** 5:21
  11:11,12
**McCALLUM**
  1:7 3:2 4:2 7:1
  10:14 30:6
  31:8 32:4,22
  33:5,11
**McDonough** 1:7
  32:3 33:8
**MD-110** 24:19
**mean** 6:12 16:15
  19:7,16 21:18
**meant** 28:5
**media** 6:6
**Megan** 2:20
  26:14,25
**member** 5:7
**memorize** 21:4
**memorized** 21:2

mentioned 13:8
Merkle 2:3
Meythaler 2:3
Michael 2:9
    33:5
michael.kenne...
    2:12
Middle 1:1 2:9
    33:6
mind 18:6
minute 10:8
    17:22,23 18:23
minutes 12:21
    22:16,18
missed 27:1
moment 22:15
    22:16
motions 19:20
    19:25
MSPB 5:2

**N**
name 12:3,25
    13:6,7,8
names 11:24
    12:2
necessarily
    25:19
need 33:16
needs 19:12
    24:15
never 9:4,10
    13:8 16:3,3,4
Noris 1:4 32:3
    33:8
North 2:10 33:6
northwest 14:21
note 33:15
notes 31:11
notice 17:16,18
    17:19 18:4,13
    18:18,20,24
    19:3,5 20:7
number 3:11,15
    9:7

**O**
oath 3:5 4:4 30:1

obey 20:6
Object 8:3 10:11
    16:11 23:3
    24:13 25:3
    27:20 28:9
objected 6:24
Objection 6:22
obligations 7:20
obtained 27:17
occurred 14:22
office 4:22 14:1
    15:12 33:13,19
offices 14:18,20
official 6:19
    7:12,21 8:13
    8:15 9:19
    24:19,21 25:9
    27:13,15 30:9
officially 14:15
    14:16
officials 5:20 6:3
OGC 4:12,25
    9:19 11:14
    14:1 15:15
    25:8
OGC's 15:1
Oh 16:6
okay 4:9,14,18
    5:17 6:8,15 7:5
    7:16 9:2,13
    10:3,9,24 11:4
    11:13,18 12:6
    13:25 15:1,16
    16:6,18 17:5
    17:15 18:12,17
    19:11 20:10,23
    21:7,12 22:9
    22:13,19,21
    23:12,21 24:6
    24:22 26:13,18
    26:22 27:19
    28:7 29:5,13
once 7:23 8:10
    8:25 21:9 24:1
opinion 13:23
    13:24 28:8
order 12:12 18:7
    18:10 20:17

ordered 18:25
    33:14
original 33:18
overall 6:10

**P**
p.m 1:13,13
    29:20 30:8
PA 2:3
page 3:11,15
    26:15,25 28:16
    32:6
pages 31:9
Pardon 26:9
part 14:1
parties 19:12
    20:14 31:13
parties' 31:14
parts 12:19
party 20:3
PASCO 30:3
    31:3
pay 18:14 20:16
    27:15
penalized 19:1
penalties 32:18
penalty 19:4,7
    20:11,18
people 11:5 12:1
    12:14 15:12
    17:5 19:19
    25:18 27:8
period 22:2
periods 23:5
perjury 32:18
person 10:18,22
    12:3 17:11
    18:25 19:15
    20:1,6,19 21:6
    24:16 27:22
personal 8:8,16
    8:17,18 20:18
    20:20
Personnel 5:4,5
    5:7,8
phase 7:24
phone 11:21,21
    15:21,22 24:8

25:18,23
pictures 27:8
piece 29:5
PLACE 1:14
Plaintiff 1:5 2:6
PLAINTIFF'S
    3:10
plaintiffs 21:14
pleading 21:21
pleadings 21:22
please 18:1
    33:12,17,19
point 8:1,5,7
    21:2
policies 6:17
    7:10 11:6
policy 22:10
portion 6:24 7:6
posed 13:10
position 4:11,15
    4:16,18 5:18
    14:10 15:2
    23:16,16,22
positions 5:11
practice 14:1
    21:5 22:10
practices 25:1
Present 2:19
pretty 16:14
    21:6
primarily 23:1,8
prior 4:20 33:16
private 16:17
probably 5:14
    13:14 15:20,20
    25:21
procedures
    16:20
proceeding
    16:22 17:6,9
    24:15
proceedings
    6:21 7:13,25
    16:9,14 17:14
process 24:17
processing
    15:13
production@e...

33:24
profess 28:6
Professional
    4:21 31:5
prohibit 9:3,5
prohibition 9:11
prompt 33:20
prosecute 21:10
provide 5:19,22
    6:1 7:20
provided 33:15
pull 26:14 28:16
purely 23:4
purpose 13:4
purposes 9:8
    12:16 28:2
pursuant 20:21
put 7:3

**Q**
question 6:12
    7:2 9:6 10:13
    10:15,16 11:16
    11:23,24 13:10
    26:12 28:2
questioned 4:5
questions 22:22
    25:5 29:18
    33:20

**R**
R 2:9 32:1,1
    33:5
read 3:8 7:6
    21:21,22 27:11
    27:16 29:19
    32:6,19
reading 33:14
READS 32:6
ready 33:12
really 21:5
    24:25
reasonable 5:25
    15:14 24:20
recall 11:19 12:6
    13:6 14:1,23
received 17:16
    18:13

recess 22:20
record 7:3 31:10
refusing 20:14
regard 25:2
regarding 6:9
region-wide 25:6
regional 14:18 14:19
regular 27:23
regulations 6:13 6:18 7:10 24:20 27:12,22
relating 6:18 7:11
relative 31:12 31:14
remedy 20:2
remember 12:18 26:18
REMOTE 2:1
reorganization 5:1 14:17,19 14:23
repeat 18:2
report 31:7
Reporter 3:6 18:1 31:1,6
Reporting 1:21 33:1,17,23
representative 24:3
requested 12:9 31:9
requesting 24:16
requests 7:19 28:25
require 20:16
required 17:2 24:19
requires 8:12,23 8:24
research 7:22 8:21
researched 9:7
Resolution 15:12

resources 6:11 27:18 29:4,14
respond 16:22 33:16
responding 18:6
response 9:21 12:17
responsibilities 15:5
rest 5:15 23:10
result 20:4
return 33:17
review 31:8 33:12,13
right 5:17 6:15 13:17 19:18,22 27:4,10 28:4 29:16
ROI 26:15,15
role 5:17,19 23:4 23:9 24:4
routinely 29:8
rule 6:16 7:9 8:1 8:5,7 20:23,25 21:4
rules 6:8,13,18 7:11,23 8:23 9:2,5 11:6 16:7 16:23 19:19 21:3,4 24:20

_____
**S**
S 32:1
sanction 20:13
sanctions 20:2,2 20:10,12
saying 10:3,5 17:22 20:5 26:19
says 8:1,5 27:12 28:19
scope 10:12
screen 26:17,24 27:4,7 28:14
Scroll 27:5
seal 30:9
second 26:17
second-level

10:20
Secretary 1:8 4:13 5:21 32:3 33:8
see 26:23 27:4,9 27:9 28:19,22 28:24
seminars 15:6 15:24
senior 4:12 5:8
sentence 27:10 27:11
serve 19:15
served 18:8
Service 1:21 27:18 33:1,17 33:23
Services 29:14
SES 4:20 23:9 23:16
seven 4:16,25 5:14
share 26:16,24 28:14
sheet 3:7 33:15 33:17
short 20:5
show 19:2,5,10 20:20 26:13
showing 20:21
Sign 3:8
signing 33:15
Sincerely 33:21
sir 4:10 5:8 7:8 7:15 9:16 11:3 11:20 25:17 27:9
situation 16:16 19:11
situations 10:1
six 14:20
skip 10:8
SL 5:8
somebody 16:4 18:8 24:15
sorry 22:3 27:1
sounds 22:19
southern 14:7

14:11,11,13,24
southwest 14:21
southwestern 14:5,12,16
speak 17:13,13
specialist 28:6
specific 6:17,25 7:10 8:7 10:18 10:22 15:25
specifically 16:8
spent 18:14
spoke 12:18
stabilize 17:24
staff 4:21 5:1,2 5:15
stands 29:15
started 14:21
STATE 30:2 31:2
stated 32:19
states 1:1 14:9 14:14,24
status 27:15
stenographic 31:10
stenographica... 31:7
step 22:24
stepped 23:15
stop 28:13,15
stopped 23:15
Street 2:4,10 33:6
strictly 23:24
stuff 15:23
subject 5:24 7:17,18 8:20 13:14
subpoena 16:23 17:4,11,17,18 17:18 14:4,5,6 18:10,20,21 19:15,16 20:8 20:19,22
subpoenaed 16:21 17:3
suffer 19:4
suffice 17:16

Suite 1:23 2:4,10 33:2,7,18
supervisor 10:19,20 13:11 13:20
supervisors 9:23 11:15 15:11
supervisory 28:23
supposed 11:7
sure 11:25 13:12 13:18 14:6,15 25:21 27:22 28:25
sworn 4:4 30:8
system-wide 25:6

_____
**T**
T 32:1,1
take 13:3 22:14 28:22
taken 1:11 33:11
takes 24:3
talk 16:18
talking 6:10 16:16,17 19:11 19:23 24:11,14 24:14 26:6,10 29:2
Tampa 1:2 2:5 2:10,11 12:24 33:6,7
TB 12:3
telephone 21:19
tell 9:18 12:6,21 12:25 13:1,7,9 26:25
telling 21:1
ten 23:15,18,20
terms 8:15
testified 4:5
testify 16:21
testimony 27:21
Thank 27:3 29:17 33:20
things 8:15 18:5
think 4:17 5:13

6:12 14:4,15
  14:20 15:4
  18:22,23 25:13
  26:17 29:14
**thinking** 18:12
**thought** 14:24
  21:1 25:16
**thoughts** 13:23
**three** 25:22 27:2
**Thursday** 1:12
  30:7 33:12
**time** 1:13 5:15
  6:9,10,13,19
  6:23 7:12,22
  8:13,14,15
  9:18 11:7 14:2
  14:14 18:14
  21:15 23:4,9
  23:10 24:19,21
  29:17
**times** 9:7 25:7
**today** 29:17
**told** 12:8,10,23
  12:24
**track** 11:24 12:2
  25:19
**train** 15:16
**trained** 15:12,14
  15:15,21
**training** 4:25
  5:22 6:1 15:8
  15:10,11,11,19
  15:20,22,23,25
**trainings** 15:18
**transcript** 31:8
  31:9 33:13,14
  33:18
**TRANSCRIP...**
  32:2
**trial** 17:9 23:7
  23:11 33:16
**true** 31:10 32:20
**try** 26:24
**trying** 8:18 20:8
  29:5
**twelve** 23:18,20
**two** 5:1 18:5
  25:22

**type** 20:11 23:22

---
**U**

**U.S.A.O** 2:9
  33:6
**Ulmerton** 1:22
  33:1
**unable** 8:22
**unaware** 21:22
**undersigned**
  30:5
**understand** 7:5
**understanding**
  7:22 10:5
**underwent** 4:25
**United** 1:1 14:14
**unofficial** 27:14
**unstable** 17:23
**unsure** 13:22
**use** 19:2 20:10
  24:11
**uses** 28:19
**usual** 20:2
**usually** 11:20
  16:4 20:12

---
**V**

**v** 1:6 32:3 33:8
**VA** 4:11 5:16
  6:9
**various** 5:11
  25:11 27:23
**verbatim** 27:16
**versus** 27:13
**Veterans** 1:8
  32:3 33:9
**videoconference**
  1:14 4:4 30:7
  31:7
**view** 27:5
**violate** 19:19
**VISN** 6:17,24,25
  7:6

---
**W**

**Wait** 17:22
**waiting** 10:16
**want** 28:13 29:7

**wanted** 7:2 12:9
  12:12 13:3,3
  13:22
**wanting** 13:11
**wasn't** 5:3 21:20
**way** 18:12 29:16
**We'll** 29:18
**we're** 17:2 29:2
**we've** 6:24
**weConnect**
  15:24
**weight** 18:10
  20:8,11
**went** 21:17
**witness** 6:16 7:9
  16:17 17:10,12
  30:9
**witnesses** 27:14
  27:14
**words** 20:13
**work** 23:1,8
**worked** 14:24
  21:13
**working** 14:2,7
**works** 26:23
**WRITE** 32:2
**wrong** 15:6

---
**X**

**X** 1:4,10

---
**Y**

**Yeah** 26:20
  28:15
**year** 5:16
**years** 4:16,25
  5:13,15 11:25
  14:17 15:20
  21:17,18 23:15
  23:17,18,20
  25:7,15,21

---
**Z**

**zeros** 27:2

---
**0**

---
**1**

**1** 31:9

**1-3-1** 27:2
**1:59** 1:13 30:7
**10** 25:18
**11** 33:4
**11th** 30:10 31:18
**12** 25:18
**130** 1:23 33:2,18
**131** 26:15
**13555** 1:22 33:2
  33:17
**138** 28:16
**15** 5:13 6:3,4
  25:18
**17** 1:12 30:7
  32:5

---
**2**

**2:55** 1:13 29:20
**2021** 33:12
**2022** 1:12 30:7
  30:10 31:18
  32:5 33:4
**23** 14:18,19
**25** 15:21 33:12
**29** 31:10

---
**3**

**3** 5:2
**30** 3:5 11:25
  25:7,15,21
**30(b)(6)** 6:16 7:9
**31** 3:6
**32** 3:7
**3200** 2:10 33:7
**33** 3:8 15:20
**33602-4798** 2:11
  33:7
**33609-3452** 2:5
**33762** 1:23 33:2
  33:18
**33rd** 5:16

---
**4**

**4** 3:4 4:22,23,24
  5:3
**400** 2:4,10 33:6

---
**5**

**5601** 2:4

---
**6**

---
**7**

**727)823-4155**
  33:3

---
**8**

**8** 6:17,24,25 7:6
**8:20-cv-2825-...**
  1:3 33:9
**813-274-6000**
  2:11
**813-281-9000**
  2:5

---
**9**

# EXHIBIT C

COMPLAINT CASE NUMBER: 200I-0516-2016102804

OMB NO. 2900-0716
RESPONDENT BURDEN: 30 Min.

| **VA** Department of Veterans Affairs | **COMPLAINT OF EMPLOYMENT DISCRIMINATION** |

*Read the instructions on the reverse side of this form carefully before completing the front of this form.*

| 1. NAME *(Last, first, middle initial)(Please print)* | 3. MAILING ADDRESS | 4a. WORK TELEPHONE NUMBER *(Include Area Code)* |
|---|---|---|
| Babb, Noris D. | ███████████ | (727) 398-6661 |
| 2. EMAIL ADDRESS | | 4b. HOME TELEPHONE NUMBER *(Include Area Code)* |
| | | ███████████ |

| 5. ARE YOU: | 6a. JOB TITLE, SERIES AND GRADE | 7. NAME AND ADDRESS OF VA FACILITY WHERE DISCRIMINATION OCCURRED |
|---|---|---|
| [X] A VA EMPLOYEE | Pharmacist, GS-13 | VA Medical Center |
| [ ] AN APPLICANT FOR EMPLOYMENT | 6b. SERVICE/SECTION/PRODUCT LINE | Applied Health Svcs Pharmacy Service |
| [ ] A FORMER VA EMPLOYEE | Pharmacy | Bay Pines, FL |

NOTE: For each employment related matter that you believe was discriminatory you must list the bases *(list one or more of the following)*: Race *(Specify)*, Color *(Specify)*, Religion *(Specify)*, Sex *(Male or Female)*, National Origin *(Specify)*, Age *(Provide date of birth)*, Disability *(Specify)*, Genetic Information, and Reprisal for prior EEO activity or having opposed discrimination.

| 8. BASIS | 9. CLAIM(S) *(What employment related claim(s) - personnel action(s), incident(s), or event(s) caused you to file this complaint? Briefly describe what happened below. Use an additional sheet of paper if necessary. You should not include information that violates the Privacy Act of 1974 and the Health Insurance Portability and Accountability Act (HIPAA). Some examples are patient medical records, personal records of other VA-employees, etc.)* | 10. DATE OF OCCURRENCE *(Include the most recent date(s)* |
|---|---|---|
| Reprisal | Time and Attendance: Dr. Babb had to use Annual Leave to attend depositions of Management Officials in her civil court case. | Feb. 16, 2016 Feb. 18, 2016 Feb. 19, 2016 |
| | Dr. Babb received an email from Carolyn Combs, Pharmacy Supervisor of Clinical Services disallowing her use of Official EEO time to attend during management's depositions. | Feb. 5, 2016 |

RECEIVED
APR 29 2016
By ORM-SED

| 11. REMEDIES SOUGHT *(Use an additional sheet of paper if necessary.)* |
|---|
| Corrective action, emotional distress, attorney's fees. |

| 12a. DO YOU HAVE A REPRESENTATIVE? | 12c. PROVIDE THE NAME AND ADDRESS OF YOUR REPRESENTATIVE | 12d. TELEPHONE NUMBER *(Include Area Code)* |
|---|---|---|
| [X] YES [ ] NO | Joseph D. Magri | (813) 281-9000 |
| 12b. IF "YES," IS HE OR SHE AN ATTORNEY? | Merkle Magri & Meythaler, P.A. | 12e. EMAIL ADDRESS |
| [X] YES [ ] NO | 5601 Mariner St., Suite 400, Tampa, FL 33609 | jmagri@merklemagri.com |

| 13a. HAVE YOU CONTACTED AN EEO COUNSELOR? | 13b. NAME OF EEO COUNSELOR | 13c. DATE OF INITIAL CONTACT WITH ORM |
|---|---|---|
| [X] YES [ ] NO | Joyce Simon | March 22, 2016 |

14. If you contacted an EEO Counselor more than 45 calendar days after the Date(s) of Occurrence, listed in item 10, or if this complaint is filed more than 15 calendar days after receipt of a Notice of Right to File a Discrimination Complaint, you must explain why you were untimely in seeking EEO counseling or untimely in filing a complaint. *(Use an additional sheet of paper, if necessary.)*

| 15a. HAVE YOU FILED A UNION GRIEVANCE ON ANY CLAIM(S) LISTED ABOVE? | 15b. IF "YES," LIST THE CLAIM(S) AND DATE GRIEVANCE FILED | 16a. HAVE YOU FILED AN APPEAL WITH THE MERIT SYSTEM PROTECTION BOARD (MSPB) ON ANY OF THE CLAIMS LISTED ABOVE? | 16b. IF "YES," LIST THE ISSUE(S) AND DATE MSPB APPEAL FILED. |
|---|---|---|---|
| [ ] YES [X] NO | n/a | [ ] YES [X] NO | n/a |

| 17a. HAVE YOU FILED THIS COMPLAINT WITH ANYONE ELSE? | 17b. IF "YES," PROVIDE THE NAME AND ADDRESS | | |
|---|---|---|---|
| [ ] YES [X] NO | n/a | | |

| 18. SIGNATURE OF COMPLAINANT *(Do not print)* | 19. DATE |
|---|---|
| *Noris Babb* | 4-25-16 |

VA FORM AUG 2012 **4939**

SUPERSEDES VA FORM 4939, JAN 2012, WHICH SHOULD NOT BE USED.

# EXHIBIT D

Case No. 200I-0516-2016102804

I, Noris Babb, solemnly swear/affirm that the information given in response to the following questions is true and complete to the best of my knowledge and belief.

Signature: _____

Date: _____1- 13 - 17_____

The complaint above outlines the **specific basis or bases** that you have identified as the subject of discrimination in your complaint.  Please provide identifying information for the applicable basis or bases underlined above in your complaint: 1

If reprisal for prior EEO activity is a basis, identify the specific prior EEO activity that you believe is the subject of reprisal, if reprisal is a basis in your accepted complaint:

In April and May 2012 I gave statements supporting Drs. Anita Truitt and Donna Trask who had filed EEOs in Agency No. 200I-0516-2011104650 and  Agency No. 200I-0516-2011104649.  My EEO activity in Trask and Truitt's cases included: participating in their administrative case by providing 3 statements in April and May2012; being listed as a witness in December 2012 interrogatory answers provided to the VA attorneys who also handle my case; discussing my opposition to discrimination with Justice in February 2013; and by providing deposition testimony in their Federal Court case in March 2014. I was discriminated and retaliated against and my EEO activity also included filing informal and formal complaints in my own case, Agency No.: 200I-0516-2013102948, EEOC No.: 510-2014-00116X, testifying in those cases, conducting discovery and mediating the case; filing a federal complaint and participation in that case, Case No.: 8:14-cv-1732-T-33TBM.  I sought AA to attend depositions of responsible management officials in my case in February 2016.  That was denied.

   1.  What is your position, work location and unit?

       I was the PACT pharmacist in MODs B and D at that time.

---

1 Please refer to the acceptance letter issued by ORM in regard to the complaint.

Initials: _NB_   1

Case No. 200I-0516-2016102804

2. Who is the management official responsible for not approving your administrative leave?

Carolyn Combs, Pharmacy Supervisor of Clinical Services.  Per normal practice she would have sought guidance from upper management.

   a.  Please describe your working relationship with this individual.

   Professional

   b.  How and when did this person become aware of the protected bases that you outlined above?

When I first became a witness to Truitt/Trask date unknown to me, most likely Spring of 2012, but it could have also been at other points in the time discussed above.  However, it is also clear she knew I requested AA to attend depositions in my own EEO case.

3. What specific justification did you provide for requesting the administrative leave?

I was going to hear testimony from management officials in my EEO case

4. Why was the denial of your request for administrative leave acceptable to you?

It was not acceptable because I have the right to hear testimony against me. Why would the government deny me the time from work for me to hear this?

5. How and when did you become aware that your request had been denied?

Prior to the testimonies, February 5, 2016.  I then decided to take annual leave since it was important to me to hear what was being said and discuss with my counsel

6. What justification was provided for the denial?

Management said it was not mandatory for them to grant approved absence

7. Did management cite a policy or procedure that was used to determine it was acceptable to deny your request?

Initials: _NB_  2

**000096**

Case No. 200I-0516-2016102804

Not to my knowledge

8. Why was the denial unacceptable to you?

Again, I believe hearing testimony in my EEO case, especially by the management officials was a right.  The EEOC has agreed with that in Office of Federal Operations Appeal No. 0120162480 stating: "Accordingly, we view this case like any other where a Complainant alleges reprisal regarding the denial of being in pay status or denial of requested leave.  In this case we find that this would reasonably likely deter EEO activity."

9. Did you discuss the denial with any management officials or with Human Resources?  If so,

   a. Who? Carolyn Combs, my immediate supervisor

   b. What was discussed?  I told her I didn't think this was fair.  She told me there was no policy to approve it.

   c. What was their response and the outcome of the discussion?

      I was not given authorized absence and instead was told I had to use annual leave for the depositions.

10. Are you aware of a coworker who requested and received administrative leave? Yes. If so,

   a. Identify the individual (name, title)  All the management officials received AA to attend the depositions.  It is my understanding that for many years employees who filed EEOs in federal court were granted AA to attend depositions in their cases and trial. My attorney was advised that Regional Counsel was involved in the decision in this case.  The Regional Counsel handling my case was T. B. Burton.

   b. Please identify this by their protected basis(es) as outlined above in your complaint.

Initials: _NB_   3

**000097**

Case No. 200I-0516-2016102804

The management officials were not bringing an EEO complaint. They were helping management fight mine. Conversely, the employees who received AA in past years before this policy was stopped, were engaged in EEO activities, as was I.

c. Explain how this individual was treated more favorably than you.
They all received AA.

11. Why do you believe that you were discriminated against because of the protected bases that you outlined above when you were denied administrative leave?

Management did not want me to hear what they had to say against me in their depositions. It is my right to witness what is said about me and to be able to discuss possible immediate questions with my counsel. By denying AA they were also putting a price on my ability to attend these depositions and participate in EEO activity. By making it more costly for me they hoped to deter myself and other employees from engaging in EEO activity.

The above information has furnished without a pledge of confidence and I understand that it may be shown to the interested parties of this complaint.

This statement is made under penalty of perjury, this _13th_ day of _Jan_, 2017.

_____
(Affiant's signature)

Initials: _NB_  4

**000098**

# EXHIBIT E





```
bayvista - Reflection for UNIX and OpenVMS

File   Edit   Connection   Setup   Macro   Window   Help

 BABB,NORIS D                    T&L 022   Telework Ind: Z

       Date      TW  Scheduled Tour        Tour Exceptions
      ------------------------------------------------------------
 Sun 21-Feb-16       Day Off
 Mon 22-Feb-16       Day Off
 Tue 23-Feb-16       07:00A-04:30P
 Wed 24-Feb-16       07:00A-04:30P
 Thu 25-Feb-16       07:00A-04:30P       07:00A-04:30P    SL SICK LV
         called
 Fri 26-Feb-16       07:00A-04:30P       07:00A-04:30P    AA AUTH ABS
                                          AA Granted by Supr.
         Deposition for EEO
 Sat 27-Feb-16       08:00A-NOON        08:00A-NOON      AL ANNUAL LV
 Sun 28-Feb-16       Day Off
 Mon 29-Feb-16       Day Off
 Tue  1-Mar-16       07:00A-04:30P
 Wed  2-Mar-16       07:00A-04:30P
 Thu  3-Mar-16       07:00A-04:30P
 Fri  4-Mar-16       07:00A-04:30P       07:00A-04:30P    AL ANNUAL LV
 Sat  5-Mar-16       08:00A-NOON        08:00A-NOON      AL ANNUAL LV


Select EMPLOYEE:

 414, 18        VT500-7 -- vista.bay-pines.med.va.gov via SECURE SHELL          00:02:57   Num
```

# EXHIBIT F

From: Combs, Carolyn C.
Sent: Wednesday, February 03, 2016 3:22 PM
To: Babb, Noris
Subject: RE: depositions

Noris,

Thanks for keeping me in the loop! I will submit grid closure requests for 2/16, 2/18, and 2/19 now so that we can begin rescheduling patients.

Thanks,

Carolyn Combs, PharmD, MBA
Pharmacy Supervisor, Clinical Services
Bay Pines VA Healthcare System
10,000 Bay Pines Blvd.
Bay Pines, FL 33744
Phone: (727)398-6661 ext. 10734
Pager: (727)257-0376
Email: carolyn.combs@va.gov


-----Original Message-----
From: Babb, Noris
Sent: Wednesday, February 03, 2016 3:18 PM
To: Combs, Carolyn C.
Subject: RE: depositions

Tentatively 2/26.  They have to get back to me. I'm going to work on getting pts rescheduled for the other dates and wait on the 26th until its confirmed.

If I get off early from these, I'll just work with coag.

This too shall pass...

-----Original Message-----
From: Combs, Carolyn C.
Sent: Wednesday, February 03, 2016 3:15 PM
To: Babb, Noris
Subject: RE: depositions

Sounds good, do you know the date of yours?

Carolyn Combs, PharmD, MBA
Pharmacy Supervisor, Clinical Services
Bay Pines VA Healthcare System
10,000 Bay Pines Blvd.
Bay Pines, FL 33744
Phone: (727)398-6661 ext. 10734
Pager: (727)257-0376
Email: carolyn.combs@va.gov


-----Original Message-----
From: Babb, Noris
Sent: Wednesday, February 03, 2016 3:04 PM

To: Combs, Carolyn C.
Subject: RE: depositions

I'll have to find out if mandatory or optional. I know that mine is not!

-----Original Message-----
From: Combs, Carolyn C.
Sent: Wednesday, February 03, 2016 11:56 AM
To: Babb, Noris
Subject: RE: depositions

Noris,

Thank you for the dates! To make sure I understand the requests are for 2/16, 2/18, and 2/19 for the entire work day.  I put in a request yesterday for guidance on what type of leave can be granted, I'm still waiting to hear back. Is attendance mandatory or optional for these dates?

Thank you,

Carolyn Combs, PharmD, MBA
Pharmacy Supervisor, Clinical Services
Bay Pines VA Healthcare System
10,000 Bay Pines Blvd.
Bay Pines, FL 33744
Phone: (727)398-6661 ext. 10734
Pager: (727)257-0376
Email: carolyn.combs@va.gov


-----Original Message-----
From: Babb, Noris
Sent: Wednesday, February 03, 2016 11:52 AM
To: Combs, Carolyn C.
Subject: RE: depositions

Sorry Friday 19th I'll request all day
And tentatively Friday 26th-don't know time yet I believe this is AA.


-----Original Message-----
From: Babb, Noris
Sent: Wednesday, February 03, 2016 11:42 AM
To: Combs, Carolyn C.
Subject: depositions

Hi Carolyn, I just got the dates and times I'll be needing off:
Tuesday 16th all day
Thursday 18th all day
Friday 19th should be done by 1pm or 2pm

# EXHIBIT G

## Page 1

UNITED STATES OF AMERICA
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
MIAMI DISTRICT OFFICE

NORIS D. BABB,                    /
                                  /
        Complainant,              /  EEOC No.:
                                  /  510-2017-00295X
    vs.                           /
                                  /  Agency No.:
PETER M. O'ROURKE, ACTING         /  200I-0516-2016102804
SECRETARY, DEPARTMENT OF          /
VETERANS AFFAIRS,                 /  Administrative Judge
                                  /  William Rodriguez
        Agency.                   /
_____/

DEPOSITION OF CAROLYN COMBS

DATE:          JULY 18, 2018

TIME:          10:29 a.m. to 10:54 a.m.

PLACE:         C.W. Young V.A. Healthcare System
               10000 Bay Pines Boulevard
               Building 1, Room A137
               Bay Pines, Florida

PURSUANT TO:   Notice by counsel for the Complainant
               for purposes of discovery, use at
               trial, or such other purposes as
               permitted under the Federal Rules of
               Civil Procedure and Federal Rules of
               Evidence

REPORTED BY:   Janice L. Johnston
               Registered Merit Reporter
               Notary Public, State of Florida

               Pages 1 - 18

## Page 2

1  APPEARANCES:
2    JOSEPH D. MAGRI, ESQUIRE
     Merkle & Magri, P.A.
3    5601 Mariner Street
     Suite 400
4    Tampa, Florida 33609
     813-281-9000
5    jmagri@merklemagri.com
         Attorney for Complainant
6
     TANYA B. BURTON, ESQUIRE
7    V.A. Regional Counsel
     10000 Bay Pines Boulevard
8    Building 22, Room 431
     Bay Pines, Florida 33744
9    727-398-6661 Ext. 15752
     Tanya.Burton@va.gov
10        Attorney for Agency
11  ALSO PRESENT:
12    JUAN AURRUBLA, Law Intern
13
14
15
16
17
18
19
20
21
22
23
24
25

## Page 3

1          I N D E X          Page
2  ATTORNEY APPEARANCES                    2
3  INDEX PAGE                    3
4  EXHIBIT LIST                  3
5  DIRECT EXAMINATION BY MR. MAGRI              4
6  CERTIFICATE OF OATH              16
7  REPORTER'S CERTIFICATE            17
8  ERRATA SHEET                18
9
10
11
12
13
14
15            E X H I B I T S
16
   (None marked.)
17
18
19
20
21
22
23
24
25

## Page 4

1          CAROLYN COMBS,
2  the witness herein, being first duly sworn on oath, was
3  examined and deposed as follows:
4          DIRECT EXAMINATION
5  BY MR. MAGRI:
6    Q   Good morning.
7    A   Good morning.
8    Q   For the record, my name's Joe Magri.  And I
9  represent Dr. Babb in a EEO case that she has relating to
10 leave for depositions in her other EEO case.
11         And I'm going to be asking you questions here
12 this morning.  If there's any questions that I ask that you
13 don't understand or you need clarification of them, ask me
14 to give it and I'll be happy to.  Okay?
15   A   Okay.
16   Q   All right.  What do you do?
17   A   I'm a clinical pharmacy supervisor.
18   Q   Over what area?
19   A   Currently I supervise the pharmacy education
20 programs.  I am the compliance program manager for
21 pharmacy, and I also supervise a handful of pharmacists
22 that are floats.  They float in between inpatient and
23 outpatient pharmacy areas.
24   Q   How long have you done that?
25   A   I've been in this particular role of supervision

Page 5

1  for about a year.
2      Q   Okay.  What did you do before that?
3      A   Prior to that I was the clinical pharmacy
4  supervisor for our PACT and anticoag pharmacists.
5      Q   And how long did you do that?
6      A   I began as a supervisor for that area in June of
7  2015, so I guess about two years.
8      Q   What did you do before that?
9      A   Before that I was a pharmacy administration
10  resident at the Bay Pines V.A. for one year.
11      Q   When did you begin working at the V.A.?
12      A   At the V.A. in general or the Bay Pines V.A.?
13      Q   Now that I suspect that there may be more than
14  one location, I'll ask you first about the Bay Pines.
15      A   My station EOD date for Bay Pines is 6/29/2014.
16      Q   Okay.  And when did you begin working for the
17  V.A.?
18      A   One year prior to that.
19      Q   Where was that?
20      A   At the Lexington, Kentucky, V.A.
21      Q   All right.  And what did you do there?
22      A   I was a pharmacy resident for one year.
23      Q   All right.  Did you have any other V.A.
24  experience?
25      A   No.

Page 6

1      Q   Had you worked in private, in non-governmental
2  positions or other governmental positions prior to going to
3  the V.A.?
4      A   In what type of role?
5      Q   Pharmacist.
6      A   No.
7      Q   Okay.  When did you graduate from pharmacy
8  school?
9      A   In May of 2013.
10      Q   Okay.  And that was from a graduate program?
11      A   Yes.  I have a Doctor of Pharmacy.
12      Q   Okay.  Very good.
13          Now, do you recall Dr. Babb seeking leave to
14  attend depositions in a case back in 20 -- well, I'll give
15  you the exact date, hold on a minute -- February of 2016?
16      A   I recall her sending me an e-mail about it.
17      Q   Okay.  I'm going to show you Tab 7-C of a Report
18  of Investigation.  And I'm going to ask you to -- and this
19  is also Bates stamped page 000152, I think it goes to 155.
20          I'm going to ask you to take a look at that and
21  tell me if those pages contain the e-mail you're talking
22  about.
23          MS. BURTON:  Here, it's back here.
24          THE WITNESS:  Yeah, it's not in chronological
25  order.

Page 7

1  BY MR. MAGRI:
2      Q   I think it goes to 155.
3      A   One-five-five?
4      Q   Yeah, not 156.
5      A   The e-mail on 155 is not the e-mail from
6  Dr. Babb.
7      Q   Okay.  How about on 154?
8      A   The e-mail from 152 to 154 is the e-mail I'm
9  referencing.
10      Q   Is that an e-mail stream or a single e-mail?
11      A   It's an e-mail thread.
12      Q   All right.
13      A   It begins with the initial e-mail on 154 at the
14  bottom.
15      Q   Okay.  Very good.
16          Now, did you know what type of leave she was
17  entitled to to attend those depositions.
18      A   I sought guidance about the leave type that could
19  be used for depositions.
20      Q   Okay.  Why is that?
21      A   Because when I don't know something I seek
22  guidance.
23      Q   Okay.  And this may seem like a simple question
24  to you, but nonetheless I'm going to ask you.  Do you know
25  why you needed guidance?

Page 8

1      A   I don't know that I understand the question.
2          MS. BURTON:  Asked and answered.
3  BY MR. MAGRI:
4      Q   Is there a -- you had been a supervisor for how
5  long at this point?
6      A   I became a supervisor at Bay Pines in June of
7  2015, so this occurred in February of 2016.  We can do the
8  math.
9      Q   Okay.  Well, rather than doing the math, I'll ask
10  you another question.
11      A   Okay.
12      Q   As the supervisor, did you receive training on
13  time and leave?
14      A   Yes.
15      Q   Did that training cover leave of this type?
16      A   I don't recall specific training on leave types
17  to use for depositions.
18      Q   Okay.  Do you recall whether there was a handbook
19  or other procedure set out for leave types relating to
20  depositions?
21      A   Not specific to depositions.
22      Q   Okay.  How about specific to court cases of any
23  type?
24      A   I'm aware of leave for court leave if someone has
25  jury duty.

Page 9

1    Q   Okay.  Apart from that, you're not?
2    A   That's correct.
3    Q   All right.  Now, were you aware of leave types
4  for EE -- any EEO matter at any stage?
5    A   I don't recall at that time.
6    Q   All right.  Now have you become aware of that?
7    A   Ask me again.  Of what?
8    Q   Have you become aware of leave types for EEO
9  matters at any stage?
10       MS. BURTON:  I'm going to object.  I don't
11    understand the question.
12  BY MR. MAGRI:
13    Q   Do you?
14    A   I'm confused by what you're asking.
15    Q   Okay.  You put a time period on your prior
16  answer, so I want to -- so it's incumbent upon me to see
17  whether or not your knowledge has changed since that point
18  in time.
19       Have you gained additional knowledge since these
20  events as to the type of leave that an employee is to
21  receive in relation to EEO matters?
22    A   If I don't know the leave type I would seek
23  guidance.  I can't answer for a -- just a generalization.
24    Q   Okay.  Is there any EEO matters that you do know
25  the leave type for?

Page 10

1    A   I don't understand what you mean when you're
2  saying "EEO matters" in general.
3    Q   Equal employment opportunity matters or cases.
4       MS. BURTON:  I think she wants to know
5    specifically what type of matters are you talking
6    about.
7       THE WITNESS:  Uh-huh.  (Indicates affirmatively.)
8       MS. BURTON:  I mean, are they being deposed?  Are
9    they being investigated?
10       MR. MAGRI:  Well, I think she needs to tell me
11    what she knows and doesn't know --
12       MS. BURTON:  All right.  I guess I'm going to
13    object to vague.
14       MR. MAGRI:  -- rather than me guessing.
15  BY MR. MAGRI:
16    Q   And so I'm asking --
17       MS. BURTON:  If you don't know the answer.
18  BY MR. MAGRI:
19    Q   But if you do, answer.
20       MS. BURTON:  Yes, if you do.
21       THE WITNESS:  Well, I don't know the answer to
22    that question.
23  BY MR. MAGRI:
24    Q   Okay.  Let me make sure that you understand the
25  question I was asking.

Page 11

1       Are you aware of any leave times in relation to
2  EEO matters?
3       MS. BURTON:  I'm going to object.  I believe
4    she's already answered that she didn't understand that
5    same question.
6  BY MR. MAGRI:
7    Q   Do you need to be asked the question again or
8  some different form of that question or can you answer
9  that?
10    A   I don't think I can answer that question.
11    Q   Okay.  Then I will ask it in this way.
12    A   Okay.
13    Q   What types of leave do you understand are
14  appropriate in relation to EEO cases?
15    A   It would depend on the situation.
16    Q   Such as?
17    A   What the matter is, such as is it an EEO and
18  we're doing depositions, that type of leave I think can
19  vary.
20    Q   Okay.  What's your understanding about that?
21    A   I believe that I provided the correct guidance.
22    Q   What?
23    A   I believe I provided the correct guidance about
24  leave types for depositions.
25    Q   You provided it when?

Page 12

1    A   In the e-mail.
2    Q   Okay.  Is what you know about leave types for
3  depositions what's contained in the e-mail?
4    A   Yes.
5    Q   Is that all you know about leave types for
6  depositions?
7    A   That would be pure speculation for me to answer
8  that.
9    Q   Okay.  Do you have any other knowledge relating
10  to leave types for depositions than what is contained in
11  those e-mails?
12       MS. BURTON:  I'm going to object; asked and
13    answered.  But if you want you --
14  BY MR. MAGRI:
15    Q   Okay.  I disagree with that; but go ahead.
16       You still have to answer.
17    A   I don't have an answer.
18    Q   You don't have?
19    A   No.
20    Q   So you can't tell me of any other leave types
21  relating to depositions for EEO matters that you're aware
22  of, other than what's in those documents?
23    A   To my knowledge, this is the only request I've
24  ever had for leave to be used in an EEO activity.
25    Q   Okay.  And you've never received any training

Page 13

1  since then that would more broadly address what you should
2  do in the circumstance where you get a leave request?
3      A   I don't recall any specific training for the
4  leave types to be used for depositions.
5      Q   All right.  Now, in Tab 7-2 on page 107 to page
6  111, there is an affidavit or interrogatory answer that you
7  answered in this, in the investigatory stage.
8          Can you take a look at that and tell me if the
9  answers you gave in there are correct?
10     A   I've forgotten your question.
11     Q   Could you tell me whether or not the answers that
12  you gave there are correct.
13     A   They're correct.
14     Q   Okay.  I noticed that in addition to the pages
15  that I showed you earlier, there are documents which follow
16  that statement beginning on page 112.
17         Before I just show you those documents, that is
18  your signature on page 111, correct?
19     A   Yes.
20     Q   All right.  Now, take a look at the documents
21  that begin on page 112.  I have just a simple question.
22  Are those documents that you provided to the ORM
23  investigator that relate to the matters you addressed in
24  your statement?
25         MS. BURTON:  How far back did you say?

Page 14

1          MR. MAGRI:  I don't know if I said, but it goes
2  to 118, I believe.
3          THE WITNESS:  It goes to 117.
4  BY MR. MAGRI:
5      Q   What goes to 117?
6      A   The three attachments in the written affidavit
7  that I provided.
8      Q   Okay.  It goes to 117?
9      A   Yes.
10     Q   All right.  And on 118 and 119 -- 118 is what?
11  Is that something you would have provided or is that
12  something someone else provided?
13     A   This is an e-mail that I sent to the EEO
14  investigator, but I did not provide it as part of my
15  written affidavit.
16     Q   Okay.
17     A   It was just sending -- I wrote, "I have attached
18  the completed written affidavit," is my response to that
19  e-mail.
20     Q   I see.  Okay.
21         Now, do you have any other knowledge relating to
22  these matters?
23     A   No.
24         MR. MAGRI:  Okay.  I don't have any other
25  questions for you.

Page 15

1          THE WITNESS:  Okay.  Thank you.
2          MR. MAGRI:  Yep.
3          (At 10:54 a.m., no further questions were
4  propounded to the witness.)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 16

1              CERTIFICATE OF OATH
2
   STATE OF FLORIDA      :
3
   COUNTY OF MANATEE     :
4
5
       I, the undersigned authority, certify that
6
   CAROLYN COMBS, personally appeared before me and was duly
7
   sworn.
8
9
       WITNESS my hand and official seal this 18th day
10
   of July, 2018.
11
12
13
14
                    _____
15                  Janice L. Johnston
                    Registered Merit Reporter
16                  Notary Public - State of Florida
                    My Commission Expires: 5/18/2020
17                  Commission No.: FF 991449
18
     *******************************************
19   *    JANICE L. JOHNSTON          *
     * Notary Public - State of Florida  *
20   *    Commission #FF 991449        *
     *  My Comm. Expires May 18, 2020    *
21   *******************************************
22
23
24
25

Page 17

1                REPORTER'S CERTIFICATE
2
3   STATE OF FLORIDA        :
4   COUNTY OF MANATEE       :
5
6
7        I, Janice L. Johnston, Registered Merit Reporter,
    certify that I was authorized to and did stenographically
8   report the deposition of CAROLYN COMBS; that a review of
    the transcript was requested and that the transcript is a
9   true and complete record of my stenographic notes.
10       I further certify that I am not a relative,
    employee, attorney, or counsel of any of the parties, nor
11  am I a relative or employee of any of the parties' attorney
    or counsel connected with the action, nor am I financially
12  interested in the outcome of the foregoing action.
13       Dated this 18th day of July, 2018, IN THE CITY OF
    TAMPA, COUNTY OF MANATEE, STATE OF FLORIDA.
14
15
16
17
18       _____
    Janice L. Johnston
19  Registered Merit Reporter
20
21
22
23
24
25

Page 18

1   PLEASE ATTACH TO THE DEPOSITION OF CAROLYN COMBS, TAKEN ON
    JULY 18, 2018, IN THE CASE OF NORIS D. BABB, COMPLAINANT,
2   VERSUS DEPARTMENT OF VETERANS AFFAIRS, AGENCY.  EEOC CASE
    NO.:  510-2017-00295X.  AGENCY CASE NO.:
3   200I-0516-2016102804.
4   PAGE    LINE        CORRECTION AND REASON THEREFOR
5   _____
6   _____
7   _____
8   _____
9   _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  _____
21  _____
22
    I HAVE READ THE FOREGOING PAGES AND, EXCEPT FOR ANY
23  CORRECTIONS OR AMENDMENTS INDICATED ABOVE, I HEREBY
    SUBSCRIBE TO THE ACCURACY OF THIS TRANSCRIPT.
24
    _____    _____
25  CAROLYN COMBS          DATE

**A**

**ACCURACY**
18:23
**ACTING** 1:7
**action** 17:11,12
**activity** 12:24
**addition** 13:14
**additional** 9:19
**address** 13:1
**addressed** 13:23
**administration** 5:9
**Administrative** 1:8
**AFFAIRS** 1:8 18:2
**affidavit** 13:6 14:6
14:15,18
**affirmatively** 10:7
**Agency** 1:6,9 2:10
18:2,2
**ahead** 12:15
**AMENDMENTS**
18:23
**AMERICA** 1:1
**answer** 9:16,23
10:17,19,21 11:8
11:10 12:7,16,17
13:6
**answered** 8:2 11:4
12:13 13:7
**answers** 13:9,11
**anticoag** 5:4
**Apart** 9:1
**APPEARANCES**
2:1 3:2
**appeared** 16:6
**appropriate** 11:14
**area** 4:18 5:6
**areas** 4:23
**asked** 8:2 11:7
12:12
**asking** 4:11 9:14
10:16,25
**ATTACH** 18:1
**attached** 14:17
**attachments** 14:6
**attend** 6:14 7:17
**attorney** 2:5,10 3:2
17:10,11

**AURRUBLA** 2:12
**authority** 16:5
**authorized** 17:7
**aware** 8:24 9:3,6,8
11:1 12:21
**a.m** 1:14,14 15:3
**A137** 1:16

**B**

**B** 2:6 3:15
**Babb** 1:4 4:9 6:13
7:6 18:1
**back** 6:14,23 13:25
**Bates** 6:19
**Bay** 1:16,17 2:7,8
5:10,12,14,15 8:6
**began** 5:6
**beginning** 13:16
**begins** 7:13
**believe** 11:3,21,23
14:2
**bottom** 7:14
**Boulevard** 1:16 2:7
**broadly** 13:1
**Building** 1:16 2:8
**BURTON** 2:6 6:23
8:2 9:10 10:4,8,12
10:17,20 11:3
12:12 13:25

**C**

**CAROLYN** 1:11
4:1 16:6 17:8 18:1
18:25
**case** 4:9,10 6:14
18:1,2,2
**cases** 8:22 10:3
11:14
**CERTIFICATE**
3:6,7 16:1 17:1
**certify** 16:5 17:7,10
**changed** 9:17
**chronological** 6:24
**circumstance** 13:2
**CITY** 17:13
**Civil** 1:20
**clarification** 4:13
**clinical** 4:17 5:3

**COMBS** 1:11 4:1
16:6 17:8 18:1,25
**Comm** 16:20
**Commission** 1:1
16:16,17,20
**Complainant** 1:5
1:18 2:5 18:1
**complete** 17:9
**completed** 14:18
**compliance** 4:20
**confused** 9:14
**connected** 17:11
**contain** 6:21
**contained** 12:3,10
**correct** 9:2 11:21
11:23 13:9,12,13
13:18
**CORRECTION**
18:4
**CORRECTIONS**
18:23
**counsel** 1:18 2:7
17:10,11
**COUNTY** 16:3
17:4,13
**court** 8:22,24
**cover** 8:15
**Currently** 4:19
**C.W** 1:15

**D**

**D** 1:4 2:2 3:1 18:1
**date** 1:13 5:15 6:15
18:25
**Dated** 17:13
**day** 16:9 17:13
**DEPARTMENT**
1:7 18:2
**depend** 11:15
**deposed** 4:3 10:8
**deposition** 1:11
17:8 18:1
**depositions** 4:10
6:14 7:17,19 8:17
8:20,21 11:18,24
12:3,6,10,21 13:4
**different** 11:8
**DIRECT** 3:5 4:4

**disagree** 12:15
**discovery** 1:18
**DISTRICT** 1:2
**Doctor** 6:11
**documents** 12:22
13:15,17,20,22
**doing** 8:9 11:18
**Dr** 4:9 6:13 7:6
**duly** 4:2 16:6
**duty** 8:25

**E**

**E** 3:1,15
**earlier** 13:15
**education** 4:19
**EE** 9:4
**EEO** 4:9,10 9:4,8
9:21,24 10:2 11:2
11:14,17 12:21,24
14:13
**EEOC** 1:5 18:2
**employee** 9:20
17:10,11
**employment** 1:1
10:3
**entitled** 7:17
**EOD** 5:15
**Equal** 1:1 10:3
**ERRATA** 3:8
**ESQUIRE** 2:2,6
**events** 9:20
**Evidence** 1:20
**exact** 6:15
**EXAMINATION**
3:5 4:4
**examined** 4:3
**EXHIBIT** 3:4
**experience** 5:24
**Expires** 16:16,20
**Ext** 2:9
**e-mail** 6:16,21 7:5,5
7:8,8,10,10,11,13
12:1,3 14:13,19
**e-mails** 12:11

**F**

**far** 13:25
**February** 6:15 8:7

**Federal** 1:19,20
**FF** 16:17,20
**financially** 17:11
**first** 4:2 5:14
**float** 4:22
**floats** 4:22
**Florida** 1:17,22 2:4
2:8 16:2,16,19
17:3,13
**follow** 13:15
**follows** 4:3
**foregoing** 17:12
18:22
**forgotten** 13:10
**form** 11:8
**further** 15:3 17:10

**G**

**gained** 9:19
**general** 5:12 10:2
**generalization** 9:23
**give** 4:14 6:14
**go** 12:15
**goes** 6:19 7:2 14:1,3
14:5,8
**going** 4:11 6:2,17
6:18,20 7:24 9:10
10:12 11:3 12:12
**good** 4:6,7 6:12
7:15
**governmental** 6:2
**graduate** 6:7,10
**guess** 5:7 10:12
**guessing** 10:14
**guidance** 7:18,22
7:25 9:23 11:21
11:23

**H**

**H** 3:15
**hand** 16:9
**handbook** 8:18
**handful** 4:21
**happy** 4:14
**Healthcare** 1:15
**hold** 6:15

**I**

**incumbent** 9:16
**INDEX** 3:3
**INDICATED** 18:23
**Indicates** 10:7
**initial** 7:13
**inpatient** 4:22
**interested** 17:12
**Intern** 2:12
**interrogatory** 13:6
**investigated** 10:9
**Investigation** 6:18
**investigator** 13:23
   14:14
**investigatory** 13:7

**J**
**Janice** 1:21 16:15
   16:19 17:7,18
**jmagri@merkle...**
   2:5
**Joe** 4:8
**Johnston** 1:21
   16:15,19 17:7,18
**JOSEPH** 2:2
**JUAN** 2:12
**Judge** 1:8
**July** 1:13 16:10
   17:13 18:1
**June** 5:6 8:6
**jury** 8:25

**K**
**Kentucky** 5:20
**know** 7:16,21,24
   8:1 9:22,24 10:4
   10:11,17,21 12:2
   12:5 14:1
**knowledge** 9:17,19
   12:9,23 14:21
**knows** 10:11

**L**
**L** 1:21 16:15,19
   17:7,18
**Law** 2:12
**leave** 4:10 6:13 7:16
   7:18 8:13,15,16
   8:19,24,24 9:3,8

**9**:20,22,25 11:1
   11:13,18,24 12:2
   12:5,10,20,24
   13:2,4
**Lexington** 5:20
**LINE** 18:4
**LIST** 3:4
**location** 5:14
**long** 4:24 5:5 8:5
**look** 6:20 13:8,20

**M**
**M** 1:7
**Magri** 2:2,2 3:5 4:5
   4:8 7:1 8:3 9:12
   10:10,14,15,18,23
   11:6 12:14 14:1,4
   14:24 15:2
**manager** 4:20
**MANATEE** 16:3
   17:4,13
**Mariner** 2:3
**marked** 3:16
**math** 8:8,9
**matter** 9:4 11:17
**matters** 9:9,21,24
   10:2,3,5 11:2
   12:21 13:23 14:22
**mean** 10:1,8
**Merit** 1:22 16:15
   17:7,19
**Merkle** 2:2
**MIAMI** 1:2
**minute** 6:15
**morning** 4:6,7,12

**N**
**N** 3:1
**name's** 4:8
**need** 4:13 11:7
**needed** 7:25
**needs** 10:10
**never** 12:25
**non-governmental**
   6:1
**NORIS** 1:4 18:1
**Notary** 1:22 16:16
   16:19

**notes** 17:9
**Notice** 1:18
**noticed** 13:14

**O**
**oath** 3:6 4:2 16:1
**object** 9:10 10:13
   11:3 12:12
**occurred** 8:7
**OFFICE** 1:2
**official** 16:9
**Okay** 4:14,15 5:2
   5:16 6:7,10,12,17
   7:7,15,20,23 8:9
   8:11,18,22 9:1,15
   9:24 10:24 11:11
   11:12,20 12:2,9
   12:15,25 13:14
   14:8,16,20,24
   15:1
**One-five-five** 7:3
**opportunity** 1:1
   10:3
**order** 6:25
**ORM** 13:22
**outcome** 17:12
**outpatient** 4:23
**O'ROURKE** 1:7

**P**
**PACT** 5:4
**page** 3:1,3 6:19
   13:5,5,16,18,21
   18:4
**pages** 1:23 6:21
   13:14 18:22
**part** 14:14
**particular** 4:25
**parties** 17:10,11
**period** 9:15
**permitted** 1:19
**personally** 16:6
**PETER** 1:7
**Pharmacist** 6:5
**pharmacists** 4:21
   5:4
**pharmacy** 4:17,19
   4:21,23 5:3,9,22

   6:7,11
**Pines** 1:16,17 2:7,8
   5:10,12,14,15 8:6
**PLACE** 1:15
**PLEASE** 18:1
**point** 8:5 9:17
**positions** 6:2,2
**PRESENT** 2:11
**prior** 5:3,18 6:2
   9:15
**private** 6:1
**procedure** 1:20
   8:19
**program** 4:20 6:10
**programs** 4:20
**propounded** 15:4
**provide** 14:14
**provided** 11:21,23
   11:25 13:22 14:7
   14:11,12
**Public** 1:22 16:16
   16:19
**pure** 12:7
**purposes** 1:18,19
**PURSUANT** 1:18
**put** 9:15
**P.A** 2:2

**Q**
**question** 7:23 8:1
   8:10 9:11 10:22
   10:25 11:5,7,8,10
   13:10,21
**questions** 4:11,12
   14:25 15:3

**R**
**READ** 18:22
**REASON** 18:4
**recall** 6:13,16 8:16
   8:18 9:5 13:3
**receive** 8:12 9:21
**received** 12:25
**record** 4:8 17:9
**referencing** 7:9
**Regional** 2:7
**Registered** 1:22
   16:15 17:7,19

**relate** 13:23
**relating** 4:9 8:19
   12:9,21 14:21
**relation** 9:21 11:1
   11:14
**relative** 17:10,11
**report** 6:17 17:8
**REPORTED** 1:21
**Reporter** 1:22
   16:15 17:7,19
**REPORTER'S** 3:7
   17:1
**represent** 4:9
**request** 12:23 13:2
**requested** 17:8
**resident** 5:10,22
**response** 14:18
**review** 17:8
**right** 4:16 5:21,23
   7:12 9:3,6 10:12
   13:5,20 14:10
**Rodriguez** 1:8
**role** 4:25 6:4
**Room** 1:16 2:8
**Rules** 1:19,20

**S**
**S** 3:15
**saying** 10:2
**school** 6:8
**seal** 16:9
**SECRETARY** 1:7
**see** 9:16 14:20
**seek** 7:21 9:22
**seeking** 6:13
**sending** 6:16 14:17
**sent** 14:13
**set** 8:19
**SHEET** 3:8
**show** 6:17 13:17
**showed** 13:15
**signature** 13:18
**simple** 7:23 13:21
**single** 7:10
**situation** 11:15
**sought** 7:18
**specific** 8:16,21,22
   13:3

**specifically** 10:5
**speculation** 12:7
**stage** 9:4,9 13:7
**stamped** 6:19
**State** 1:22 16:2,16 16:19 17:3,13
**statement** 13:16,24
**STATES** 1:1
**station** 5:15
**stenographic** 17:9
**stenographically** 17:7
**stream** 7:10
**Street** 2:3
**SUBSCRIBE** 18:23
**Suite** 2:3
**supervise** 4:19,21
**supervision** 4:25
**supervisor** 4:17 5:4 5:6 8:4,6,12
**sure** 10:24
**suspect** 5:13
**sworn** 4:2 16:7
**System** 1:15

**T**

**T** 3:15
**Tab** 6:17 13:5
**take** 6:20 13:8,20
**TAKEN** 18:1
**talking** 6:21 10:5
**Tampa** 2:4 17:13
**TANYA** 2:6
**Tanya.Burton@...** 2:9
**tell** 6:21 10:10 12:20 13:8,11
**Thank** 15:1
**THEREFOR** 18:4
**think** 6:19 7:2 10:4 10:10 11:10,18
**thread** 7:11
**three** 14:6
**time** 1:14 8:13 9:5 9:15,18
**times** 11:1
**training** 8:12,15,16 12:25 13:3

**transcript** 17:8,8 18:23
**trial** 1:19
**true** 17:9
**two** 5:7
**type** 6:4 7:16,18 8:15,23 9:20,22 9:25 10:5 11:18
**types** 8:16,19 9:3,8 11:13,24 12:2,5 12:10,20 13:4

**U**

**Uh-huh** 10:7
**undersigned** 16:5
**understand** 4:13 8:1 9:11 10:1,24 11:4,13
**understanding** 11:20
**UNITED** 1:1
**use** 1:18 8:17

**V**

**vague** 10:13
**vary** 11:19
**VERSUS** 18:2
**VETERANS** 1:8 18:2
**vs** 1:6
**V.A** 1:15 2:7 5:10 5:11,12,12,17,20 5:23 6:3

**W**

**want** 9:16 12:13
**wants** 10:4
**way** 11:11
**we're** 11:18
**William** 1:8
**witness** 4:2 6:24 10:7,21 14:3 15:1 15:4 16:9
**worked** 6:1
**working** 5:11,16
**written** 14:6,15,18
**wrote** 14:17

**X**

**X** 3:1,15

**Y**

**Yeah** 6:24 7:4
**year** 5:1,10,18,22
**years** 5:7
**Yep** 15:2
**Young** 1:15

**0**

**000152** 6:19

**1**

**1** 1:16,23
**10:29** 1:14
**10:54** 1:14 15:3
**10000** 1:16 2:7
**107** 13:5
**111** 13:6,18
**112** 13:16,21
**117** 14:3,5,8
**118** 14:2,10,10
**119** 14:10
**152** 7:8
**154** 7:7,8,13
**155** 6:19 7:2,5
**156** 7:4
**15752** 2:9
**16** 3:6
**17** 3:7
**18** 1:13,23 3:8 16:20 18:1
**18th** 16:9 17:13

**2**

**2** 3:2
**20** 6:14
**200I-0516-20161...** 1:7 18:3
**2013** 6:9
**2015** 5:7 8:7
**2016** 6:15 8:7
**2018** 1:13 16:10 17:13 18:1
**2020** 16:20
**22** 2:8

**3**

**3** 3:3,4
**33609** 2:4
**33744** 2:8

**4**

**4** 3:5
**400** 2:3
**431** 2:8

**5**

**5/18/2020** 16:16
**510-2017-00295X** 1:5 18:2
**5601** 2:3

**6**

**6/29/2014** 5:15

**7**

**7-C** 6:17
**7-2** 13:5
**727-398-6661** 2:9

**8**

**813-281-9000** 2:4

**9**

**991449** 16:17,20

# EXHIBIT H

**Sigilai, Kiprono (ORM)**

| | |
|---|---|
| **From:** | Wilson, Gary L |
| **Sent:** | Friday, February 05, 2016 7:37 AM |
| **To:** | Combs, Carolyn C.; Justice, Keri |
| **Subject:** | RE: Type of leave for Depositions |

Per Regional Council the type of leave to be submitted is AL.

---

**From:** Combs, Carolyn C.
**Sent:** Tuesday, February 02, 2016 4:29 PM
**To:** Justice, Keri; Wilson, Gary L
**Subject:** Type of leave for Depositions

All,

Can we please ask TB what type of leave should be used for depositions? I am not sure if the person (Babb) is being deposed or if they are wanting to sit in on someone being deposed?

Please advise.

Thanks,

Carolyn Combs, PharmD, MBA
Pharmacy Supervisor, Clinical Services
Bay Pines VAHCS

# EXHIBIT I



**Page 1**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
CASE NO: 8:20-CV-2825-T-35CPT

------------------------------X
NORIS BABB,                )
                           )
       Plaintiff,          )
                           ) DEPOSITION OF:
vs.                        )  GARY WILSON
                           )
DENIS MCDONOUGH, SECRETARY,  )
DEPARTMENT OF VETERANS     )
AFFAIRS,                   )
                           )
       Defendant.          )
------------------------------X

TAKEN BY:    Attorney for Plaintiff

DATE:        May 26th, 2022

TIME:        Commencing at 1:30 p.m.

PLACE:       By Videoconference

Examination of the witness taken before:

Angeli English, FPR
Executive Reporting Service
13555 Automobile Boulevard, Suite 130
Clearwater, Florida 33762

**Page 2**

1    APPEARANCES:
2    Joseph D. Magri, Esquire
     Meagan A. Culpepper, Esquire
3    Merkle & Magri, P.A.
     5601 Mariner Street
4    Suite 400
     Tampa, Florida 33609
5    813-281-9000
     jmagri@merklemagri.com
6
7    Attorney for the Plaintiff
8    Michael R. Kenneth, Esquire
     U.S.A.O. Middle District of Florida
9    400 N Tampa Street
     Suite 3200
10   Tampa, Florida 33602-4798
     813-274-6000
11   michael.kenneth@usdoj.gov
12   Attorney for the Defendant
13
     Karen L. Mulcahy, Esquire
14   U.S. Dept. Of Veterans Affairs
     C.W. Young Medical Center (516/02)
15   Post Office Box 5005 General Counsel
     Bay Pines, Florida 33744-5005
16   727-398-6661
     karen.mulcahy@va.gov
17
18   Attorney for the Defendant
19   Mamie V. Wise, Esquire
     United States Attorney's Office
20   400 N Tampa Street
     Suite 3200
21   Tampa, Florida 33602-4798
     813-274-6000
22   mamie.wise@usdoj.gov
23   Attorney for the Defendant
24
25

**Page 3**

1
              I N D E X
2
     DEPOSITION OF GARY WILSON
3
                  PAGE
4
     DIRECT EXAMINATION BY MR. MAGRI      4
5
     CERTIFICATE OF OATH          28
6
     CERTIFICATE OF COURT REPORTER      29
7
     ERRATA SHEET (forwarded upon execution)   30
8
     READ AND SIGN LETTER        31
9
10
11
          PLAINTIFF'S EXHIBITS INDEX
12
     Number    Description      Page
13
       1    Bates Stamped Pages 000119 and    27
            000120
14
15
16
17
18
19
20
21
22
23
24
25

**Page 4**

1        THEREUPON,
2             GARY WILSON
3    was adduced as the witness herein, and being first duly
4    sworn upon oath, was questioned and testified as
5    follows:
6        THE WITNESS:  I do.
7        DIRECT EXAMINATION
8    BY MR. MAGRI:
9    Q.  Good afternoon.
10   A.  Good afternoon, Mr. Magri.
11   Q.  For the record, I represent Dr. Noris Babb,
12   and I'll be asking you questions here today over Zoom.
13   And if there's any questions that I ask that you don't
14   understand or you feel you need clarification, ask me
15   to give it and I'll be happy to.  Okay?
16   A.  Okay.
17   Q.  Where are you employed now?
18   A.  I'm currently retired.
19   Q.  Okay.  When did you retire?
20   A.  June 30th of 2021.
21   Q.  And what did you do before you retired?
22   A.  I was the Chief of Pharmacy Services at Bay
23   Pines.
24   Q.  And how long did you have that position?
25   A.  I believe it was 10 years, going on 11.

1 (Pages 1 to 4)

Electronically signed by Angeli English (401-150-385-1786)
Electronically signed by Angeli English (401-150-385-1786)

b751f759-eb7e-4ef5-b622-6c8dea5db6c2

Page 5

1    Q.  Okay.  And do you remember Dr. Babb?
2    A.  Yes, definitely do.  Uh-huh.
3    Q.  Okay.  And do you remember Dr. Donna Trask and
4  Anita Truitt?
5    A.  Yes.
6    Q.  Okay.  Each of those three people had EEO
7  claims against the facility, correct?
8    A.  Correct.
9    Q.  And you and certain others were responsible
10  management officials of those, correct?
11    A.  Yeah.  That is correct.
12    Q.  In Dr. Babb's case, what I would like you to
13  do is just -- well, this is -- there's two Dr. Babb's
14  cases.  So I would -- I'm going to focus on the one
15  that we're here today about -- unless something causes
16  me to go to some other area.  But I'll let you know if
17  I do.  The current case involves her denial of AA.  Are
18  you familiar with that?
19    A.  Yes.
20    Q.  Okay.  Tell me what you know about that.
21    MR. KENNETH:  Object to the form.
22    Dr. Wilson, you can answer.  I'm just
23    objecting to the form.
24    A.  Sure.  What I recall from the events that
25  occurred was that I received an email from Dr. Babb's

Page 6

1  supervisor, Carolyn Combs, requesting me to find out
2  about what kind of leave she could take for her
3  depositions and whether it was going to be AA or AL.
4  And I proceeded to contact regional counsel to get that
5  info- -- decision.
6  BY MR. MAGRI:
7    Q.  Okay.  Why did you contact regional counsel
8  for --
9    A.  The reason I did that was because it was
10  already in the hands of regional counsel at that time.
11    Q.  Meaning what?
12    A.  Meaning that, since the case was now not at a
13  local level, I went to regional counsel, because they
14  were handling the case at that time, to get legal
15  guidance.
16    Q.  Okay.  Do you -- is -- when somebody makes a
17  request for leave, is there a typical group of people
18  that you, as a supervisor, would talk to about leave?
19    MR. KENNETH:  Object to the form.  Go ahead.
20    A.  Okay.  Not unless it's something special.  I
21  mean, I'm not sure I understand your question to be
22  honest with you.
23  BY MR. MAGRI:
24    Q.  The -- when -- you were -- when people request
25  leave, is there any group that you check with to see

Page 7

1  what leave policies are?
2    MR. KENNETH:  Object to the form.
3    A.  Normally HR.
4  BY MR. MAGRI:
5    Q.  All right.  Now why -- why didn't you check
6  with HR here?
7    MR. KENNETH:  Object to the form.  Go ahead.
8    A.  One of the reasons was I just went to -- went
9  ahead and went with regional counsel because of the
10  fact that it was no longer really at a local level and
11  it was now with regional counsel as a case.  And in
12  past experience, I've had -- and even though I
13  appreciate all the hard work that HR does, I have been
14  at times given poor advice on handling matters.  And
15  that's not to say anything negative about anybody but
16  that just happened.  So I just went directly to
17  regional counsel.
18  BY MR. MAGRI:
19    Q.  And with regard to the poor advice you've
20  gotten from regional counsel, do you recall any
21  specific area --
22    MR. KENNETH:  Object to the form.  Object to
23    the form.
24  BY MR. MAGRI:
25    Q.  Do you recall any specific areas in which HR

Page 8

1  gave you poor advice?
2    A.  Unfortunately, Mr. Magri, you're asking me
3  something that's gone on from the past.  I mean, I
4  can't give you any real details other than it had to do
5  with -- with employee interactions and HR.
6    Q.  Okay.  How about with regard to leave, do you
7  recall getting any inaccurate information from HR with
8  regard to leave?
9    A.  Nothing specific.
10    Q.  Okay.  Now the -- did you -- do you recall
11  giving an affidavit?  I just want to make sure that the
12  record reflects this.  Do you recall giving an
13  affidavit in Dr. Babb's case?
14    MR. KENNETH:  Object to the form.
15    A.  Do you mean this one, Mr. Magri?  Just for
16  clarity.
17  BY MR. MAGRI:
18    Q.  In what?
19    A.  In this case?
20    Q.  Yes.  I mean in the leave case, yes.  I meant
21  to -- if I didn't say it, I meant to say that my
22  question would be about the leave case unless I made it
23  clear that I was asking about something else.  But in
24  any event --
25    A.  I think you did make that clear.  I apologize.

2  (Pages 5 to 8)

Executive Reporting Service

Electronically signed by Angeli English (401-150-385-1786)
Electronically signed by Angeli English (401-150-385-1786)

b751f759-eb7e-4ef5-b622-6c8dea5db6c2

Page 9

1    Q. Do you recall giving an affidavit in this
2  case?
3    A. You mean the written interrogatory in the EEO
4  complaint?
5    Q. The written interrogatory answers that --
6    A. Yes.
7    Q. -- you gave to the EEO investigator.
8    A. Yes.
9    Q. Do you have a copy of them there?
10    A. Yes, I do.
11    Q. Okay. Now if you look at Page 00120 -- can
12  you do that.
13    A. I'm a little confused. I just have -- hold
14  on. 00120.
15    Q. Yes.
16    A. Okay. Hold on.
17    Q. 000120. It's in the ROI.
18    A. Okay. I'm not -- okay. I'm not sure I'm
19  following what you're talking about but go ahead.
20  Maybe I have what you're looking for.
21    MR. MAGRI: Meagan, can you pull up screen
22  share from the ROI Page 000120.
23    MS. CULPEPPER: Yeah. Give me one second.
24    MR. MAGRI: I'm actually going to need you to
25  pull up the first page and his signature page too.

Page 10

1  Just so we -- you can identify it.
2    THE WITNESS: Okay. I do have that.
3  BY MR. MAGRI:
4    Q. Are you following along with --
5    A. Yes. Yeah.
6    Q. -- 000119?
7    A. Okay. I was just looking at my printed copy
8  that I had. It didn't have a 119 on it or the 120.
9  Sorry.
10    Q. Okay. Well, let's go to -- let's go to
11  Page 120 and look at the Number 8.
12    A. Number 8.
13    Q. And now these questions -- and these answers
14  were given under oath, correct?
15    A. Right. Uh-huh.
16    Q. All right. Now is this answer -- is this --
17  I'll read the question and then the answer, and you
18  tell me if that was accurate: Please describe your
19  facility's process for requesting official EEO time
20  off.
21    A. Right.
22    Q. Question. Answer is: Contact HR.
23    A. Contact HR. Right.
24    Q. Was that truthful?
25    A. Yes.

Page 11

1    Q. Okay. Now when had you previously contacted
2  HR about leave, if you recall, for an EEO matter? If
3  ever.
4    A. I can't recall to be honest with you, not
5  like...
6    Q. Okay. To the extent that either Drs. -- now
7  I'm going to a different case so I'm going to now
8  mention their names. To the extent that Drs. Truitt
9  and Trask requested AA to attend depos in their cases,
10  would you have contacted HR then?
11    MR. KENNETH: Object to the form.
12    A. I was -- okay. I wasn't contacted in regards
13  to whether they -- for their leave that I can recall.
14  So I can't really give you an answer on that. Maybe
15  their supervisors did but I didn't.
16  BY MR. MAGRI:
17    Q. So are you aware that Drs. Truitt and Trask
18  received AA numerous times to attend depos in their
19  federal court case?
20    A. Uh-huh. Yes.
21    Q. Okay. When did you become aware of that?
22    MR. KENNETH: I'm going to object and ask the
23  witness not to reveal attorney-client
24  communications. Otherwise, Dr. Wilson, you can go
25  ahead and answer the question.

Page 12

1    A. Okay. You're asking me when I knew that they
2  had AA?
3  BY MR. MAGRI:
4    Q. Yes.
5    A. I can't really give you an exact answer on
6  that. I'm sorry. That's just too far back for me to
7  remember.
8    Q. Okay. But it would have been -- it would have
9  been some time when that case was going on?
10    A. If -- if I knew or had knowledge of it. I'm
11  sorry.
12    Q. Well, at some point you had knowledge; you
13  just testified, right?
14    A. Yes.
15    Q. Okay. And I'm asking you whether that was
16  during the -- during their -- while their case was
17  going on?
18    A. I believe it would have been during their
19  case, right.
20    Q. Okay. Now given that, why did you -- is there
21  a reason why you would have thought that something
22  different would be done in this case, Dr. Babb's case?
23    A. The only reason I contacted regional counsel
24  was because their supervisor asked me -- sent an email
25  to me asking the question. So that's why I posed it to

3  (Pages 9 to 12)

Executive Reporting Service

Electronically signed by Angeli English (401-150-385-1786)
Electronically signed by Angeli English (401-150-385-1786)                    b751f759-eb7e-4ef5-b622-6c8dea5db6c2

## Page 13

1  regional counsel.
2      Q.  The -- now do you know that there was a time
3  when Dr. -- Dr. Truitt and Trask were denied the annual
4  leave in their case?
5          MR. KENNETH:  Object to the form.  I think you
6  mean AA.
7          MR. MAGRI:  Yeah.  I think you're right.
8  Thank you, Michael.
9          MR. KENNETH:  No problem.
10 BY MR. MAGRI:
11     Q.  Denied AA to attend a deposition in their
12 case?
13     A.  No.
14     Q.  All right.  Did you have any involvement in
15 the -- in a denial of AA to attend a deposition of
16 Dr. Stewart in the Truitt and Trask case?
17     A.  No, I was not.
18     Q.  And I want to be a little more specific too on
19 that question.  This was a -- this was a deposition to
20 preserve testimony for a trial.  Did you have any
21 involvement in that?
22     A.  No, I did not.
23     Q.  Okay.  Now were you aware that happened?
24     A.  I wasn't aware of that --
25         MR. KENNETH:  Object to the form.  Go ahead.

## Page 14

1      A.  I wasn't aware of that until recently.
2  BY MR. MAGRI:
3      Q.  Okay.  Now do you know whether or not the
4  supervisor that contacted you was aware of that?
5      A.  I have no --
6          MR. KENNETH:  Object to the form.
7      A.  I have no knowledge of that.
8  BY MR. MAGRI:
9      Q.  Okay.  Now when were you aware of
10 Dr. Babb's -- now I'm back on her case.
11     A.  Okay.
12     Q.  But I'm -- I say that because you have given
13 an answer -- and so I'll go to your answer.  You were
14 asked on that same page, Question 6:  When and how did
15 you become aware of the Complainant's prior EEO
16 activity; do you see that?
17     A.  Yes.  Uh-huh.
18     Q.  And your answer was:  Notification from ORM on
19 approximately May 14, 2013, correct?
20     A.  Correct.
21     Q.  Okay.  Well, the -- you actually knew about
22 the Complainant's prior EEO activity, prior to that,
23 didn't you?
24     A.  Concerning her case?
25     Q.  Well, I'm talking about prior EEO activity.

## Page 15

1  So whatever case or time it was, I'm asking about what
2  your knowledge of prior EEO activity of Dr. Babb?
3      A.  Well, I'm not.  I don't recall that now.
4      Q.  Okay.  Well, my question to you was:  You were
5  aware of her prior EEO activity prior to May 14, 2013,
6  weren't you?
7          MR. KENNETH:  Object to the form.
8      A.  I'm confused on this question to be honest
9  with you.
10 BY MR. MAGRI:
11     Q.  Okay.  Well, I'll try it a different way and
12 see if that helps.
13     Your answer is -- to the -- to the question
14 about was:  When and how did you become aware of
15 Complainant's prior EEO activity?  Correct?  This is
16 Page 120, Question 6.
17     A.  Right.  May 14 -- approximately May 14.
18     Q.  Of 2013, right?
19     A.  Right.
20     Q.  Okay.  But actually you were -- you gave sworn
21 testimony in April of -- of -- do you recall an AIB
22 that went --
23     A.  Yes, I do.  I recall that AIB.
24     Q.  Did you give sworn testimony in that?
25     A.  Yes, I did.

## Page 16

1      Q.  Do you know when that was taken?
2      A.  I'm sorry, Mr. Magri.  The dates and times of
3  that, I do not know.
4      Q.  Okay.  Did you give sworn testimony in that?
5      A.  Yes.
6      Q.  About the EEO activity of Drs. Truitt, Trask
7  and Babb?
8          MR. KENNETH:  Object to the form.
9      A.  I'm not -- okay.  As far as -- I can't
10 remember the exact details of the AIB and what was in
11 it and what was stated.
12 BY MR. MAGRI:
13     Q.  Okay.  Did -- were you familiar with -- were
14 you familiar with the fact that you were involved in
15 emails in January of 2013 that referred to EEO or --
16 and potentially EEO activity of Dr. Babb?
17         MR. KENNETH:  Object to the form.
18     A.  I don't recall because I have no information
19 in front of me.
20 BY MR. MAGRI:
21     Q.  Okay.  Would your memory have been -- about
22 these events been better -- have been better when you
23 were previously deposed in the -- in Dr. Babb's case?
24 If you know.
25     A.  Yeah.  I don't.  I don't know, Mr. Magri.  I'm

Executive Reporting Service

Electronically signed by Angeli English (401-150-385-1786)
Electronically signed by Angeli English (401-150-385-1786)                                    b751f759-eb7e-4ef5-b622-6c8dea5db6c2

Page 17

1  very sorry.
2      Q.  The question though is not what you know in
3  terms of the date.  The question was whether your
4  memory would have been better when you were previously
5  deposed?
6      A.  I would -- I would -- I guess.
7      Q.  Okay.  But you're not sure?
8      A.  No.
9      Q.  Okay.  Now what was the manner in which you
10 contacted regional counsel?
11     A.  How did I contact regional counsel; is that
12 what you're asking me?
13     Q.  Well, did you?
14     A.  Yes, I did.
15     Q.  Okay.  And what was the manner in which you
16 did that?
17     A.  I believe it was by phone call.
18     Q.  Was -- now take us through that.  Who did you
19 call?  What was discussed?
20     A.  Okay.  The call was made to HR counsel, and I
21 spoke to TB Burton and asked the question as to whether
22 the request that I had gotten from Dr. Combs on what
23 type of leave was to be granted for the depositions,
24 whether it was AA or annual leave.
25         And Ms. Barton said she would get back to me,

Page 18

1  and then I received information from her saying that it
2  was AL and not AA.
3      Q.  How did you receive the information from her
4  that it would be AL?
5      A.  I believe it was by phone call but I can't
6  remember for sure.  But I would assume it was by phone
7  call.
8      Q.  Okay.  Well, tell me what your assumption
9  is --
10     A.  That -- that I received -- I received a phone
11 call back from her saying that it was AL.
12     Q.  And did she tell you what the basis of that
13 statement was?
14     A.  No.  She just told me what the response was.
15     Q.  Okay.  Now did you -- what happened next, if
16 you recall?
17     A.  The next thing that occurred is I responded
18 back to Dr. Combs that the leave was AL per regional
19 counsel.
20     Q.  All right.  And how long did the process of
21 these phone calls take?  Did they all happen in one
22 afternoon?  One day?  Do you recall?
23     A.  I do not recall that, the specifics.
24     Q.  Was it a matter of days?
25     A.  I would say most likely.

Page 19

1      Q.  Most likely it was or wasn't?
2      A.  Was.
3      Q.  And --
4      A.  But I haven't got anything here in front of
5  me, other than -- so I don't -- I'm just not sure on
6  that one.  I can't give you a specific answer.
7      Q.  Okay.  Now did you have any conversations
8  with -- who -- do you recall who the supervisors of
9  Drs. Truitt and Trask were?
10         MR. KENNETH:  Object to the form.
11     A.  I'm not positive on that one because of how
12 long ago that's been.  Let me think for a minute.
13         To give you an answer, I would probably be
14 giving you a guess, because I can't remember exactly
15 who the supervisors were at that time, because they did
16 change from time to time as who was supervising who.
17 BY MR. MAGRI:
18     Q.  Okay.  The -- now did you have conversations
19 with anyone other than TB Burton about this leave?
20     A.  No more than Keri Justice and Dr. Combs who --
21 that were on the email that she sent to me.
22     Q.  That who sent to you?
23     A.  Dr. Combs.
24     Q.  Okay.  And what did you discuss with them?
25     A.  I replied back on the email to them with

Page 20

1  exactly what regional counsel had told me, that it was
2  to be AL and not AA.
3      Q.  Now this all occurred in early February 2016,
4  correct?
5      A.  I believe that's correct.
6      Q.  Okay.  Have you had occasion, other than this
7  time with Dr. Babb, to approve any other employee's AA?
8          MR. KENNETH:  Object to the form.
9      A.  Yeah.  I have done AA approvals when it came
10 to education requests.
11 BY MR. MAGRI:
12     Q.  Okay.  And when you did that, you contacted
13 HR, did you?
14     A.  No, I did not.  That was something that went
15 through the chief of staff and then to the associate
16 director.
17     Q.  So you contacted the chief of staff and the
18 associate director before you approved it?
19     A.  Well, I had to get their approval for them to
20 go on the educational program, and then I could approve
21 the AA.
22     Q.  I see.  Okay.
23     A.  I mean, I guess if you're asking -- well, go
24 ahead.
25     Q.  Go ahead.  What were you going to say?

Executive Reporting Service

Electronically signed by Angeli English (401-150-385-1786)
Electronically signed by Angeli English (401-150-385-1786)

b751f759-eb7e-4ef5-b622-6c8dea5db6c2

Page 21

1      A.  I guess if you were asking any other time that
2   I can recall ever going above my head to get approval,
3   would have been during 2020 and 2021.  During COVID, we
4   had to send memos to the chief of staff, then to the
5   director for approval for giving out leave involved
6   with COVID.  And we did have to do memos for that.
7      Q.  Prior to --
8      A.  That's the only time -- that's the only time
9   I've ever really done that.
10     Q.  Okay.  Prior to that time, did you have the
11  authority to give the leave?
12     A.  I could grant AA, yes.  But the supervisors
13  can also grant AA.
14     MR. MAGRI:  Okay.  Now the -- I'm going to
15  take a brief break here.  And I'm -- I believe I'm
16  close to done.  So but I'm going to take a brief
17  break and check some notes.  Okay.
18     THE WITNESS:  Okay.
19     (Off the record.)
20  BY MR. MAGRI:
21     Q.  Okay.  I do have another question for you,
22  Dr. Wilson.
23     A.  Sure.
24     Q.  You said you went to regional counsel because
25  the matter was now outside the facility.  Is that what

Page 22

1   you said?
2      A.  Well, to me, my understanding was that it was
3   now being in regional counsel's hands as a case that
4   was being tried.
5      Q.  Okay.  So what you meant is because it was in
6   regional counsel's hands to try --
7      A.  Right.
8      Q.  -- you went to ask regional counsel, correct?
9      A.  Yes.
10     Q.  And the -- have you -- have there been any
11  other EEO cases in your service that have been to --
12  well, let me step back.  When you say it was in
13  regional counsel's hands, the case was in federal court
14  at that point, correct?
15     A.  Right.
16     Q.  But you treated it as being in regional
17  counsel's hands?
18     A.  So I mean, I'm not -- I'm not a lawyer or
19  attorney or anything like that.  That's just how I
20  looked at it.
21     Q.  All right.  The -- did you have any other case
22  or cases that had been in federal court that involved
23  your service?
24     A.  Yes.
25     Q.  What were they?

Page 23

1      A.  That was the Trask Truitt case.
2      Q.  Okay.  And you indicated that you -- you
3   indicated that you did not contact regional counsel in
4   that case, correct?
5      A.  That's correct.
6      Q.  And the reason for that was that the
7   supervisors had approved leave?
8      A.  That's what -- would be my understanding.  I
9   don't -- I was never asked by the supervisors like I
10  was by Dr. Combs, and that was the reason I went and
11  did what I did.  In the other case, I didn't get
12  requests on Dr.- -- the Trask Truitt case.
13     Q.  Who's Amanda Schmig?
14     A.  Amanda Schmig?
15     Q.  Yes.
16     A.  She -- okay.  She's had various roles within
17  the service.  She started out as a resident at Bay
18  Pines and then she went to a supervisory position.
19     Q.  And when did she become a supervisor?
20     A.  Okay.  I can't give you an answer on that one.
21  I don't recall.
22     Q.  Do you know who she -- who she supervised?
23  What area?
24     MR. KENNETH:  Object to the form.
25     A.  She was in management positions of different

Page 24

1   areas so I'm not sure.
2   BY MR. MAGRI:
3      Q.  You remember when she became a manager?
4      A.  No.
5      Q.  Do you recall what areas -- or what areas can
6   you recall that she was a supervisor?
7      A.  Okay.  She was over -- at one point she was
8   over the former economic team with cost avoidance.
9   Okay.  And I'm trying to think what else she was over.
10  She was -- you try to forget all these things as you
11  get older.  That one I do know but that's -- I can't --
12  I don't know.  I'll be honest with you.
13     Q.  But whoever the supervisor of Truitt and Trask
14  were, they had the authority to grant AA, correct?
15     A.  Sure.
16     Q.  Did you send out any memos to any of your
17  supervisors, after regional counsel made this decision,
18  advising the supervisors that in the future AA should
19  not be given any cases that are in federal court?
20     A.  I can't recall if I did or did not.
21     Q.  So it's something you may have done?
22     A.  I don't know, Mr. Magri.
23     Q.  Can you think of a reason why you wouldn't
24  have done that?
25     MR. KENNETH:  Object to the form.

6  (Pages 21 to 24)

Electronically signed by Angeli English (401-150-385-1786)
Electronically signed by Angeli English (401-150-385-1786)                                    b751f759-eb7e-4ef5-b622-6c8dea5db6c2

Page 25

```
1        A. I can't think of a reason why.
2   BY MR. MAGRI:
3        Q. Would there be a record -- would you have done
4   that in writing or would this have been oral?
5        A. Once again, how I did it, if I did it, I don't
6   recall.
7        Q. Okay.  I'm asking this question because you've
8   just been told by -- you testified that you were just
9   told in 2016 by a regional counsel attorney not to give
10  AA to someone who was seeking it for depositions that
11  were in federal court, correct?
12       A. Right.  Uh-huh.
13       Q. And yet you knew that in the Trask and Truitt
14  case, AA had been granted for depositions, correct?
15       A. I didn't -- I wasn't involved in it.  But, of
16  course, I know they did get AA because of all that's
17  been said.
18       Q. Okay.  Now so did you have a desire to make
19  sure that could not happen in the future?
20       A. No.  No, no.
21       Q. You -- did you have a desire to make sure that
22  supervisors didn't make the mistake of giving AA in the
23  future?
24       A. No.  It had nothing to do with that.
25       Q. And can you think of a reason why that
```

Page 26

```
1   wouldn't have been something you wouldn't have wanted
2   to address?
3        MR. KENNETH:  Object to form.
4        A. I'm not sure how I'm following you on that
5   question.
6   BY MR. MAGRI:
7        Q. Well, let me ask it slightly differently.  If
8   you found out that something was improper and you also
9   knew that supervisors had done that something in the
10  past, even though you weren't involved, wouldn't you
11  have had a desire to make sure that it didn't occur in
12  the future?
13       MR. KENNETH:  Object to form.
14       A. I guess, yes.
15  BY MR. MAGRI:
16       Q. So I ask again:  Did you communicate to the
17  other supervisors what Ms. Burton had said to you?
18       A. I would -- I can't give you an exact answer on
19  that.  I would assume that I would have done something
20  or either of the associate chiefs would have done
21  something.  But I can't tell you how it would have
22  gotten communicated.
23       Q. Well, can you tell me it was communicated?
24       A. I can't because I don't recall.
25       MR. MAGRI:  Okay.  Thank you.  I have no other
```

Page 27

```
1   questions.
2        MR. KENNETH:  I have no questions.  We'll
3   read.
4        COURT REPORTER:  Okay.
5        MR. MAGRI:  We're going to order.
6        COURT REPORTER:  Okay.  That screen share you
7   did of that document, that's not being attached as
8   an exhibit, correct?
9        MR. MAGRI:  We'll put it as -- we'll put it in
10  as Exhibit 1.
11       MR. KENNETH:  No objection to that.
12       COURT REPORTER:  Okay.
13  (Exhibit No. 1 was marked for identification.)
14       (Said deponent wished to read and sign the
15  deposition, and the taking of this deposition was
16  concluded at 2:21 p.m.)
17
18
19
20
21
22
23
24
25
```

Page 28

```
1              CERTIFICATE OF OATH
2
3   STATE OF FLORIDA
4
5   COUNTY OF PINELLAS
6
7        I, the undersigned authority, certify that
8   GARY WILSON appeared remotely via videoconference
9   before me on May 26th, 2022, and was duly sworn.
10       WITNESS my hand and official seal this
11  10th day of June, 2022.
12
13
14
15            Angeli English, FPR
16
17
18
19
20
21
22
23
24
25
```

7 (Pages 25 to 28)

Executive Reporting Service

Page 29

| | |
|---|---|
| 1 | CERTIFICATE OF COURT REPORTER |
| 2 | |
| 3 | STATE OF FLORIDA |
| 4 | |
| 5 | COUNTY OF PINELLAS |
| 6 | I, Angeli English, FPR, Court Reporter, |

CERTIFICATE OF COURT REPORTER

STATE OF FLORIDA

COUNTY OF PINELLAS

1  
2  
3  
4  
5  
6      I, Angeli English, FPR, Court Reporter,  
certify that I was authorized to and did  
7  stenographically report the videoconference deposition  
of GARY WILSON; that a review of the transcript was  
8  requested; and that the transcript is a true and  
correct record of my stenographic notes.  
9  
10      I FURTHER CERTIFY that I am not a relative,  
employee, or attorney, or counsel of the parties, nor  
11  am I a relative or employee of any of the parties'  
attorney or counsel connected with the action, nor am I  
12  financially interested in the action.  
13      DATED this 10th day of June, 2022.  
14  
15  
16  
17  
18      _____  
Angeli English, FPR  
19  
20  
21  
22  
23  
24  
25  

---

Page 30

1  IN RE: DEPOSITION OF: GARY WILSON TAKEN: 5/26/2022  
IN THE CASE OF NORIS BABB VS DENIS MCDONOUGH,  
2  SECRETARY, DEPARTMENT OF VETERANS AFFAIRS,  
ERRATA SHEET  
3      DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES  
-----------------------------------------------  
4  Page No.  Line No.  Change        Reason  
-----------------------------------------------  
5  _____  
6  _____  
7  _____  
8  _____  
10 _____  
11 _____  
12 _____  
13 _____  
14 _____  
15 _____  
16 _____  
17 Under penalties of perjury, I declare that I have read  
the foregoing document and that the facts stated in it  
18 are true.  
19  
20 DATE            GARY WILSON  
21              (AE 6855)  
22 ORIG: Michael R. Kenneth, Esquire, U.S.A.O. Middle  
District of Florida, 400 N Tampa Street,  
Suite 3200, Tampa, Florida 33602-4798  
23 CC:  Joseph D. Magri, Esquire, Merkle & Magri, P.A.,  
5601 Mariner Street,      Suite 400, Tampa,  
24 Florida 33609  
25  

---

Page 31

1      Executive Reporting Service  
13555 Automobile Boulevard, Suite 130  
2          Clearwater, Florida 33762  
(727) 823-4155  
3  
4          June 13, 2022  
5  Michael R. Kenneth, Esquire  
U.S.A.O. Middle District of Florida  
400 N Tampa Street  
6  Suite 3200  
Tampa, Florida 33602-4798  
7  
Re: NORIS BABB vs. DENIS MCDONOUGH, SECRETARY,  
8  DEPARTMENT OF VETERANS AFFAIRS,  
9  Dear Mr. Kenneth:  
10      The deposition of GARY WILSON taken on May 26th,  
2022, in the above-styled case is ready for review.  
11  Please have your client make an appointment to review  
the transcript in our office.  
12      In the alternative, if you have ordered a copy of  
the transcript and will be handling reading and  
13  signing, have your client note any corrections on the  
errata sheet provided.  
14      The review must be completed on or before July 13,  
2022, and the errata sheet returned to:  Executive  
15  Reporting Service, Suite 130, 13555 Automobile Boulevard,  
Clearwater, Florida 33762, so it may be included with  
16  the original transcript.  
17      Please contact our office if there are any  
questions you may have.  Thank you for your prompt and  
careful attention to this matter.  
18  
19          Sincerely,  
20  
21      Executive Reporting Service  
(AE 6855)  
22  
23 ORIG:  Joseph D. Magri, Esquire, Merkle & Magri, P.A.,  
5601 Mariner Street, Suite 400, Tampa, Florida 33609  
24  
25  

Electronically signed by Angeli English (401-150-385-1786)
Electronically signed by Angeli English (401-150-385-1786)                                      b751f759-eb7e-4ef5-b622-6c8dea5db6c2

**A**

**AA** 5:17 6:3
  11:9,18 12:2
  13:6,11,15
  17:24 18:2
  20:2,7,9,21
  21:12,13 24:14
  24:18 25:10,14
  25:16,22
**above-styled**
  31:10
**accurate** 10:18
**action** 29:11,11
**activity** 14:16,22
  14:25 15:2,5
  15:15 16:6,16
**address** 26:2
**adduced** 4:3
**advice** 7:14,19
  8:1
**advising** 24:18
**AE** 30:20 31:21
**Affairs** 1:8 2:14
  30:2 31:8
**affidavit** 8:11,13
  9:1
**afternoon** 4:9,10
  18:22
**ago** 19:12
**ahead** 6:19 7:7,9
  9:19 11:25
  13:25 20:24,25
**AIB** 15:21,23
  16:10
**AL** 6:3 18:2,4,11
  18:18 20:2
**alternative**
  31:12
**Amanda** 23:13
  23:14
**Angeli** 1:18
  28:15 29:6,18
**Anita** 5:4
**annual** 13:3
  17:24
**answer** 5:22
  10:16,17,22

11:14,25 12:5
  14:13,13,18
  15:13 19:6,13
  23:20 26:18
**answers** 9:5
  10:13
**anybody** 7:15
**apologize** 8:25
**APPEARAN...**
  2:1
**appeared** 28:8
**appointment**
  31:11
**appreciate** 7:13
**approval** 20:19
  21:2,5
**approvals** 20:9
**approve** 20:7,20
**approved** 20:18
  23:7
**approximately**
  14:19 15:17
**April** 15:21
**area** 5:16 7:21
  23:23
**areas** 7:25 24:1
  24:5,5
**asked** 12:24
  14:14 17:21
  23:9
**asking** 4:12 8:2
  8:23 12:1,15
  12:25 15:1
  17:12 20:23
  21:1 25:7
**associate** 20:15
  20:18 26:20
**assume** 18:6
  26:19
**assumption** 18:8
**attached** 27:7
**attend** 11:9,18
  13:11,15
**attention** 31:17
**attorney** 1:11
  2:6,12,17,23
  22:19 25:9
  29:10,11

**Attorney's** 2:19
**attorney-client**
  11:23
**authority** 21:11
  24:14 28:7
**authorized** 29:6
**Automobile**
  1:19 31:1,15
**avoidance** 24:8
**aware** 11:17,21
  13:23,24 14:1
  14:4,9,15 15:5
  15:14

**B**

**Babb** 1:4 4:11
  5:1 15:2 16:7
  16:16 20:7
  30:1 31:7
**Babb's** 5:12,13
  5:25 8:13
  12:22 14:10
  16:23
**back** 12:6 14:10
  17:25 18:11,18
  19:25 22:12
**Barton** 17:25
**basis** 18:12
**Bates** 3:13
**Bay** 2:15 4:22
  23:17
**believe** 4:25
  12:18 17:17
  18:5 20:5
  21:15
**better** 16:22,22
  17:4
**Boulevard** 1:19
  31:1,15
**Box** 2:15
**break** 21:15,17
**brief** 21:15,16
**Burton** 17:21
  19:19 26:17

**C**

**C.W** 2:14
**call** 17:17,19,20

18:5,7,11
**calls** 18:21
**careful** 31:17
**Carolyn** 6:1
**case** 1:3 5:12,17
  6:12,14 7:11
  8:13,19,20,22
  9:2 11:7,19
  12:9,16,19,22
  12:22 13:4,12
  13:16 14:10,24
  15:1 16:23
  22:3,13,21
  23:1,4,11,12
  25:14 30:1
  31:10
**cases** 5:14 11:9
  22:11,22 24:19
**causes** 5:15
**CC** 30:23
**Center** 2:14
**certain** 5:9
**CERTIFICA...**
  3:5,6 28:1 29:1
**certify** 28:7 29:6
  29:9
**change** 19:16
  30:4
**CHANGES** 30:3
**check** 6:25 7:5
  21:17
**chief** 4:22 20:15
  20:17 21:4
**chiefs** 26:20
**claims** 5:7
**clarification**
  4:14
**clarity** 8:16
**clear** 8:23,25
**Clearwater** 1:20
  31:2,15
**client** 31:11,13
**close** 21:16
**Combs** 6:1
  17:22 18:18
  19:20,23 23:10
**Commencing**
  1:13

**communicate**
  26:16
**communicated**
  26:22,23
**communicatio...**
  11:24
**Complainant's**
  14:15,22 15:15
**complaint** 9:4
**completed** 31:14
**Concerning**
  14:24
**concluded** 27:16
**confused** 9:13
  15:8
**connected** 29:11
**contact** 6:4,7
  10:22,23 17:11
  23:3 31:16
**contacted** 11:1
  11:10,12 12:23
  14:4 17:10
  20:12,17
**conversations**
  19:7,18
**copy** 9:9 10:7
  31:12
**correct** 5:7,8,10
  5:11 10:14
  14:19,20 15:15
  20:4,5 22:8,14
  23:4,5 24:14
  25:11,14 27:8
  29:8
**corrections**
  31:13
**cost** 24:8
**counsel** 2:15 6:4
  6:7,10,13 7:9
  7:11,17,20
  12:23 13:1
  17:10,11,20
  18:19 20:1
  21:24 22:8
  23:3 24:17
  25:9 29:10,11
**counsel's** 22:3,6
  22:13,17

**COUNTY** 28:5
29:5
**course** 25:16
**court** 1:1 3:6
11:19 22:13,22
24:19 25:11
27:4,6,12 29:1
29:6
**COVID** 21:3,6
**Culpepper** 2:2
9:23
**current** 5:17
**currently** 4:18

**D**

**D** 2:2 3:1 30:23
31:22
**date** 1:12 17:3
30:19
**DATED** 29:12
**dates** 16:2
**day** 18:22 28:11
29:12
**days** 18:24
**Dear** 31:9
**decision** 6:5
24:17
**declare** 30:17
**Defendant** 1:9
2:12,17,23
**definitely** 5:2
**denial** 5:17
13:15
**denied** 13:3,11
**DENIS** 1:7 30:1
31:7
**DEPARTME...**
1:8 30:2 31:8
**deponent** 27:14
**depos** 11:9,18
**deposed** 16:23
17:5
**deposition** 1:6
3:2 13:11,15
13:19 27:15,15
29:7 30:1
31:10
**depositions** 6:3

17:23 25:10,14
**Dept** 2:14
**describe** 10:18
**Description** 3:12
**desire** 25:18,21
26:11
**details** 8:4 16:10
**different** 11:7
12:22 15:11
23:25
**differently** 26:7
**DIRECT** 3:4 4:7
**directly** 7:16
**director** 20:16
20:18 21:5
**discuss** 19:24
**discussed** 17:19
**District** 1:1,1
2:8 30:22 31:5
**DIVISION** 1:2
**document** 27:7
30:17
**Donna** 5:3
**Dr** 4:11 5:1,3,12
5:13,22,25
8:13 11:24
12:22 13:3,3
13:16 14:10
15:2 16:16,23
17:22 18:18
19:20,23 20:7
21:22 23:10
**Dr.-** 23:12
**Drs** 11:6,8,17
16:6 19:9
**duly** 4:3 28:9

**E**

**E** 3:1
**early** 20:3
**economic** 24:8
**education** 20:10
**educational**
20:20
**EEO** 5:6 9:3,7
10:19 11:2
14:15,22,25
15:2,5,15 16:6

16:15,16 22:11
**either** 11:6
26:20
**email** 5:25 12:24
19:21,25
**emails** 16:15
**employed** 4:17
**employee** 8:5
29:10,10
**employee's** 20:7
**English** 1:18
28:15 29:6,18
**ENTER** 30:3
**errata** 3:7 30:2
31:13,14
**Esquire** 2:2,2,8
2:13,19 30:21
30:23 31:4,22
**event** 8:24
**events** 5:24
16:22
**exact** 12:5 16:10
26:18
**exactly** 19:14
20:1
**Examination**
1:17 3:4 4:7
**execution** 3:7
**Executive** 1:19
31:1,14,20
**exhibit** 27:8,10
27:13
**EXHIBITS** 3:11
**experience** 7:12
**extent** 11:6,8

**F**

**facility** 5:7
21:25
**facility's** 10:19
**fact** 7:10 16:14
**facts** 30:17
**familiar** 5:18
16:13,14
**far** 12:6 16:9
**February** 20:3
**federal** 11:19
22:13,22 24:19

25:11
**feel** 4:14
**financially**
29:11
**find** 6:1
**first** 4:3 9:25
**Florida** 1:1,20
2:4,8,10,15,21
28:3 29:3
30:22,22,24
31:2,5,6,15,23
**focus** 5:14
**following** 9:19
10:4 26:4
**follows** 4:5
**foregoing** 30:17
**forget** 24:10
**form** 5:21,23
6:19 7:2,7,22
7:23 8:14
11:11 13:5,25
14:6 15:7 16:8
16:17 19:10
20:8 23:24
24:25 26:3,13
**former** 24:8
**forwarded** 3:7
**found** 26:8
**FPR** 1:18 28:15
29:6,18
**front** 16:19 19:4
**FURTHER** 29:9
**future** 24:18
25:19,23 26:12

**G**

**GARY** 1:6 3:2
4:2 28:8 29:7
30:1,19 31:10
**General** 2:15
**getting** 8:7
**give** 4:15 8:4
9:23 11:14
12:5 15:24
16:4 19:6,13
21:11 23:20
25:9 26:18
**given** 7:14 10:14

25:11
**feel** 4:14
**financially**
29:11
**find** 6:1
**first** 4:3 9:25
**Florida** 1:1,20
2:4,8,10,15,21
28:3 29:3
30:22,22,24
31:2,5,6,15,23
**focus** 5:14
**following** 9:19
10:4 26:4
**follows** 4:5
**foregoing** 30:17
**forget** 24:10
**form** 5:21,23
6:19 7:2,7,22
7:23 8:14
11:11 13:5,25
14:6 15:7 16:8
16:17 19:10
20:8 23:24
24:25 26:3,13
**former** 24:8
**forwarded** 3:7
**found** 26:8
**FPR** 1:18 28:15
29:6,18
**front** 16:19 19:4
**FURTHER** 29:9
**future** 24:18
25:19,23 26:12

12:20 14:12
24:19
**giving** 8:11,12
9:1 19:14 21:5
25:22
**go** 5:16 6:19 7:7
9:19 10:10,10
11:24 13:25
14:13 20:20,23
20:25
**going** 4:25 5:14
6:3 9:24 11:7,7
11:22 12:9,17
20:25 21:2,14
21:16 27:5
**Good** 4:9,10
**gotten** 7:20
17:22 26:22
**grant** 21:12,13
24:14
**granted** 17:23
25:14
**group** 6:17,25
**guess** 17:6 19:14
20:23 21:1
26:14
**guidance** 6:15

**H**

**hand** 28:10
**handling** 6:14
7:14 31:12
**hands** 6:10 22:3
22:6,13,17
**happen** 18:21
25:19
**happened** 7:16
13:23 18:15
**happy** 4:15
**hard** 7:13
**head** 21:2
**helps** 15:12
**hold** 9:13,16
**honest** 6:22 11:4
15:8 24:12
**HR** 7:3,6,13,25
8:5,7 10:22,23
11:2,10 17:20

20:13

**I**

**identification**
    27:13
**identify** 10:1
**improper** 26:8
**inaccurate** 8:7
**included** 31:15
**INDEX** 3:11
**indicated** 23:2,3
**info-** 6:5
**information** 8:7
    16:18 18:1,3
**interactions** 8:5
**interested** 29:11
**interrogatory**
    9:3,5
**investigator** 9:7
**involved** 16:14
    21:5 22:22
    25:15 26:10
**involvement**
    13:14,21
**involves** 5:17

**J**

**January** 16:15
**jmagri@merk...**
    2:5
**Joseph** 2:2
    30:23 31:22
**July** 31:14
**June** 4:20 28:11
    29:12 31:3
**Justice** 19:20

**K**

**Karen** 2:13
**karen.mulcah...**
    2:16
**Kenneth** 2:8
    5:21 6:19 7:2,7
    7:22 8:14
    11:11,22 13:5
    13:9,25 14:6
    15:7 16:8,17
    19:10 20:8

23:24 24:25
    26:3,13 27:2
    27:11 30:21
    31:4,9
**Keri** 19:20
**kind** 6:2
**knew** 12:1,10
    14:21 25:13
    26:9
**know** 5:16,20
    13:2 14:3 16:1
    16:3,24,25
    17:2 23:22
    24:11,12,22
    25:16
**knowledge**
    12:10,12 14:7
    15:2

**L**

**L** 2:13
**lawyer** 22:18
**leave** 6:2,17,18
    6:25 7:1 8:6,8
    8:20,22 11:2
    11:13 13:4
    17:23,24 18:18
    19:19 21:5,11
    23:7
**legal** 6:14
**let's** 10:10,10
**LETTER** 3:8
**level** 6:13 7:10
**Line** 30:4
**little** 9:13 13:18
**local** 6:13 7:10
**long** 4:24 18:20
    19:12
**longer** 7:10
**look** 9:11 10:11
**looked** 22:20
**looking** 9:20
    10:7

**M**

**Magri** 2:2,3 3:4
    4:8,10 6:6,23
    7:4,18,24 8:2

8:15,17 9:21
    9:24 10:3
    11:16 12:3
    13:7,10 14:2,8
    15:10 16:2,12
    16:20,25 19:17
    20:11 21:14,20
    24:2,22 25:2
    26:6,15,25
    27:5,9 30:23
    30:23 31:22,22
**Mamie** 2:19
**mamie.wise@...**
    2:22
**management**
    5:10 23:5
**manager** 24:3
**manner** 17:9,15
**Mariner** 2:3
    30:23 31:23
**marked** 27:13
**matter** 11:2
    18:24 21:25
    31:17
**matters** 7:14
**MCDONOUG...**
    1:7 30:1 31:7
**Meagan** 2:2
    9:21
**mean** 6:21 8:3
    8:15,20 9:3
    13:6 20:23
    22:18
**Meaning** 6:11
    6:12
**meant** 8:20,21
    22:5
**Medical** 2:14
**memory** 16:21
    17:4
**memos** 21:4,6
    24:16
**mention** 11:8
**Merkle** 2:3
    30:23 31:22
**Michael** 2:8
    13:8 30:21
    31:4

michael.kenne...
    2:11
**Middle** 1:1 2:8
    30:21 31:5
**minute** 19:12
**mistake** 25:22
**Mulcahy** 2:13

**N**

**N** 2:9,20 3:1
    30:22 31:5
**names** 11:8
**need** 4:14 9:24
**negative** 7:15
**never** 23:9
**Noris** 1:4 4:11
    30:1 31:7
**Normally** 7:3
**note** 31:13
**notes** 21:17 29:8
**Notification**
    14:18
**Number** 3:12
    10:11,12
**numerous** 11:18

**O**

**oath** 3:5 4:4
    10:14 28:1
**object** 5:21 6:19
    7:2,7,22,22
    8:14 11:11,22
    13:5,25 14:6
    15:7 16:8,17
    19:10 20:8
    23:24 24:25
    26:3,13
**objecting** 5:23
**objection** 27:11
**occasion** 20:6
**occur** 26:11
**occurred** 5:25
    18:17 20:3
**office** 2:15,19
    31:11,16
**official** 10:19
    28:10
**officials** 5:10

okay 4:15,16,19
    5:1,3,6,20 6:7
    6:16,20 8:6,10
    9:11,16,18,18
    10:2,7,10 11:1
    11:6,12,21
    12:1,8,15,20
    13:23 14:3,9
    14:11,21 15:4
    15:11,20 16:4
    16:9,13,21
    17:7,9,15,20
    18:8,15 19:7
    19:18,24 20:6
    20:12,22 21:10
    21:14,17,18,21
    22:5 23:2,16
    23:20 24:7,9
    25:7,18 26:25
    27:4,6,12
**older** 24:11
**Once** 25:5
**oral** 25:4
**order** 27:5
**ordered** 31:12
**ORIG** 30:21
    31:22
**original** 31:16
**ORM** 14:18
**outside** 21:25

**P**

**P.A** 2:3 30:23
    31:22
**p.m** 1:13 27:16
**page** 3:3,12 9:11
    9:22,25,25
    10:11 14:14
    15:16 30:4
**Pages** 3:13
**parties** 29:10
**parties'** 29:10
**penalties** 30:17
**people** 5:6 6:17
    6:24
**perjury** 30:17
**Pharmacy** 4:22
**phone** 17:17

18:5,6,10,21
**PINELLAS**
28:5 29:5
**Pines** 2:15 4:23
23:18
**PLACE** 1:14
**Plaintiff** 1:5,11
2:6
**PLAINTIFF'S**
3:11
**Please** 10:18
31:11,16
**point** 12:12
22:14 24:7
**policies** 7:1
**poor** 7:14,19 8:1
**posed** 12:25
**position** 4:24
23:18
**positions** 23:25
**positive** 19:11
**Post** 2:15
**potentially**
16:16
**preserve** 13:20
**previously** 11:1
16:23 17:4
**printed** 10:7
**prior** 14:15,22
14:22,25 15:2
15:5,5,15 21:7
21:10
**probably** 19:13
**problem** 13:9
**proceeded** 6:4
**process** 10:19
18:20
**program** 20:20
**prompt** 31:17
**provided** 31:13
**pull** 9:21,25
**put** 27:9,9

**Q**

**question** 6:21
8:22 10:17,22
11:25 12:25
13:19 14:14

15:4,8,13,16
17:2,3,21
21:21 25:7
26:5
**questioned** 4:4
**questions** 4:12
4:13 10:13
27:1,2 31:17

**R**

**R** 2:8 30:21 31:4
**read** 3:8 10:17
27:3,14 30:17
**reading** 31:12
**ready** 31:10
**real** 8:4
**really** 7:10
11:14 12:5
21:9
**reason** 6:9 12:21
12:23 23:6,10
24:23 25:1,25
30:4
**reasons** 7:8
**recall** 5:24 7:20
7:25 8:7,10,12
9:1 11:2,4,13
15:3,21,23
16:18 18:16,22
18:23 19:8
21:2 23:21
24:5,6,20 25:6
26:24
**receive** 18:3
**received** 5:25
11:18 18:1,10
18:10
**record** 4:11 8:12
21:19 25:3
29:8
**referred** 16:15
**reflects** 8:12
**regard** 7:19 8:6
8:8
**regards** 11:12
**regional** 6:4,7
6:10,13 7:9,11
7:17,20 12:23

13:1 17:10,11
18:18 20:1
21:24 22:3,6,8
22:13,16 23:3
24:17 25:9
**relative** 29:9,10
**remember** 5:1,3
12:7 16:10
18:6 19:14
24:3
**remotely** 28:8
**replied** 19:25
**report** 29:7
**Reporter** 3:6
27:4,6,12 29:1
29:6
**Reporting** 1:19
31:1,15,20
**represent** 4:11
**request** 6:17,24
17:22
**requested** 11:9
29:8
**requesting** 6:1
10:19
**requests** 20:10
23:12
**resident** 23:17
**responded** 18:17
**response** 18:14
**responsible** 5:9
**retire** 4:19
**retired** 4:18,21
**returned** 31:14
**reveal** 11:23
**review** 29:7
31:10,11,14
**right** 7:5 10:15
10:16,21,23
12:13,19 13:7
13:14 15:17,18
15:19 18:20
22:7,15,21
25:12
**ROI** 9:17,22
**roles** 23:16

**S**

**saying** 18:1,11
**Schmig** 23:13,14
**screen** 9:21 27:6
**seal** 28:10
**second** 9:23
**SECRETARY**
1:7 30:2 31:7
**see** 6:25 14:16
15:12 20:22
**seeking** 25:10
**send** 21:4 24:16
**sent** 12:24 19:21
19:22
**service** 1:19
22:11,23 23:17
31:1,15,20
**Services** 4:22
**share** 9:22 27:6
**sheet** 3:7 30:2
31:13,14
**sign** 3:8 27:14
**signature** 9:25
**signing** 31:13
**Sincerely** 31:18
**slightly** 26:7
**somebody** 6:16
**sorry** 10:9 12:6
12:11 16:2
17:1
**special** 6:20
**specific** 7:21,25
8:9 13:18 19:6
**specifics** 18:23
**spoke** 17:21
**staff** 20:15,17
21:4
**Stamped** 3:13
**started** 23:17
**STATE** 28:3
29:3
**stated** 16:11
30:17
**statement** 18:13
**States** 1:1 2:19
**stenographic**
29:8
**stenographica...**
29:7

**step** 22:12
**Stewart** 13:16
**Street** 2:3,9,20
30:22,23 31:5
31:23
**Suite** 1:19 2:4,9
2:20 30:22,23
31:1,6,15,23
**supervised**
23:22
**supervising**
19:16
**supervisor** 6:1
6:18 12:24
14:4 23:19
24:6,13
**supervisors**
11:15 19:8,15
21:12 23:7,9
24:17,18 25:22
26:9,17
**supervisory**
23:18
**sure** 5:24 6:21
8:11 9:18 17:7
18:6 19:5
21:23 24:1,15
25:19,21 26:4
26:11
**sworn** 4:4 15:20
15:24 16:4
28:9

**T**

**take** 6:2 17:18
18:21 21:15,16
**taken** 1:11,17
16:1 30:1
31:10
**talk** 6:18
**talking** 9:19
14:25
**Tampa** 1:2 2:4,9
2:10,20,21
30:22,22,23
31:5,6,23
**TB** 17:21 19:19
**team** 24:8

tell 5:20 10:18
   18:8,12 26:21
   26:23
terms 17:3
testified 4:4
   12:13 25:8
testimony 13:20
   15:21,24 16:4
Thank 13:8
   26:25 31:17
thing 18:17
things 24:10
think 8:25 13:5
   13:7 19:12
   24:9,23 25:1
   25:25
thought 12:21
three 5:6
time 1:13 6:10
   6:14 10:19
   12:9 13:2 15:1
   19:15,16,16
   20:7 21:1,8,8
   21:10
times 7:14 11:18
   16:2
today 4:12 5:15
told 18:14 20:1
   25:8,9
transcript 29:7
   29:8 30:3
   31:11,12,16
Trask 5:3 11:9
   11:17 13:3,16
   16:6 19:9 23:1
   23:12 24:13
   25:13
treated 22:16
trial 13:20
tried 22:4
true 29:8 30:18
Truitt 5:4 11:8
   11:17 13:3,16
   16:6 19:9 23:1
   23:12 24:13
   25:13
truthful 10:24
try 15:11 22:6

24:10
trying 24:9
two 5:13
type 17:23
typical 6:17

U
U.S 2:14
U.S.A.O 2:8
   30:21 31:5
Uh-huh 5:2
   10:15 11:20
   14:17 25:12
undersigned
   28:7
understand 4:14
   6:21
understanding
   22:2 23:8
Unfortunately
   8:2
United 1:1 2:19

V
V 2:19
various 23:16
Veterans 1:8
   2:14 30:2 31:8
videoconference
   1:14 28:8 29:7
vs 1:6 30:1 31:7

W
want 8:11 13:18
wanted 26:1
wasn't 11:12
   13:24 14:1
   19:1 25:15
way 15:11
we'll 27:2,9,9
we're 5:15 27:5
went 6:13 7:8,8
   7:9,16 15:22
   20:14 21:24
   22:8 23:10,18
weren't 15:6
   26:10
Wilson 1:6 3:2

4:2 5:22 11:24
   21:22 28:8
   29:7 30:1,19
   31:10
Wise 2:19
wished 27:14
witness 1:17 4:3
   4:6 10:2 11:23
   21:18 28:10
work 7:13
wouldn't 24:23
   26:1,1,10
WRITE 30:3
writing 25:4
written 9:3,5

X
X 1:4,10 3:1

Y
Yeah 5:11 9:23
   10:5 13:7
   16:25 20:9
years 4:25
Young 2:14

Z
Zoom 4:12

0
000119 3:13
   10:6
000120 3:14
   9:17,22
00120 9:11,14

1
1 3:13 27:10,13
1:30 1:13
10 4:25
10th 28:11 29:12
11 4:25
119 10:8
120 10:8,11
   15:16
13 31:3,14
130 1:19 31:1,15
13555 1:19 31:1
   31:15

14 14:19 15:5,17
   15:17

2
2:21 27:16
2013 14:19 15:5
   15:18 16:15
2016 20:3 25:9
2020 21:3
2021 4:20 21:3
2022 1:12 28:9
   28:11 29:12
   31:3,10,14
26th 1:12 28:9
   31:10
27 3:13
28 3:5
29 3:6

3
30 3:7
30th 4:20
31 3:8
3200 2:9,20
   30:22 31:6
33602-4798 2:10
   2:21 30:22
   31:6
33609 2:4 30:24
   31:23
33744-5005 2:15
33762 1:20 31:2
   31:15

4
4 3:4
400 2:4,9,20
   30:22,23 31:5
   31:23

5
5/26/2022 30:1
5005 2:15
516/02 2:14
5601 2:3 30:23
   31:23

6
6 14:14 15:16

6855 30:20
   31:21

7
727 31:2
727-398-6661
   2:16

8
8 10:11,12
8:20-CV-2825...
   1:3
813-274-6000
   2:10,21
813-281-9000
   2:5
823-4155 31:2

9

# EXHIBIT J

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NORIS BABB

      Plaintiff,

v.                                                                    Case No. 8:20-CV-2825-T-35CPT

DENIS MCDONOUGH, Secretary,
Department of Veterans Affairs,

      Defendant.

## **DECLARATION OF DEBORAH K. MCCALLUM**

Pursuant 28 U.S.C. § 1746, I, Deborah K. McCallum, Senior EEO Attorney-Advisor for the Personnel Law Group for the Office of the General Counsel for the Department of Veterans Affairs, declare under penalty of perjury as follows:

1.    When Tanya "T.B." Burton called for legal advice about whether there was any authorization to grant administrative leave to an employee to attend others' depositions in his or her EEO case in federal court, Ms. Burton did not provide any information about whether others at the Bay Pines VA had previously received authorized absence in similar circumstances, nor did I ask.

2.    If I had been aware that others at the Bay Pines VA had previously received authorized absence in similar circumstances, my advice would have been the same: that there is no authorization for authorized absence.

Executed on June <u>29</u>, 2022.

*Deborah K. McCallum, Esq.*
Deborah K. McCallum

# EXHIBIT K

**Sigilai, Kiprono (ORM)**

| | |
|---|---|
| **From:** | Babb, Noris <Noris.Babb@va.gov> |
| **Sent:** | Friday, February 12, 2016 12:32 PM |
| **To:** | Combs, Carolyn C. |
| **Subject:** | RE: depositions |

Carolyn, I've entered the AL for the depos for next week. I'll be in 7am-9am and work on pendings and rescheduling of patients. Nothing is going to start until 9am, so I entered my leave from 9-4:30. Please note that I will be taking a lunch break as usual.

Also, I have confirmed that my own deposition has been scheduled for 2/26.
At this time I'm not sure of the length, I'll enter that leave next week.
Please close the grids for B-D on that day as well.

Thanks for your support and during this time, Noris

-----Original Message-----
From: Babb, Noris
Sent: Friday, February 05, 2016 11:26 AM
To: Combs, Carolyn C.
Subject: RE: depositions

Thanks, I will enter it today.

-----Original Message-----
From: Combs, Carolyn C.
Sent: Friday, February 05, 2016 11:08 AM
To: Babb, Noris
Subject: RE: depositions

Noris,

Good Morning! I have received guidance from the VA and the type of leave to use for 2/16, 2/18, and 2/19 is AL. If you enter, I will approve.

Please don't hesitate to reach out if you have questions/concerns.

Thank you,

Carolyn Combs, PharmD, MBA
Pharmacy Supervisor, Clinical Services
Bay Pines VAHCS


-----Original Message-----
From: Babb, Noris
Sent: Wednesday, February 03, 2016 3:24 PM
To: Combs, Carolyn C.
Subject: RE: depositions

Thanks Carolyn. I have vacation in one month, praise God. :)

-----Original Message-----

# EXHIBIT L

DEPARTMENT OF VETERANS AFFAIRS
OFFICE OF RESOLUTION MANAGEMENT
William S. Moorhead Federal Building
1000 Liberty Avenue, Suite 1801
Pittsburgh, PA 15222

Written Interrogatory

In the Matter of the EEO Complaint of Discrimination of

Noris Babb                                )
                                          )
███████████████                           )
                                          )
Complainant                               )
                                          )
        v.                                )   Case No: **2001-0516-2016102804**
                                          )
Secretary                                 )
Department of Veterans Affairs            )
810 Vermont Avenue, NW                    )
Washington, DC  20420                     )
Respondent                                )
                                          )
Facility:    Bay Pines VA Healthcare System )
             Bay Pines, FL                )

The claim accepted for investigation is:

**Whether complainant was discriminated against based on reprisal (prior EEO
activity), when on February 16, 18, and 19, 2016, Chief Pharmacy Service Gary
Wilson (GW), denied the complainant administrative leave to attend management
depositions in her EEO civil suit.**

I, Dr. Noris Babb, solemnly swear/affirm that the information given in response to the
following questions is true and complete to the best of my knowledge and belief.

1. Please identify the facility where you are employed.

   C.W. Young VA

   a. When did you begin working at this facility

   February 2004

Initials: _MB_  1

b. What facility were you working at during the time of your complaint?

C. W. Young VA

2. Please identify your position and grade level at the time of the complaint.

Clinical Pharmacy Specialist GS 13-8

3. Who was your Supervisor at the time of the complaint?

Dr. Carolyn Combs
   a. When did you begin reporting to this person?

I cannot remember when she became my supervisor. On file at VA

4. Your EEO complaint includes a claim of reprisal. Please describe the event(s) that you believe the reprisal is based on?

Please see my initial answer to this question.

5. When did you request time off for the dates of February 16, 18, and 19, 2016?

Early February 2016

   a. Why did you request time off for these dates?

It was important for me to see what was being said by management officials in my EEO case. I requested time off to hear the depositions.

   b. What type of leave did you request?

Authorized Absence

   c. How was this request made?

In writing via email/VISTA system

   d. Who was the request made to?

Carolyn Combs

   e. What response did you receive?

That Authorized Absence was not approved and that I would have to take Annual Leave.

      i. Who was the response from?

Initials: _MB_   2

Response was from Carolyn Combs

ii. What reason was given for the denial of the leave type you requested?

That AA was not to be used for me to attend the depositions and that I would have to take AL if I wished to attend. Dr. Combs stated she would approve AL.

6. Why do you believe that reprisal is the reason why you were made to take annual leave to attend management depositions for your civil court case?

I had been working in a hostile work environment since my testimony in Truitt/Trask. Management officials were able to attend using AA.

7. Please state the full names of all other employees in the Pharmacy Service at your facility who were allowed time off work to attend someone else's deposition, without having to use annual leave.

Robert Stewart, Marjorie Howard, Keri Justice, Gary Wilson, Camaro West-lee, administrative person from HR.

   a. Please state whether you are aware of each employee you list for #7 having engaged in prior EEO activity.

I am not aware of anyone listed above being engaged in EEO activity.

8. Please provide a copy of your leave request(s) made for February 16, 18, and 19, 2016.

I don't have any copies of my leave request.

   a. Please provide a copy all responses you received to your request(s).
I don't have any copies of the email responses.

The above information has furnished without a pledge of confidence and I understand that it may be shown to the interested parties of this complaint.

This statement is made under penalty of perjury, this _2_ day of _March_ 2017.

_Noris Babb_

(Dr. Noris Babb)

Initials: _NB_   3

# EXHIBIT M



**DEPARTMENT OF VETERANS AFFAIRS**
**OFFICE OF RESOLUTION MANAGEMENT**
William S. Moorhead Federal Building
1000 Liberty Avenue, Suite 1801
Pittsburgh, PA 15222

### Written Interrogatory

In the Matter of the EEO Complaint of Discrimination of

| | |
|---|---|
| Noris Babb | ) |
| ▮▮▮▮▮▮▮▮▮ | ) |
| | ) |
| Complainant | ) |
| | ) |
| v. | ) Case No: **2001-0516-2016102804** |
| | ) |
| Secretary | ) |
| Department of Veterans Affairs | ) |
| 810 Vermont Avenue, NW | ) |
| Washington, DC 20420 | ) |
| Respondent | ) |
| | ) |
| Facility:   Bay Pines VA Healthcare System | ) |
| Bay Pines, FL | ) |

The claim accepted for investigation is:

**Whether complainant was discriminated against based on reprisal (prior EEO activity), when on February 16, 18, and 19, 2016, Chief Pharmacy Service Gary Wilson (GW), denied the complainant administrative leave to attend management depositions in her EEO civil suit.**

I, Mr. Gary Wilson, solemnly swear/affirm that the information given in response to the following questions is true and complete to the best of my knowledge and belief.

1. Please identify the facility where you are employed.
   C. W. Bill Young VA Medical Center

   a. When did you begin working at this facility
      Jan 18, 1987

   b. What facility were you working at during the time of the complaint?
      C. W. Bill Young VA Medical Center

1

Initials: __GW____

2. Please identify your position and grade level at the time of the complaint.
Chief of Pharmacy, GS 15

3. Please describe your working relationship with the complainant at the time of the complaint.
Working relationship:  Good

4. Were you the complainant's supervisor at the time of the complaint?
No

5. Have you previously been involved in prior EEO activity?
Yes

6. When and how did you become aware of the complainant's prior EEO activity?
Notification from ORM on approximately May 14, 2013

7. Did you have a role in the complainant's prior EEO activity?
Named RMO

    a.  If so, please identify your role?

        RMO

    b.  Please indicate your knowledge of the status and outcome of the complainant's prior EEO activity.
Do not know.

8. Please describe your facility's process for requesting Official EEO time off?
Contact HR

9. What was your role in the denial of complainant's request(s) for time-off that did not deduct from her annual leave, to attend management depositions in February 2016?

2<br>Initials: __GW____

Consulted with Regional Counsel

    a. Why was complainant denied her request for leave that did not deduct from her annual leave to attend management depositions?
    Per advise from Regional Counsel

    b. What policy or procedure was used to determine it was acceptable to deny the request?
    Per advise from Regional Counsel

    c. Complainant has stated that evidence of discrimination is that other Pharmacy Service employees, including Robert Stewart, Marjorie Howard, Keri Justice, Camaro West-Lee, and yourself, were all granted time off work that did not deduct from annual leave, to attend depositions. How do you respond?
    Individuals were granted AA to attend their own depositions.

10. Did you consult with anyone regarding the complainant's request for time off that did not deduct from her annual leave to attend management depositions?
Yes

If yes,

    a. With whom did you consult?
    Regional Counsel

    b. When did you consult with this person(s)?
    On approximately Feb 5, 2016

    c. What was discussed?
    The type of leave authorized for the complainant to attend depositions other than her own.

    d. What was the outcome of the discussion(s)?
    Per Regional Counsel the type of leave to be submitted was AL.

11. Did you discuss the denial with the complainant?

3
Initials: __GW____

No
If yes,

    a.  When did you discuss it?

    b.  What was discussed?

    c.  What justification was provided to the complainant for the denial?

    d.  What was her response?

    e.  What was the outcome of the discussion?

12. Did you reprise against the complainant because of her prior EEO activity when the complainant was denied time off that did not deduct from her annual leave to attend management depositions for her EEO civil suit?
No

The above information has furnished without a pledge of confidence and I understand that it may be shown to the interested parties of this complaint.

This statement is made under penalty of perjury, this _14_ day of _March_ 2017.

_____
(Affiant's signature)

Initials: __GW____ 4