## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**NORIS BABB**
    **Plaintiff,**

**v.**                          **Case No.: 8:20-cv-2825-MSS-CPT**

**DENIS McDONOUGH, Secretary,**
**DEPARTMENT OF VETERANS AFFAIRS,**
    **Defendant.**
_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Noris Babb, by and through her undersigned attorneys, responds to Defendant Motion for Summary Judgment (MSJ).

This case involves denial of AA to attend depositions in federal court. Throughout discovery in the administrative stage and in federal court, the Defendant has sought to limit, to almost nothing, discovery of evidence about the history of plaintiffs taking AA in federal court despite its relevance to differential treatment. Written assertions of a planned motion to compel were followed by the first computer printouts of leave records being sent on January 10, 2022. Ex.A;Dkt.42-1pp27-31/42. As motions and an order followed, more leave records followed. *Id.* Significantly, the Defendant has presented <u>no evidence</u> that <u>any</u> VA employee has been denied AA to attend a federal court deposition regardless of whether it was their own or a third-party deposition prior to February 2016. Conversely, Plaintiff has provided evidence going

back to February 2008 (Ex.4; ¶7 *infra.*), that AA was always given except when the Babb defense attorneys and Pharmacy Service personnel denied AA to Drs. Donna Trask and Anita Truitt in <u>February 2015</u>. Exs.B,B1,C,C1. While the 2015 evidence impeached the Babb attorneys' story that the first time AA was rejected was when someone asked an attorney in February 2016 (MSJp.2), it does not change the dispositive fact that uncontradicted evidence establishes that previously there is <u>no evidence that any</u> VA employee who requested AA to attend a federal court deposition of themselves or other witnesses had that request denied. Conversely between 2008 and 2022 numerous employees received all or parts of 246 deposition days of AA. See ¶s7,8p.10-11;Exs.5-11. Stripped of pure speculation by the Defendant's attorneys, (MSJp2-3) the evidence produced shows differential treatment.[1] Subsequently, Rosa Sly was granted AA until Burton got involved and it was denied. ¶8,p10.

Importantly, there is a <u>written policy</u> in VAHC Memorandum 516-12-05-001, Hours of Duty and Leave of Absence establishing that AA is decided by supervisors who get advice from HR, and if not delegated down by the facility director, these decisions can go all the way to the Director. Ex.1p.000128-000138 particularly pp000131 and 138. The VA has provided no evidence that the facility Director does or does not approve these decisions and Service Chief Wilson admitted he was not involved in these decisions. Ex.Ep22:21-23:12. Without evidence Defendant's MSJ alleges individual supervisors at multiple facilities are making these decisions.

---

[1] The facts underscore the need for a true 30(b)(6) witness, or sanctions for not providing one, and the other discovery sought because the conduct in this case needs to be fully understood and enjoined.

(MSJpp2-3) That could only happen if the VA delegated decision-making authority to supervisors. <u>However, the important fact is that there is a written policy setting up a procedure to go through HRMS and ERLR, both parts of HR, which was not followed in this case</u>. Wilson admitted this was the policy. Ex.1p000120¶8. Instead, for reasons which the VA cannot credibly explain, Ms. Burton and it seems Mr. Kenneth became involved in 2015 and 2016 instead of HR and the consistent practice of authorizing AA for federal court depositions was not followed.

In a matter inherently involving consideration of EEO activity, Dr. Babb was treated differently than all other employees who requested AA to attend depositions, except Drs. Trask and Truitt in 2015, because both the written procedure and the resulting historic practice were not followed. *Babb v. Wilkie,* 140 S.Ct. 1168, 1171-74 (2020); *Babb v. Sec'y,* 992 F.3d 1193 (11th Cir. 2021).The MSJ should be denied.[2]

## The Defendant's MSJ
### I.    FACTS

¶A. Paragraphs 1,2,3,4,5,6,7,8, are admitted. ¶B. Plaintiff disputes paragraphs 9 to 12. Ex.1pp.000128-000138 is an official VA document and according to the VA's 30(b)(6) witness on Time and Leave records, Stefani Wacek, all supervisors are trained on leave. See Ex.F,p.18:5-19:2. Combs admitted taking this training but her memory is selective.Ex.Np8:5-13:4. No evidence has been produced of Dr. Combs' training or absence thereof. Except for one trial deposition in Truitt and Trask, in no previous

---

[2] If Babb prevails either after trial, or if additional discovery is provided, on her own MSJ, she will be entitled to prospective relief including an injunction against this retaliatory practice.

case where AA was requested has leave been denied or has a supervisor failed to follow VA leave procedures and sought the advice of HR <u>rather than an attorney</u>. With regard to Defendant's paragraph 17, remember that what happened in February 2015 occurred <u>before</u> Burton was supposedly in contact with Combs.[3] For paragraph 13, we admit that in his deposition Wilson testified he contacted Burton. Paragraph 14 is admitted.

¶C. Paragraphs 15 and 16 are disputed and ¶17 carries no favorable inference for the Defendant. In February 2015, Burton and Mr. Kenneth denied AA to Drs. Truitt and Trask. See Exs.B,B1,C,C1. Those exhibits contain 801d(2)(D) statements by supervisors that show both attorneys were involved in telling the supervisors <u>before Combs or McCallum</u>, that Truitt and Trask could not have AA. *Id.*

¶E. We admit that as stated in paragraph 18 Burton testified that she did not seek advice from HR. Ex.Gp50:2-51:17. However, we deny any other inference because it is inexplicable that an attorney or a service, interested in finding out an answer to a legitimate question would not have contacted HR when leave policy says contact HR. As a VA attorney, Burton must know this leave policy to opine on it. The only legitimate 30(b)(6) witness provided by the VA, Wacek, testified to the written policy and the procedure. Ex.Fp9:4-11:22;16:12-18:4. Facts show it resulted in a practice.

---

[3] Evidence shows Wilson and Combs did not contradict each other about who talked to Burton. Ex.1p.000105-106. Rather Burton contradicts Wilson and Combs. Combs' statement reflects she only spoke with Wilson. See e.g.*Id.;* Ex.1pp000105-106;p109¶11a-d;p.120-121¶s9-10.

¶F. Plaintiff disputes paragraph 19 because a year before February 2016 Burton and Mr. Kenneth, had denied AA to Truitt and Trask. Exs.B,B1,C,C1.

¶G. We admit McCallum has testified to what is in ¶20, but McCallum admitted leave is an HR function and she did not know or have any understanding of the actual written policy or procedure for obtaining AA. Ex.Ip9:13-11:12;21:12-22:8;24:25-29:12. McCallum also denied knowing about general federal litigation practice. *Id.* These admissions disqualify her as a 30(b)(6) witness, let alone an expert on these issues. *Id.* Wacek, the VA's other 30(b)(6) witness knew about those rules. She knew that supervisors know about them and that they were supposed to go to HR. Ex.Fp17:9-18:9. She was never contacted by Burton.[4]

¶H. Paragraph 21 is disputed. McCallum has no basis for giving advice to people without knowing what policies say about the subject and the resulting practice.

¶I. Paragraph 22 is either immaterial or it is disputed. McCallum's phone conversation with Burton was short because Burton had already made these decisions in the *Truitt* and *Trask* case and a jury can find she was likely looking for an independent decisionmaker defense like she attempted in the *Pamela Trimble* Case No. 8:13-cv-548-T-35TBM. In that case there was evidence Burton tried to create an independent witness out of a brand-new, fresh from the Army, Chief Nurse, Charles

---

[4] At the administrative stage, Burton stated on the record of a July 18, 2018 deposition that there was no 30(b)(6) witness available for VISN 8. Ex.Jp4-6. Nevertheless, the VA offered McCallum as a 30(b)(6) witness in this case. McCallum's legal theory is that, unlike MD-110, there is no authority for AA in Federal Court. The EEOC rejected that theory when it reinstated Babb's claim as discussed on pp8-9 below. See also *Kangethe v. District of Columbia,* 281 F Supp.3d 37, 42 (D.D.C. 2017).

Barnes. ExsK1,K2. Barnes also received selective information. ¶11, *infra.*

¶J. Paragraphs 20 and 23 do not present material facts but do include hearsay. As to paragraph 24, McCallum, like Barnes, was not told about all the many facts that an attorney decision maker should be told before they give an opinion. Had Burton told her she could have looked at evidence such as in ¶s7 and 8 on p.10 and 11.

¶K. Paragraph 25 involves a level of speculation which no attorney should give in answering the costly question of AA. Please note that Burton gave a statement to the ORM investigator that made no mention of McCallum. Ex.1p000106;000156. McCallum's name came up on September 29, 2021. Ex.M¶4p.4. First described in January 10, 2022 letter. Dkt.42-1p34 of 62.

¶L. Plaintiff admits that paragraph 27 reflects Wilson's testimony, paragraph 28 reflects what Combs did and paragraph 29 reflects what Plaintiff did. Paragraph 30 is true. Paragraph 31 is disputed because plaintiffs are required to attend trial, but Burton and Kenneth denied AA to Trask and Truitt to attend a <u>trial preservation</u> deposition. Exs.B,C. Larry Diehl attended the entire *Trimble* trial.

¶N. Paragraph 33 is admitted. ¶O. Paragraph 34 is admitted as partially true because there are other facilities in the areas where Burton has had cases including: Naples, Ex.Gp27:265-26:21. However, her credibility is a jury question.

¶P. In Tampa's James Haley, numerous Federal employees received AA to attend depositions of other witnesses in EEO cases. See ¶7p.7, below, pp.10-11. ¶Q. The first sentence of paragraph 36 is accurate but it leaves out that 109 days of AA were taken by the plaintiffs. See ¶7,infra. ¶R. As to the footnote on page 7 none of the

Atkinson plaintiffs sought AA because none of them attended other depositions. Ex.A¶4. There is no evidence that any were denied AA. Not all plaintiffs attend depositions of agency witnesses, but all who did were given AA before 2015.

¶S. Paragraphs 37, 38, 40, 41, 43, 44, 46, 47, 49, 50 are all admitted, but paragraphs 39, 42, 45, 48, 51 cannot be accepted as true given false exculpatory statements that Burton has already made in this case.[5]

¶T. The facts contained in paragraphs 52 and 53 are accurate and for paragraph 54 we would admit the first sentence. With regard to the second sentence Wilson so testified and that would follow if approval was delegated to lower-level supervisors. With regard to the third sentence, he was aware of AA use. He made false exculpatory statements of knowledge in Babb's underlying case. Civil Case No. 8:14-cv-01732-VMC-TBM;Dkt.127p.21-26/41. The rest is a jury question. If one looks at exhibits B and C, neither Burton or Kenneth went through the normal channels, but they told Truitt and Trask's supervisors that they could not give AA. *Id.* Wilson knew of it and likely told supervisors. Ex.Ep26:7-24.  ¶U.  Paragraph 55 is not a complete description of the retaliation against Sly. See ¶8 *infra*,p.11.

¶V.  Paragraphs 56 and 57 are admitted.

## II. OMITTED MATERIAL FACTS SPARATELY JUSTIFYING DENIAL OF THE MSJ

## UNDISPUTED FACTS
## UNDISPUTED FACTUAL PROCEDURAL BASKGROUND

---

[5] *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163-64 (11th Cir. 1993).

In Exhibit 1, the Report of Investigation (ROI) at p000071-000076, is the EEOC's decision in *Babb v. Robert McDonald, Secretary, Department of Veterans Affairs, Agency*, Appeal No., 0120162480, Agency No., 200I-0516-2016102804. The EEOC stated:

> At the time of events giving rise to this complaint, Complainant worked as a Clinical Pharmacist at the agency's C.W. Young Veterans Affairs Medical Center, Applied Health Services Pharmacy Service in bay Pines, Florida.
>
> On April 27, 2016, Complainant filed a formal complaint alleging that the Agency discriminated against her based-on reprisal for prior protected equal employment opportunity (EEO) activity under Title VII and the ADEA when on February 16, 2016, February 18, 2016, and February 19, 2016, it denied her official time to attend the depositions of management officials in her civil action EEO court case. Instead, she used annual leave. (Footnote Omitted.)
>
> The Agency dismissed the Complaint for failure to state a claim. It reasoned that a complaint regarding the denial of official time does not state a claim, rather it regards a violation of Equal Employment Opportunity Management Directive for 29 C.F.R. part 1614 (EEO MD-110), (Revised Aug. 5, 2015) and 29 C.F.R. § 1614.605, and the Commission has the authority to remedy a violation of its official time regulation without an EEO complaint being filed and investigated.
>
> On appeal, Complainant argues that her right to attend the depositions in pay status, administrative leave, or court leave for her civil action is protected by EEO law outside EEO Md-110. She argues that Agency supervisors were granted administrative or court leave to attend depositions.
>
> In opposition to the appeal, the Agency argues that there is no evidence that Agency supervisors were granted leave to attend depositions other than their own and that the FAD should be affirmed.
>
> ## ANALYSIS AND FINDINGS
>
> The Commission has a policy of considering reprisal claims with a broad view of coverage. See Carroll v. Department of the Army, EEOC Request No. 05970939 (April 4, 2000). Under Commission policy,

claimed retaliatory actions which can be challenged are not restricted to those which affect a term or condition of employment. Rather, a complainant is protected from any discrimination that is reasonably likely to deter protected activity. Equal Employment Opportunity Management Directive for 29 C.F.R. part 1614 (EEO Md-110), at 5-19 (Revised Aug. 5, 2015); <u>Carroll</u>.

While we agree with the Agency's position regarding official time in the administrative EEO complaint process, the official time language in 29 C.F.R. §1614.605 and EEO Md-110 only apply to the EEO administrative process governed by 29 C.F.R. part 1614, not to civil action proceedings in courts.

Accordingly, we view this case like any other where a Complainant alleges reprisal regarding the denial of being in pay status or denial of requested leave. In this case we find that this would reasonably likely deter EEO activity. Accordingly, the FAD is REVISED.

## ADDITIONAL UNDISPUTED FACTS

1.    Dr. Noris Babb had a Federal Court complaint Case No., 8:14-cv-1732-T-33TBM, alleging violation of Title VII.

2.    The parties stipulated through admissions that Dr. Babb was seeking Authorized Absence, official time, court time (all referred to as AA) to attend depositions in her Federal Court case. Ex.2p14¶9.

3.    The Agency denied Babb AA to attend depositions. She took three days of annual leave. Ex.1;ROI p.000100-000101,¶5. It cost her approximately $1500.00.

4.    There is no evidence substantiating that the Agency denial of Dr. Babb's request complied with existing leave and Agency policies. Ex.2p14¶12.

5.    In Ex.1, ROIpp.000105,106, the investigator provided statements and later in Ex.1, testimony provided by Carolyn Combs, Gary Wilson and Tanya Burton. It is clear that Wilson, Burton and Combs were aware of the Complainant's EEO

activity. *Id.*;Ex.1,ROIp.000120¶6. Wilson testified that Regional Counsel (Burton) told him that annual leave had to be taken. Ex.1,ROI p.000121¶'s9,10.

6.    Burton <u>admitted that she relied</u> on rules (MD-110) which apply exclusively to EEO Administrative Complaints to deny the Federal court request Ex.1,ROI p.000106;156. No mention of McCallum was made.

7.    Despite limited discovery, there have been numerous cases filed in Federal Court since 2007 to 2022 where plaintiffs have received in whole or in part 320 days of AA when they attended depositions (246), mediation, hearings or trials (74) in Federal Court. Ex.4. Among the cases in which this happened are:[6]

Cote, et al. v. Dept. of Veterans Affairs, 8:07-cv-01524-T-30 TBM (114 days of AA)*
Baroudi, Roula v. Dept. of Veterans Affairs, 8:11-cv-2587 and
8:14-cv-1099 (10 days of AA)
Patrick v. Dept. of Veterans Affairs, 8:11-cv-00466-RAL-AEP (3 days of AA)*
Mells, Mary v. Dept. of Veterans Affairs, 8:13-cv-3214-T-30TGW (3 days of AA)*
Trask, Truitt v. Dept. of Veterans Affairs, 8:13-cv-536-T-35TBM  (25 days of AA)*
Body, Kristine v. Dept. of Veterans Affairs, 8:13-cv-1215-T-33TGW(5 days of AA)*
Trimble v. Dept. of Veterans Affairs, 8:13-cv-0548-T-35TBM (30 days of AA)*
Byrd, Terrill v. Dept. of Veterans Affairs, 1:14-cv-93 MW/GRJ (10 days of AA)*
Tonkyro, et al. v. Dept. of Veterans Affairs, 8:16-cv-2419-T-36AEP(72 days of AA)*
Johnson, Karen v. Dept. of Veterans Affairs, 4:2016-cv-00420 (6 days of AA)
Sly Hollingsworth v. Dept. of Veterans Affairs, 8:17-cv-01868-AAS (6 days of AA)*
McLain v. Dept. of Veterans Affairs, 8:17-cv-1283-WFJ-CPT (18 days of AA)*
Bell v. Dept. of Veterans Affairs, 8:20-cv-1274-T-33CPT (5 days of AA)*

8.    Rosa Sly was given AA to attend depositions on 8 days March 18-22, 2019 and May 29-31, 2019. However, on June 18, 2019 Donna Griffin-Hall (DGH) the Chief of the Business Office and Burton attended a deposition of DGH. Sly was

---

[6] The cases with an asterisk were cases this firm handled. In Trimble, Cote and McLain plaintiffs received AA for 88 days of depositions and 74 days of trial.

present. In blatant reprisal on June 20, 2019, Sly had leave requests denied for May 29-31, 2019 and June 18, 2019. Ex.L1. On July 10, 2019 leave requests were denied for June 19, 2019, July 9 and 10, 2019. Marcia Powell talked to an HR person to get HR's after the fact agreement. The HR person refers back to Burton. Ex.L2.

9.      Burton knows that AA has been given in Federal Court proceedings because she was involved in several of these cases. See Defendant's MSJ paragraphs 37-51. Without mention of the 2015 denial of AA to Trask and Truitt, Burton claims not to have been aware of plaintiffs using AA. Her false exculpatories allow a jury to find otherwise.

10.     The Agency could not provide a VISN witness to testify concerning AA. Ex.Jp1-2. McCallum now appears.

### Other Issues

11.     In Pamela Trimble's case the same two attorneys were involved as a brand-new Chief Nurse handed out a 3-day suspension. Ex.K1,K2. He was given selected documents and told not to talk to anyone else. Ex.K2p.33:5-14. Trimble disputed a statement and Barnes claimed this helped reduced the penalty from termination to a 3-day suspension even though he did not know if the statement ever happened. *Id.* He changed his deposition testimony to interject attorneys as the people who talked him out of termination, ignored that discipline was not expeditious and exculpatory evidence was being excluded. Exs.K1,K2p12:22-15:21;17:14-18-6;19:19-21:17;21:21-22:3;27:3-41:4. The prior CN, Larry Diehl, the Cath Lab supervisor, Mazur Afaq,  George VanBuskirk, Teresa Kumar and Kris Brown all knew of

Trimble's EEO activity. Barnes did not. *Id.* The government attorneys never told Plaintiff's counsel of a change. *Id.* Barnes was coached by Burton during trial. *Id.*

12.    Burton never told the investigator about McCallum in her ROI statement. Ex.1p000106;156. McCallum manifests when Burton claimed not to know if Babb was entitled to AA. Ex.Gp31:12-40:1. However, a year before she told Trask and Truitt supervisors they could not have AA. Exs.B,B1,C,C1;Ex.6p.57:20-58:13;60:6-60:12. These are 801(d)(2)(D) statements by managers of Trask and Truitt.

13.    In Trimble's case there was direct evidence in writing tying Brown, Kumar, Van Buskirk and Afaq to retaliation for opposing gender discrimination. In Babb there is direct evidence that Wilson, Keri Justice and other managers considered EEO activity during the process of making personnel actions. See ¶T above.

14.    Ex.M¶4 and documents produced by the Government after the Magistrate's order show 14 employees including two new employees received AA (Byrd, Johnson) in 2015. Ex.O¶2. This does not include Sly, McLain or Bell. Purportedly, four employees were denied: Trask, Truitt, Sly and Leonard Briscoe. *Id.*¶3. However, Briscoe was not denied AA. October 2, 2017 depositions were cancelled, but he missed work. Ex.U. While Orlando is a facility where Burton works, this may be an incorrect effort to show someone other than Burton denied AA.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if, after considering Babb's evidence, the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Tolan v. Cotton*, 572 U.S. 650, 656-

57 (2014).[7] The substantive law applicable to the case determines which facts are material and which are irrelevant. See *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the burden of proving that no genuine issue of material fact exists." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir 2002). Once the moving party has met this burden, the non-movant must then show a genuine dispute over any issue <u>for which it will bear the burden of proof at trial.</u> *Id.* at 1224-25. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. In evaluating the movant's motion for summary judgment, "the district court must view all evidence in the light most favorable to the non-moving party." *Info. Sys. & Networks Corp.*, 281 F.3d at 1224.

## IV. ARGUMENT

The Defendant argues that the *Babb* cases were not causation decisions while ignoring their rejection of the *McDonnell Douglas* standard of causation as well as that of *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 168 (2009) and *Univ. of Texas Southwest Medical Center v. Nassar,* 520 U.S. 338 (2013)**.** In *Babb v. Wilkie*, the Supreme Court held that

---

[7] In *Tolan v. Cotton*, 572 U.S. 650 (2014) the Supreme Court reversed the Fifth Circuit Court of Appeals' holding that a police officer's actions did not violate clearly established law because it improperly weighed evidence and resolved disputed issues in favor of the moving party by failing to credit key evidence offered by the suspect with regard to lighting, his mother's demeanor, whether he shouted words that were an overt threat, and his positioning during the shooting.*Id.*at 659-660.

the federal statutes' requirement that "personnel actions" be "made free from any discrimination" "demands that personnel actions be <u>untainted by any consideration of</u>" a protected characteristic. *Id.* at 1171. (emphasis added) The Court has explained that, under the federal-sector language, <u>"[i]f . . . discrimination plays any part in the way a decision is made, then the decision is not made in a way that is untainted by such discrimination."</u> *Id.* at 1174 (emphasis added) *see also id.* at 1179 (Thomas, J., dissenting) (explaining that the majority's test imposes liability if an agency's personnel actions are at all tainted by considerations of age").

In *Babb v. Sec'y, Dep't of Veterans Affairs*, 992 F.3d 1193, 1199 (11th Cir. 2021), the Court examined *Babb v. Wilkie* before finding it applicable to Title VII cases. It also noted that the "free from any" language involves personnel actions, 5 U.S.C. § 2302(a)(2), and the process of making a decision. It added:

> Accordingly, "[i]f age discrimination plays any part in the way a decision is made," then that decision necessarily "is not made in a way that is untainted by such discrimination." *Id.* at 1174. Add it all up, and the takeaway is this: "[T]he statute does not require proof that an employment decision would have turned out differently if age had not been taken into account"—i.e., does not require that age discrimination be the but-for cause of an adverse personnel decision.

No matter how many times Babb used the term "but-for" the Supreme Court expressly rejected *Gross* and *Nassar* by describing their statutes as "couched in very different terms", and "markedly different" than the federal employee statute which contains the critical adverbial language "made free from any" while observing that in the federal employee's statute the adjectival phrase 'based on age' modifies the noun 'discrimination'" not "personnel actions." *Babb v. Wilkie,* 140 S.Ct. at 1174-76; *Babb v.*

*Sec'y,* 992 F.3d at 1199. In the other statutes, the "because of" modified the ultimate employment decision. *Id. Babb v. Sec'y* underlined this notion when the Secretary claimed that the MSJ would still be warranted because the District Court found Babb could not establish the Agency's reasons were pretextual. 992 F.3d at 1204-05. *Babb v. Sec'y* clearly disapproved and began by stating: " But it's not." *Id.*

In rejecting the *McDonnell Douglas* standard, the Eleventh Circuit considered a hypothetical that appears at p.1174 of the Supreme Court's decision. The older person did not lose the job because of discrimination, yet, the employer still violated the statute because age was a consideration, or played a role in the process of making the decision. *Id.* 140 S.Ct. p.1174; 992 F.3d at p.1205. In three parts of its decision, the Supreme Court held that would make the employer liable and subject to injunctive and other prospective relief. 140 S.Ct. 1171, 1176-78. See also J. Thomas dissent at 1180.[8]

*Babb v. Wilkie* addressed an important aspect of differential treatment evidence when pointing out the taint has to continue until the action is made. See footnote 3 at 140 S.Ct. 1174-5. A non-decisionmaker recommended someone based in part on age. The decisionmaker took swift and complete action to wipe any taint from the process.

---

[8] "All personnel actions affecting …employees … in executive agencies …shall be made free from any discrimination based on race, color, religion, sex, or national origin" 42 U.S.C.§2000e-16(a). If the Supreme Court did not render this opinion, it would be recognizing that it was acceptable for a federal employer to have a process in which discrimination played a role, as long as the employee could not prove that it primarily caused, motivated or was a factor in the ultimate decision. Doing so would have made the language "free from any discrimination" meaningless. 140 S.Ct. at 1171, 1178. The Court knew that this standard was dramatically lower than the standard applied to all other employees, however, they recognized that was Congress's decision. 140 S.Ct. pp1176-1178. As for "but-for" proof of differential treatment, that was suggested by *Babb's* attorneys, and the Supreme Court discusses its meaning, but the Defendant does not.

Had he not done so this remark could have tainted the process. When coupled with the first hypothetical this highlights the notion that Babb, for liability, must show consideration of the protected characteristics. <u>That shows but-for discrimination or differential treatment.</u> Here the differential treatment involves the Plaintiff's participation in EEO activity. A practice of granting AA for depositions in federal cases was denied to Babb by attorneys who have no supporting law, rule or regulation. A lack of a credible explanation of procedurally irregular conduct is itself circumstantial proof of wrongdoing. *Furno Const. Corp. v. Waters,* 438 U.S. 567, 575 (1978). Other ways to show discrimination are discussed in *Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 644-45 (11th Cir. 1998) (and cases cited therein) (failure to promulgate hiring or promotion policies can be evidence of discrimination as can be bending or breaking rules which harm a minority candidate can be evidence of discrimination.) Here the broken procedure directly related to Babb's EEO activity.

The *Babb* cases directly addressed what differential treatment meant after considering the critical adverbial phrase, and by providing helpful hypotheticals and describing a two-part legal framework. Nothing in this analysis is superfluous. If the plaintiff must prove that a protected characteristic was considered, tainted or played any role in the process of making of a personnel action, how could a jury be required to change facts one at a time to see when the outcome changes as some cases applying *Gross* or *Nassar* articulate? Proving whether a protected characteristic was considered or played any role would, at trial, have to be done with focused traditional preponderance of the evidence and related instructions. At the MSJ stage, we should

only need sufficient evidence from all sources to create a jury question. Here the differential treatment is related to leave the EEOC held could be a deterrent to EEO activity. See p.9 above. It involved leave for EEO activity and necessarily involved consideration of EEO activity.

The Defendant does not address that legal discussion or the next stage, full relief, including "but-for" causation when more than one motive is at play, and under *Texas v. LeSage,* 528 U.S. 18, 20-22 (1999) and *Mt. Healthy Cnty. Bd. of Ed. v. Doyle,* 429 U.S. 274, 285-7 (1977) or their Supreme Court and Eleventh Circuit progeny. The Supreme Court and Eleventh Circuit's mixed motive framework requires consideration of all evidence, including circumstantial evidence, to determine whether differential treatment occurred because the protected characteristic was considered or played any role <u>during the process</u> of making a personnel action. *Quigg v. Thomas County School Dist.,* 814 F.3d 1227, 1237-1238 (11th Cir. 2016) (*McDonnell Douglas* is inappropriate for evaluating mixed motive claims because it is overly burdensome); *Desert Palace, Inc. v. Costa,* 123 S.Ct. 2148, 2154, 539 U.S. 90 (2003) ("circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.").[9] The evidential framework is the same but causation is different when it comes to <u>full relief.</u>  The Supreme Court cited recognized <u>but-for</u> cases, *LeSage* and *Mt. Healthy.* This cannot be waived away. These cases require a first stage trigger which, when met, places the burden of proving the same decision defense

---

[9] This is also the reason the Supreme Court's hypothetical in footnote 3 makes sense.

on the Defendant. Discrimination/differential treatment which is considered, plays any role, or taints the process of making the decision is the trigger for *LeSage* and *Mt. Healthy* burden shifting. The Defendant has never addressed, let alone met, that burden and summary judgment is not available. Juries resolve the final stages of *Mt. Healthy* unless the facts are undisputed. See, e.g., *Moss v. City of Pembroke Pines,* 782 F.3d 613, 618 (11th Cir. 2015).[10]

The only written policy, including its procedure and the resulting practice, was incredibly violated. The MSJ should be denied.

Ex.P is a form VISN 8 sends out periodically asking people associated with employee claims to provide them with evidence <u>which helped defeat an employee's claim</u> so it can be shared. If the VA wins this case it could derail a consistent practice which gave the employees important cost relief when they went to federal court.

---

[10] One can also see this in the pin cites the Court uses when citing *Texas v. LeSage* and *Mt. Healthy.* The cite to *Texas v. LeSage* is directly to the part where the burden is shifted to the employer. While *Mt. Healthy* has that same discussion, the Court cited to the point of the opinion which reversed the District Court for not giving the employer the ability to overcome the taint by meeting its burden. Given Defendant's undifferentiated fixation on the phrase "but-for" please note that other Supreme Court cases recognize that burden shifting in *Mt. Healthy* and mixed motive cases establishes "but-for causation". *See e.g., Neives v. Barlett,* 139 S.Ct. 1715, 1722-23 (2019) ("we have simply taken the evidence of the motive and the discharge as sufficient for circumstantial demonstration that one caused the other shifting the burden to Defendant to show he would have taken the challenged assertion even with the impermissible motive."). In *Hartman v. Moore,* 547 U.S. 250, 259-260 (2006) ("It is clear, moreover, that causation is understood to be but-for causation without which the adverse action would not have been taken.") The Eleventh Circuit has also recognized these cases as but-for cases: *DeMartini v. Town of Gulf Stream,* 942 F.3d 1277, 1290 (11th Cir. 2019); *Brooks v. Miller,* 158 F.3d 1230, 1242 (11th Cir. 1998); *Pulliam v. Pallapoosa County Jail,* 185 F.3d 1182, 1188-89 (11th Cir. 1999). Jury's resolve the final stages under *Mt. Healthy* unless the facts are undisputed. *Moss v. City of Pembroke Pines,* 782 F.3d 613, 618 (11th Cir. 2015). These decisions bring into focus the Court's determination that Congress asked the U.S. Government to accept more responsibility for its employees than employers of non-federal employees. See 140 S.Ct. at 1176-77.

Federal employees cannot afford to pay all their annual leave to attend depositions in order to help an attorney understand true or complete facts.

The Defendant references AA at the administrative stage. (MSJp13). It leaves out the role Congress played. Congress raised serious concerns that agencies were denying Federal employees their legal rights by the way they managed the administrative process. See Ex.Q. The EEOC was made separate from federal agencies in an effort to give employees fairer treatment. After a reassessment period, many federal agencies readopted an antagonistic approach. Bay Pines has a win at any cost approach establishing a plan to destroy the careers and reputations of people who engaged in EEO activity around 2005.[11] During this time, a case went to Federal Court in *Lynn C. Krop v. Nicholson,* Case No. 8:06-cv-157-&-30MSS. A jury returned a verdict she was a victim of religious discrimination (Jewish) and awarded $300,000. Prior to that verdict, the Court instructed the United States Attorney's office to contact the VA to see if they would consider settlement. The VA refused to offer anything. After that, there was a series of cases which created a record which would have resulted in a considerable amount of harm to a private employer if they ran up a lesser record. See Ex.R. Burton, was involved in many cases in Ex.R. Her actions in some of those cases and others showed hostility to EEO activity. She threatened the star witness in the *Cote* case, Roxanne Lainhart-Bronner, in a subsequent deposition in another case that if she

---

[11] See *Cote v. Peake,* 8:07-cv-01524-TBM. The Federal government did not prosecute an appeal on two of the employees. It was unsuccessful with the appeal of two employees. *See Gowski v. Peake*, 692 F.3d 1299 (11th Cir. 2012).

lied she could be disciplined. See Ex.Sp.87:4-88:3. Her testimony involved knowledge of the scheme to destroy careers and reputations that had resulted in the verdicts in the *Cote* case. *Id.*p.90:12-25. Subsequently in *Pamela Trimble v. McDonald,* Case No. 8:13-cv-0548-T-35-TBM, Burton inflamed a hostile work environment according to the VA's own AIB about what was going on back at Bay Pines while this case was under investigation. See Ex.T. Given the story that supposedly began in 2016 but actually started in 2015, this case has at its heart false exculpatory claims. Burton is involved in every rejection, but the hostility is bigger than Burton. In each of the cases where there was a denial of AA, the chief of the service was accused of discrimination and/or retaliation and evidence was sufficient to survive summary judgment.[12]

For the reasons set forth above the motion for summary judgment should be denied.

Respectfully submitted,

*/s/ Joseph D. Magri*
Joseph D. Magri
Merkle & Magri, P.A.
Florida Bar No. 0814490
5601 Mariner Street, Suite 400
Tampa, FL 33609
Telephone: 813-281-9000
Facsimile: 813-281-2223
Email: jmagri@merklemagri.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 9,2022 I electronically filed the

---

[12] The Defendant mis-describes Plaintiff's case and theory concerning Burton. MSJp15.Plaintiff's theory is based on the historic practice prior to February 2015. It is also based on the fact that a head of the service with unclean hands, not just any supervisor, was involved.

foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

> Roger B. Handberg
> United States Attorney
> Mamie V. Wise
> Assistant United States Attorney
> Florida Bar No. 65570
> Michael Kenneth
> Florida Bar No.: 44341
> Assistant United States Attorney
> 400 North Tampa St., Ste. 3200
> Tampa, Florida 33602
> Tel: 813/274-6000
> Fax: 813/274-6198
> Email: mamie.wise@usdoj.gov
> Email: michael.kenneth@usdoj.gov
> Attorney for Defendant

> ***/s/ Joseph D. Magri***
> Joseph D. Magri